## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Joel G. MacMull
Brian M. Block
**MANDELBAUM BARRETT PC**
510 Lexington Avenue, 21st Floor
New York, New York 10022
Tel.: 973-736-4600
Fax: 973-325-7467
Email:  jmacmull@mblawfirm.com
         bblock@mblawfirm.com

*Attorneys for Top Experience Company LLC
d/b/a We Pay Cost LLC*

| | |
|---|---|
| FLYCATCHER CORP. LTD. and FLYCATCHER TOYS INC., | CIVIL ACTION NO. 24-cv-9429 (KPF) |
| *Plaintiffs*, | ***Oral Argument Requested*** |
| v. | |
| AFFABLE AVENUE LLC, et. al., | |
| *Defendants*. | |

## DEFENDANT TOP EXPERIENCE COMPANY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT...........................................................................1

PROCEDURAL BACKGROUND..................................................................... 2

ARGUMENT.................................................................................................. 4

I.     The Applicable Legal Standard. ................................................... 4

II.    The Court should dismiss the TAC because there are no allegations of conduct subjecting Top to liability. ............................................... 6

III.   Plaintiffs' three Lanham Act claims fail as a matter of law. .......................... 8

       A.   Plaintiffs' claims for federal trademark infringement and unfair competition under 15 U.S.C. §§ 1114 and 1125 as well as their common law unfair competition claim fail as a matter of law. ............................... 8

       B.   Plaintiffs' claim for false advertising fails. ............................................17

            i.    Plaintiffs do not plead a proximately caused commercial injury to reputation or sales. ...........................................................................19

            ii.   Plaintiffs do not adequately allege their injuries flowed directly from the alleged deception. ...................................................................21

IV.    The Court should decline to exercise supplemental jurisdiction. ................23

V.     The TAC's claim under N.Y. General Business Law § 349 fails. ............... 24

VI.    Plaintiffs' N.Y. Penal Law § 165.66 fails to state a claim. .......................... 28

VII.   Plaintiffs' conversion and replevin claims fail. ..........................................29

VIII.  Plaintiffs' claim under California Penal Code §496 (a) and (c) fails. ...........32

CONCLUSION................................................................................................34

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-md-2481, 2015 WL 1344429 (S.D.N.Y. Mar. 23, 2015)........................34

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................5, 11

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ...................................................... 7, 34

*Bardwil Indus. Inc. v. Kennedy*,
No. 19-cv-8211, 2020 WL 2748248 (S.D.N.Y. May 27, 2020) ...........................7

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*,
837 F. Supp. 2d 208 (E.D.N.Y. 2011)..................................................... 12, 13, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................5

*Burch v. Pioneer Credit Recovery, Inc.*,
551 F.3d 122 (2d Cir. 2008).................................................................5

*Burton v. Label, LLC*,
344 F. Supp. 3d 680 (S.D.N.Y. 2018).................................................... 9, 11, 13

*CDC Newburgh Inc. v. STM Bags, LLC*,
No. 22-cv-1597, 2023 WL 6066136 (S.D.N.Y. Sept. 18, 2023) .................... 8, 17

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .............................................................. 31

*CHEP USA v. Paco*,
No. 23-cv-04535, 2024 WL 2875101 (N.D. Cal. May 3, 2024) .........................33

*Christina v. Town of Riga*,
649 F. Supp. 2d 84 (W.D.N.Y. 2009) ...............................................................28

*Cohen v. Dunne*,
No. 15-cv-3155, 2017 WL 4516820 (S.D.N.Y. Sept. 27, 2017) .................... 30, 32

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
377 F. Supp. 3d 337 (S.D.N.Y. 2019) ..................................................... 20, 23, 24

*Drimal v. Tai*,
786 F.3d 219 (2d Cir. 2015) ................................................................ 11, 12, 33, 34

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
No. 21-cv-6598, 2023 WL 3570017 (S.D.N.Y. May 18, 2023) .................... 26, 27

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) ............................................................................. 6

*In re Elysium Health-Chromadex Litig.*,
No. 17-cv-7394, 2018 WL 4907590 (S.D.N.Y. Sept. 27, 2018) ........................ 20

*George v. Prof'l Disposables Int'l, Inc.*,
221 F. Supp. 3d 428 (S.D.N.Y. 2016) ............................................................. 5

*Gerffert Co., Inc. v. Dean*,
41 F. Supp. 3d 201 (E.D.N.Y. 2014) .............................................................. 24

*Granat v. Center Art Galleries–Hawaii, Inc.*,
No. 91-cv-7252, 1993 WL 403977 (S.D.N.Y. Oct. 6, 1993) .............................. 30

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
277 F. Supp. 2d 269 (S.D.N.Y. 2003) .............................................................. 25

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
171 N.E.3d 1192 (N.Y. 2021) .................................................................... 26, 27

*Information Superhighway, Inc. v. Talk Am., Inc.*,
395 F. Supp. 2d 44 (S.D.N.Y. 2005) ............................................................... 17

*K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*,
61 F.3d 123 (2d Cir. 1995) ........................................................................... 23

*Kornea v. Miller*,
No. 22-cv-4454, 2023 WL 9418674 (S.D.N.Y. Dec. 14, 2023) .......................... 26

iii

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ............................................................................. 20, 22, 23

*LLC v. Englert*,
No. 06-cv-378, 2007 WL 1933147 (D. Utah Mar. 28, 2007) ............................ 15

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
292 F. Supp. 2d 535 (S.D.N.Y. 2003) ................................................................ 17

*Marvin v. Allen*,
No. 23-cv-5947, 2024 WL 4290722 (S.D.N.Y. Sept. 24, 2024) ....................... 28

*McDonald's Corp. v. Shop at Home, Inc.*,
82 F. Supp. 2d 801 (M.D. Tenn. 2000) ............................................................. 15

*McNeilab, Inc. v. Am. Home Prods. Corp.*,
848 F.2d 34 (2d Cir. 1988) ............................................................................... 22

*Med. Depot, Inc. v. Med Way US, Inc.*,
No. 22-cv-01272, 2025 WL 948334 (E.D.N.Y. Mar. 28, 2025) ......................... 8

*Meese v. Miller*,
436 N.Y.S.2d 496 (4th Dept. 1981) .................................................................. 29

*Merck Eprova AG v. Gnosis S.p.A.*,
760 F.3d 247 (2d Cir. 2014) ............................................................................. 19

*Microban Prods. Co. v. API Indus., Inc.*,
No. 14-cv-41, 2014 WL 1856471 (S.D.N.Y. May 8, 2014) (Failla, J.) .............. 10

*Millennium Access Control Tech., Inc. v. On the Gate, LLC*,
No. 15-cv-6067, 2017 WL 10445800 (E.D.N.Y. Feb. 14, 2017) ....................... 24

*Motivo Engr., LLC v. Black Gold Farms*,
No. 22-cv-01447, 2023 WL 3150099 (C.D. Cal. Mar. 28, 2023) ...................... 32

*NEC Elecs. v. CAL Cir. Abco*,
810 F.2d 1506 (9th Cir. 1987) .......................................................................... 15

*Nesbeth v. N.Y.C. Mgmt. LLC*,
17-cv-8650, 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ..................................... 7

iv

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
No. 12-cv-2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), *aff'd*,
530 F. App'x 19 (2d Cir. 2013) ........................................................................7

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
32 F.3d 690 (2d Cir. 1994) ....................................................................20, 23

*Ortiz v. Ciox Health LLC*,
37 N.Y.3d 353 (2021) ........................................................................28

*Osawa & Co. v. B & H Photo*,
589 F. Supp. 1163 (S.D.N.Y. 1984)........................................................14

*Patterson v. Patterson*,
No. 16-cv-00844, 2019 WL 1284346 (W.D.N.Y. Mar. 20, 2019).....................29

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*,
887 F. Supp. 2d 519 (S.D.N.Y. 2012) ........................................................25

*Polymer Tech. Corp. v. Mimran*,
975 F.2d 58 (2d Cir. 1992)........................................................................9

*Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC*,
760 F. Supp. 2d 384 (S.D.N.Y. 2011) ........................................................24

*Purgess v. Sharrock*,
33 F.3d 134 (2d Cir. 1994) ........................................................................23

*Schloss v. Danka Business Systems PLC*,
No. 99-cv-0817, 2000 WL 282791 (S.D.N.Y. March 16, 2000),
*aff'd*, 2000 WL 1715262 (2d Cir. Nov. 13, 2000) ........................................29

*Securitron Magnalock Corp. v. Schnabolk*,
65 F.3d 256 (2d Cir. 1995) ........................................................................25

*Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*,
521 F. Supp. 3d 222 (E.D.N.Y. 2021)........................................................9

*Sheehy v. Big Flats Cmty. Day*,
73 N.Y.2d 629 (1989) ........................................................................28

v

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
   No. 96-cv-5150, 1997 WL 137443 (Mar. 24, 1997) ............................................25

*Switzer v. Wood*,
   247 Cal. Rptr. 3d 114 (Ct. App. 2019)........................................................ 32, 33

*Tentandtable.com, LLC v. Aljibouri*,
   No. 22-cv-78, 2025 WL 959656 (W.D.N.Y. Mar. 31, 2025) ............. 10, 11, 13, 14

*Tiffany & Co. v. Costco Wholesale Corp.*,
   971 F.3d 74 (2d Cir. 2020) ..................................................................................9

*Tompkins v. Fonda Glove Lining Co.*,
   188 N.Y. 261 (1907) ..........................................................................................30

*Virgin Enters. Ltd. v. Nawab*,
   335 F.3d 141 (2d Cir. 2003) ................................................................................9

*W. Tube Co. v. Aetna Indem. Co.*,
   181 Ill. App. 592 (1st Dist. 1913) ......................................................................31

*Walker Wear LLC v. Off-White LLC*,
   624 F. Supp. 3d 424 (S.D.N.Y. 2022) ................................................................25

**Statutes**

15 U.S.C. 1114(a)....................................................................................................8

15 U.S.C. 1125(a) ..............................................................................................18, 19

15 U.S.C. 1125(a)(1)(B) .....................................................................................18, 19

15 U.S.C. §§ 114 *et seq.* .........................................................................................8

15 U.S.C. § 1125(a) ................................................................................................8

28 U.S.C. § 1332 ...................................................................................................23

28 U.S.C. § 1367(c)(3) ...........................................................................................23

Cal. Penal Code § 496(a) ......................................................................................32

N.Y. General Business Law § 349 ...................................................................*passim*

N.Y. General Business Law § 369-b ................................................................ 12

N.Y. Penal Law § 165.66 ................................................................ 2, 28, 29

N.Y. Penal Law § § 165.66 ................................................................ 29

**Court Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................ 5, 7

Fed. R. Civ. P. 12(b)(6) ................................................................ 1, 5, 31

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ................................................................ 31

Restatement Third, Unfair Competition § 24, comment b (1995) ......................... 16

Defendant Top Experience Company LLC d/b/a We Pay Cost LLC ("Top" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss plaintiffs Flycatcher Corp. Ltd. and Flycatcher Toys Inc.'s (together, "Plaintiffs" or "Flycatcher") Third Amended Complaint (ECF 142, hereinafter the "TAC") in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

After Top notified Plaintiffs that their claims as pled were fatally defective, Plaintiffs have proceeded to amend their pleadings for a third and a final time. (ECF 142, 144.) Despite Top's repeated missives advising Plaintiffs that their claims fail as a matter of law, Plaintiffs have still not been able to plead a legally cognizable claim.

The TAC fails to cure fundamental problems that plagued Plaintiffs' previous iterations of their complaint: they do not and cannot point to any theory of liability against Top based on the alleged facts under the federal Lanham Act or under any of the other state law causes of action. Moreover, it is well-settled that the type of "shotgun" or "group pleading" tactic Plaintiffs employ here, which is an approach they use to avoid pleading specific jurisdictional or liability-related allegations against each defendant, is improper and, by itself, sufficient grounds for dismissal. This is all the more appropriate here because the TAC is Plaintiffs' third bite at the apple and the Court has already ruled this was Plaintiffs' final permitted amendment.

1

(ECF 144.) Because the TAC remains fatally flawed, the Court should dismiss it in its entirety and with prejudice.

## PROCEDURAL BACKGROUND

Plaintiffs filed their initial Complaint on December 11, 2024. (ECF 1.) The gravamen of their suit, which remains true today, is that Top and others are liable to them under federal and state trademark and unfair competition laws for their online sale of Plaintiffs' goods that were allegedly stolen and that bear the wordmark and design mark SMART SKETCHER. (*See generally* TAC.).

On March 18, 2025, Top filed its initial Answer, Affirmative Defenses, and Counterclaims (ECF 67), wherein, among other things, it explained that Flycatcher's purported trademark rights in the wordmark SMART SKETCHER were inherently non-distinctive by virtue of it being registered on the Supplemental Register and, in addition, is either highly descriptive or generic, such that any rights that can be credibly said to be associated with the mark are either razor thin or non-existent. (*Id.*, Affirmative Defenses at 2-4.) Top's affirmative defenses, in addition to other defenses, also explained why Plaintiffs' claim pursuant to N.Y. Penal Law § 165.66 fails. (*Id.* at 6.)

Top's counterclaims also asserted claims for a declaration of non-infringement and to cancel the registration for the wordmark SMART SKETCHER

(U.S. Reg. No. 5,859,014) on grounds its descriptive or generic. (*Id.*, Counterclaims at ¶¶ 22-28.) Defendant also alleged that the fraudulent procurement of the SMART SKETCHER trademark registration mandated cancellation. (*Id.* at ¶¶ 29-34.)

Concerned with the affirmative defenses and claims raised by Top in response to their Complaint, Flycatcher quickly filed an Amended Complaint, tacitly acknowledging the weaknesses in their suit identified in Top's Answer. (*See generally* ECF 97.) This time around the predicate for their misguided trademark claims also included the SMART SKETCHER Design Mark. (*Id.* at ¶¶ 34, 42, 55-64.) But Plaintiffs weren't finished. They would seek yet another amendment in the form of their Second Amended Complaint. (ECF 115-1, 117-1, hereinafter "SAC".)

On April 29, 2025, Plaintiffs moved for leave to file their proposed SAC. (ECF 115 *et seq.*) On May 9, 2025, Top filed a pre-motion conference letter explaining why Plaintiffs' SAC should be dismissed in its entirety and further outlined the basis for Top's opposition to Plaintiffs' motion for leave to further amend. (ECF 129). Plaintiffs responded substantively to Defendants' letter on May 14, 2025. (ECF 135.) Top opposed Plaintiff's motion for leave on May 16, 2025. (ECF 136 *et seq.*) On May 19, 2025, the Court granted Plaintiffs' motion for leave to amend. (ECF 140.) In its order granting leave, the Court wrote: "The Court prefers to allow the parties either to proceed to motion practice, or to allow Plaintiffs to amend their complaint a third

time in response to these pre-motion letters — perhaps streamlining the complaint — so as not to waste the Court's and the parties' time and resources." (*Id.* at 3.) The Court further wrote: "[Top's] objections to Plaintiffs' "shotgun pleading" . . . are better addressed in a [Rule] 12(b)(6) motion." (*Id.* at 4.)

Seizing the Court's invitation to once again amend their pleading for a third time, Plaintiffs filed their TAC on May 23, 2025. (ECF 142, 143.) The Court, in turn, issued an order the same day, ruling that it "will not grant Plaintiffs leave to amend their complaint a fourth time" and set down a briefing schedule for Top and defendant Affable Avenue LLC's anticipated motions to dismiss. (ECF 144.)

As explained below, Plaintiffs' attempt to salvage their nine count TAC with minimal, and largely inconsequential, amendments do nothing to address the material defects that continue to burden their pleading. Like their SAC, and their pleadings before that, the TAC still fails to state a claim upon which relief can be granted such that dismissal with prejudice is warranted.

## ARGUMENT

### I. The Applicable Legal Standard.

Plaintiffs craft from whole cloth a scheme that more than 20 unrelated defendants engaged in a pernicious plot to unlawfully profit from the sale of Plaintiffs' goods that they purportedly all knew were stolen at the time they were sold. However, even if their theory made sense, it is far removed from reality, and

4

even further removed from stating any legally cognizable claims.

On a Rule 12(b)(6) motion to dismiss, this Court must accept all facts set forth in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Where the plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

And where, as here, a complaint asserts claims against multiple defendants, Rule 8(a)'s basic pleading standard "cannot be satisfied by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 449 (S.D.N.Y. 2016) (cleaned up). Instead, a complaint should provide "specification of any

particular activities by any particular defendant." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).

As explained below, not one of the nine causes of action that Plaintiffs assert against Top succeed in making out a viable claim, and all of them should be dismissed with prejudice. At best, there is nothing more than naked speculation tying Top to Plaintiffs' theories, and the TAC should be dismissed as to Top in its entirety.

## II.   The Court should dismiss the TAC because there are no allegations of conduct subjecting Top to liability.

The SAC failed to differentiate the activities of each of the defendants, nor did it allege any specific conduct by them. (*See generally* SAC.) The closest the SAC came to any allegation involving Top was when it lumped Top together with several other defendants in support of Plaintiffs' various claims. (*See*, *e.g.*, SAC ¶¶ 45, 89.)

Plaintiffs' TAC contains the same sort of non-specific allegations involving Top, but with one exception.[1] (*See*, *e.g.* TAC ¶ 28 (lumping Top with 13 other defendants and referring to them as "Merchant Defendants"); ¶¶ 50-53 (same); ¶ 99 (lumping Top with 8 other defendants, as well as those whose identities are

---

[1]      The single exception wherein Plaintiffs specifically identify Top is confined to paragraph 54 of the TAC. The paragraph avers that Top received a cease-and-desist letter in November 2024 that purportedly included a demand for the return of Plaintiffs' merchandise, that Top Experience ignored the demand, continued to offer the stolen goods for sale and refused to return them. (TAC ¶ 54.) As explained below, however, this allegation remains defective because it does not support Plaintiffs' claims for conversion or replevin — the claims to which the allegation relates.

presently unknown, and identifying them all as the "California Defendants").

The failure to distinguish between any of the defendants alone warrants dismissal of the claims against Top. Under Rule 8(a)(2), a complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quotation marks and citation omitted). Accordingly, "[w]here a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants." *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12-cv-2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 F. App'x 19 (2d Cir. 2013). A complaint cannot simply "lump[ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Atuahene*, 10 F. App'x at 34; *accord Nesbeth v. N.Y.C. Mgmt. LLC*, 17-cv-8650, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019); *see also Bardwil Indus. Inc. v. Kennedy*, No. 19-cv-8211, 2020 WL 2748248, at *3 (S.D.N.Y. May 27, 2020) ("With the exception of one allegation . . . not a single allegation specifies which defendant engaged in what misconduct" and dismissing plaintiff's claims in their entirety with prejudice.)

Dismissal is particularly appropriate here, where the TAC represents no less than Plaintiffs' third bite at the apple, and yet, their allegations vis-à-vis Top remain

as indistinguishable from the other defendants as they were in the initial Complaint and SAC.  (*See generally* TAC.)

### III.    Plaintiffs' three Lanham Act claims fail as a matter of law.

Counts I, II, and III of the TAC allege violations of the Lanham Act, 15 U.S.C. §§ 114 *et seq.* Each of Plaintiffs' Lanham Act claims fail as a matter of law.

#### A.    Plaintiffs' claims for federal trademark infringement and unfair competition under 15 U.S.C. §§ 1114 and 1125 as well as their common law unfair competition claim fail as a matter of law.

The first and second counts allege Top violated the Lanham Act, and the sixth count alleges a claim under New York common law unfair competition. (TAC, ¶¶ 63-73, 85-87.) Because a New York common law unfair competition claim is "virtually identical" to the standard under the Lanham Act, except that New York law requires an additional showing of bad faith, *CDC Newburgh Inc. v. STM Bags, LLC*, No. 22-cv-1597, 2023 WL 6066136, at *13 (S.D.N.Y. Sept. 18, 2023), Top analyzes the first, second, and sixth causes of action together.

Liability for infringement of a registered trademark is addressed under 15 U.S.C. 1114(a), while unfair competition through infringing an unregistered mark or a mark confined to the Supplemental Register, is addressed under 15 U.S.C. § 1125(a) and is colloquially referred to as "false designation of origin" claim. *See Med. Depot, Inc. v. Med Way US, Inc.,* No. 22-cv-01272, 2025 WL 948334, at *5, n.6 (E.D.N.Y. Mar. 28, 2025). Here, Plaintiffs alleged claims under both theories fail.

8

To state a claim under these sections, a plaintiff must allege "that (1) it has a valid mark that is entitled to protection and that (2) the defendant's actions are likely to cause confusion with that mark." *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 247 (E.D.N.Y. 2021) (alteration and internal quotation marks omitted) (quoting *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020)); *see also Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (explaining that claims under both sections are analyzed under this "two-prong test").

The thrust of Plaintiffs' trademark-related claims sound in allegations that defendants (one of whom is presumed to be Top ) marketed and sold Plaintiffs' goods bearing Plaintiffs' trademarks SMART SKETCHER (word mark) and SMART SKETCHER (design mark) which goods unknown parties had previously stolen from Plaintiffs in transit to a warehouse. (TAC ¶¶ 36, 38, 45-46, 48-49, 58-59, 65-68, 70-73.)

However, a defendant's sale of stolen merchandise, provided the goods are genuine, does not give rise to Lanham Act claims as a matter of law. That was this Court's conclusion in *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 701 (S.D.N.Y. 2018). *Burton* held that "[s]elling trademarked goods under its trademarked name is not a violation of the Lanham Act." *Id.* In its holding, *Burton* quoted *Polymer Tech.*

9

*Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir. 1992), in which the Second Circuit held as follows: "As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner."

Less than three months ago, this Court's sister court in *Tentandtable.com, LLC v. Aljibouri*, No. 22-cv-78, 2025 WL 959656, at *4 (W.D.N.Y. Mar. 31, 2025), re-affirmed *Burton*'s holding. In *Tentandtable.com*, the court held that "a distributor who resells trademarked goods without change is not liable for trademark infringement. And that is true whether or not the distributor came to possess the goods legitimately." (internal citations omitted.) The opinion then expressly rejects the theory that the sale of stolen goods, provided they are genuine goods, gives rise to infringement or unfair competition under the Lanham Act.[2] *Id.* at *5. There, the plaintiff alleged that a defendant-employee had organized a scheme by which he stole the plaintiffs' goods bearing plaintiffs' trademarks and then resold them. *Id.* The court further explained that the plaintiffs did not allege that defendants altered or

---

[2]     TEC previously provided plaintiffs with authority that stolen merchandise does not give rise to claims under the Lanham Act. Rather than withdrawing these claims, Plaintiffs "doubled down" by responding that this Court's opinion in *Microban Prods. Co. v. API Indus., Inc.*, No. 14-cv-41, 2014 WL 1856471, (S.D.N.Y. May 8, 2014) (Failla, J.), governs here because plaintiffs did not authorize the first sale of the goods at issue. Notwithstanding that *Microban* does not apply for a host of other reasons, not the least of which because in *Microban*, "[defendant] alter[ed] . . . the goods it received from Microban render[ing] them not genuine," *id.* at *9, this Court rejected defendant's "first sale" or "exhaustion" defense because defendant "introduced no evidence indicating that Microban approved any initial sale" of the products at issue. *Id.* at *10. Here, in sharp contrast to *Microban* and as shown below, the TAC admits that Plaintiffs previously authorized the sale of their smART Sketcher 2.0 products.

misrepresented the goods in any manner. *Id.*

Here, just as in *Burton* and *Tentandtable.com*, Plaintiffs are alleging that Top (and others) have infringed on their trademarks merely by virtue of selling plaintiffs' stolen goods. (TAC ¶¶ 50-54). But, as both *Burton* and *Tentandtable.com* held, this fact alone does not give rise to a viable Lanham Act claim. *Burton*, 344 F. Supp. 3d at 701; *Tentandtable.com*, 2025 WL 959656, at *4-5. Importantly, here, just as in *Tentandtable.com*, the TAC does not allege that Top altered Plaintiffs' purportedly stolen goods in any way. (*See generally* TAC.)

Flycatcher's allegation that the "product sold is not genuine [because] it consists of stolen goods" is an erroneous legal conclusion which the Court need not credit. (TAC ¶ 58.) "Courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" in a pleading. *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Ashcroft,* 556 U.S. at 678); *see also Ashcroft,* 556 U.S. at 678 (stating although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions").

While Plaintiffs do not allege that any defendant sold goods that were altered, they do contend that defendants' sale of stolen goods with a warranty that Plaintiffs refuse to honor constitutes the sale of an "inferior and materially different product." (TAC ¶¶ 1, 65, 75.) But this theory is untenable. First, Plaintiffs' theory of

11

"alteration" and thus liability is predicated entirely on **their own unilateral conduct**. That is, Top did not alter anything about the goods. Rather, Plaintiffs allege that they have unilaterally elected to refuse to honor their own warranty on the goods. (TAC ¶¶ 1, 47, 58, 75.) Plaintiffs cannot use their own independent actions to manufacture Lanham Act liability against Top. As explained, *infra*, this also proves fatal to Plaintiffs' false advertising claim, which compels that proximate cause be pled and proven. Second, the TAC's allegations of "materiality" as it concerns the products' warranty that Plaintiffs refuse to honor is pled in entirely conclusory terms. (*See id.*) As such, the Court need not take these allegations as true. *See Drimal,* 786 F.3d at 223 (citation omitted).

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 224 (E.D.N.Y. 2011), a case relied on by Plaintiffs in their pre-motion correspondence, makes clear that the fact that defendants' products lacked warranty and other services such as upgrades and recall notices **did not** constitute a material difference. *Id.* at 226-227. *Bel Canto's* reasoning was premised on the fact that Bel Canto was governed by a New York law that prohibited attempts by manufacturers to limit warranties to direct purchasers. *Id.* at 226 (citing GBL § 369-b of the New York General Business Law). For the same reason arrived at in *Bel Canto*, Top too is subject to GBL § 369-b based on the TAC's allegations. (TAC ¶ 3 ("Defendants . . . offer and sell infringing

12

product to New York, including through the Amazon website, and in some cases, other internet platforms.")). *Id.* at 228.

In opposition, it is anticipated that Plaintiffs will argue that cases like *Burton* and *Tentandtable.com* do not apply because, they will say, "[t]he goods at issue were never sold by Flycatcher; there has never been an authorized 'first sale.'" (ECF 135 at 1.) But this too is wrong.

First, Plaintiffs conveniently ignore the plain allegations in their TAC that belie such an argument. The TAC unequivocally alleges that Flycatcher authorized the sale of its smART Sketcher 2.0 products in the United States. Specifically, Plaintiffs alleged that Flycatcher "sells [Flycatcher branded products] through the Flycatcher website, as well as on retail internet platforms such as Amazon." (TAC ¶ 40.) And the allegations contained in paragraph 43 of TAC are also unequivocal that it is Plaintiffs' smART Sketcher 2.0 product that has been the subject of authorized sales in the United States. (*Id.* ¶ 43 (alleging that Flycatcher offers smART Sketcher 2.0 on its own website and internet retail platforms "**and has sold thousands of units throughout the United States**" (emphasis added)).

Of course, Flycatcher does not contend that the above-identified sales were not authorized, nor can it do so, given that such sales are alleged to have been made from its own website. (TAC ¶¶ 40, 43, 47.) Accordingly, Plaintiffs' reliance on the

purported absence of a "first sale" of the product at issue — the smART Sketcher 2.0 — is specious, even assuming for the sake of argument that the doctrine applies here. It does not.

In *Tentandtable.com*, which involved a former employee's alleged theft and resale of his prior employer's goods, there was no evidence of a first sale of the goods at issue, nor did the district court discuss, let alone did the opinion's holding turn on, the existence (or not) of an authorized "first sale." *See generally* 2025 WL 959656. Given that there is no daylight between this case and *Tentandtable.com*, this Court should arrive at the same result and dismiss Plaintiffs' infringement and unfair competition claims.

Additionally, if Plaintiffs look to save Counts I and II of their TAC by arguing that while they authorized the sale of certain smART Sketcher 2.0 products (*see e.g.*, TAC ¶ 43), but not others, *i.e.*, the 12,600 units of smART Sketcher 2.0 products that were allegedly stolen (TAC ¶ 48), the law does not provide for this sort of "picking and choosing." Instead, the question of whether a good is genuine turns on its initial introduction into the market and a resulting sale. *See*, *e.g. Osawa & Co. v. B & H Photo*, 589 F. Supp. 1163, 1173 (S.D.N.Y. 1984) (under the exhaustion doctrine, a "markholder may no longer control branded goods after releasing them into the stream of commerce . . . . Down the line retailers are free to display and advertise the

14

branded goods. Secondhand dealers may advertise the branded merchandise for resale in competition with the sales of the markholder").

Plaintiffs' citation to *NEC Elecs. v. CAL Cir. Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987) in their responsive letter further drives home this point: "**Once a trademark owner sells his products**, the buyer ordinarily may resell the product under the original mark without incurring any trademark law liability." (ECF 135 at 2; emphasis in original.) Not one of the over ten citations in Plaintiffs' responsive pre-motion letter which they cite for the requirement of an authorized "first sale" involved the bifurcation of sales of product into those that were "authorized" versus those that were "unauthorized" by the seller-claimant. (ECF 135 at 2); *see*, *e.g.*, *Klein-Becker usa LLC v. Englert*, No. 06-cv-378, 2007 WL 1933147, at *5 (D. Utah Mar. 28, 2007) (holding the first sale defense has no application to goods that were stolen because no legal "first sale" occurred).

But the facts in *Klein* are markedly different than those presented here. *Klien* concerned counterfeit goods, not genuine goods. *See id.* Thus, the court determined that the first sale doctrine defense did not apply "because the producer's product is not being offered under the producer's mark" and because "'**one approved sale**' has not 'already occurred.'" *Id.* (emphasis added) (citing *McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 811 (M.D. Tenn. 2000) ("It does not matter that

the owner of the trademark objects to the use of its mark, as long as **one approved sale** has already occurred." (emphasis added)).) Here, and again, the TAC alleges not just one but thousands of approved sales of Plaintiffs' smART Sketcher 2.0. (TAC ¶ 43.)

Put somewhat differently, Plaintiffs' effort to treat the stolen goods, which are merely alleged to be a separate shipment (TAC ¶ 48), as goods distinct from the very same goods they previously sold "thousands of units [of] throughout the United States," finds no support in the law. (TAC ¶ 43.) In crafting such a theory, Plaintiffs have completely lost sight of the "first" in "first sale." *See* Restatement Third, Unfair Competition § 24, comment b (1995) ("Thus, the trademark owner cannot ordinarily prevent or control the sale of goods bearing the mark once the owner has permitted those goods to enter commerce. It can be said that the rights of the trademark owner are exhausted **once the owner authorizes the initial sale of the product under the trademark** or that the owner implicitly licenses others to further market the goods under the mark") (emphasis added). Thus, Plaintiffs' allegations that "no authorized first sale by Flycatcher ever took place with regards to [its] stolen product" and "there has never been an authorized first sale of the stolen goods by Flycatcher" are not allegations on which Lanham Act claims may rest in

16

view of the TAC's other allegations and the governing law. (*Compare* TAC ¶ 43, *with* ¶¶ 49, 58.)

Because Flycatcher cannot make out a claim under the Lanham Act for Counts I or II, the Court should dismiss these claims with prejudice.

Finally, Plaintiffs' New York common law unfair competition claim in Count VI is duplicative of its trademark infringement claim unless it can establish some wrongful conduct distinct from the alleged trademark infringement. *See CDC Newburgh Inc.*, 2023 WL 6066136, at \*13; *see also Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 551 (S.D.N.Y. 2003). Plaintiffs have alleged no such independent wrongful conduct in their TAC. Indeed, they have alleged nothing beyond mere bald conclusory statements unadorned by any facts. (TAC ¶¶ 85-87.) Thus, their New York unfair competition claim fails for the same reasons that their Lanham Act claims fail. *See Information Superhighway, Inc. v. Talk Am., Inc.,* 395 F. Supp. 2d 44, 56 (S.D.N.Y. 2005) (granting summary judgment on Lanham Act and common law unfair competition claims).

### B.    Plaintiffs' claim for false advertising fails.

The Court should dismiss Count III of the TAC for false advertising under the Lanham Act because it does not sufficiently allege an injury to its commercial

interest in reputation or sales flowing directly from the alleged representations.[3]

Although Plaintiffs complain of lost sales, and assert conclusory allegations of

reputational harm, their claim lacks factual support. (TAC ¶¶ 74-76.) But the Court

can and should dismiss Count III for a far simpler reason.

> Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), provides, in relevant part:

> Any person who, on or in connection with any goods or services, or any
> container for goods, **uses in commerce** any word, term, name, symbol,
> or device, or any combination thereof, or any ... false or misleading
> description of fact, or false or misleading representation of fact, which
> ... in commercial advertising or  promotion, misrepresents the nature,
> characteristics [or] qualities ... of his or her ... goods ... shall be liable in
> a civil action by any person who believes that he or she is or is likely to
> be damaged by such act.

15 U.S.C. 1125(a)(1)(B) (emphasis added). The Second Circuit has explained that to

state a claim for false advertising under the Lanham Act, a plaintiff must allege that

(1) "the statement in the challenged advertisement is false;" (2) "the defendants

---

[3]      In connection with their claim for false advertisement (Count III), Plaintiffs specifically rely
on the allegations that they do not honor their own warranty for the goods that were allegedly
stolen, and therefore, defendants' offering of Plaintiffs' products with a warranty statement
constitutes false advertising. (TAC ¶¶ 47, 55, 58, 75.) Several things are wrong with these
allegations. First, the TAC fails to describe precisely how Top advertises Plaintiffs' goods. The
most they allege, in an undifferentiated and conclusory fashion, is that the "listing states that a
manufacturer's warranty is available as per the manufacturer's website." (TAC ¶ 55.) As
discussed above, this is one of the many improper "group pleading" allegations that underlie the
TAC. Next, as explained *supra*, and as set forth in *Bel Canto Design, Ltd., Inc.*, 837 F. Supp. 2d 208,
Plaintiffs refusal to honor their own warranty is trumped by GBL 369-b of the New York General
Business Law. Accordingly, because as a matter of law Plaintiffs must honor their warranty
consistent with New York law, their refusal to do so cannot possibly serve as a basis for their false
advertising claim.

misrepresented an inherent quality or characteristic of the product;" (3) "the defendant placed the false or misleading statement in interstate commerce;" and (4) "the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (alterations and quotation marks omitted).

Thus, as clearly set forth from the language of the statute, "use in commerce" is necessarily a prerequisite in bringing any claim under 15 U.S.C. 1125(a) irrespective of whether a claimant is also *bona fide* trademark holder. Thus, having failed to properly assert "use in commerce" in any context as set forth in the TAC, let alone in reference to Top's liability for a false advertising claim, Plaintiffs' claim for false advertising fails.[4]

### i. Plaintiffs do not plead a proximately caused commercial injury to reputation or sales.

Plaintiffs cannot state a Lanham Act claim under 15 U.S.C. 1125(a)(1)(B) because their alleged injuries do not fall within the zone of interests of the Lanham Act and fails to show that Top proximately caused their alleged injuries.[5] "To invoke

---

[4]    For the same reason, Plaintiffs' claims for unfair competition and false designation of origin also fail.

[5]    Again, Plaintiffs' allegations vis-à-vis their warranty and their refusal to honor it in connection with stolen merchandise is entirely a problem of their own making. In addition to this

19

the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). *Lexmark* explained that the Lanham Act does not require competition between the parties but emphasized the commercial injury and proximate cause requirements: (1) an injury to plaintiff's commercial interest in sales or reputation that (2) flows directly "from the deception wrought by the defendant's advertising." *Id.* at 133–34. And generally, "that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* Plaintiffs' allegations do not reflect these requirements.

Courts in this district take a "flexible approach" to the two-part *Lexmark* inquiry. A claim by a direct competitor involves "the paradigmatic direct injury from false advertising." *In re Elysium Health-Chromadex Litig.*, No. 17-cv-7394, 2018 WL 4907590, at *12 (S.D.N.Y. Sept. 27, 2018) (quoting *Lexmark*, 572 U.S. at 138). Similarly, where "the advertisement makes a materially false comparison to a specific, competing product," the link between the advertisement and lost sales can be presumed. *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 377 F. Supp. 3d 337, 347 (S.D.N.Y. 2019) (citing *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d

---

argument, Top Experience also maintains that Plaintiffs' "group pleading" as discussed above is fatal to each of its claims, including Count III.

20

690, 694 (2d Cir. 1994)). In other words, the deception of consumers is likely to cause them to withhold trade from the plaintiff in these situations.

Here, only the first formulation applies. Top's advertisements do not make comparative claims about Plaintiffs' product. (*See generally*, TAC.)

### ii. Plaintiffs do not adequately allege their injuries flowed directly from the alleged deception.

Plaintiffs allege that Defendants and "Merchant Defendants" diverted sales — but not Plaintiffs' sales — because "[a]s per Amazon practice, the same product is only listed once, with one ASIN, and the only difference is that a customer has the option of purchasing from different sellers at different prices" and "by selling stolen goods, Defendants have been able to undercut Flycatcher's price thereby diverting millions of dollars of sales." (TAC ¶¶ 55, 59.)  But the TAC's allegations fail to explain how their efforts were undercut and what the commercial consequences were to Flycatcher. For example, Plaintiffs could have alleged that their website traffic or revenue is down by more than some specific percentage, but they did not.  Paragraphs 60 and 61 of the TAC are no more availing. While Flycatcher describes that it faces a "dilemma" by virtue of the "Defendants' actions" and has been "harmed from backlash from customers who purchase the[ ] stolen goods" from the "Merchant Defendants," no loss of revenue is expressly pled, nor do these allegations aver that

the purported "deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133-134.

The conspicuous absence of any allegations of commercial consequences directly tied to the acts of Top — lost sales or reputational harm — are fatal to Plaintiffs' claim. Moreover, if Flycatcher means to suggest that consumers were deceived and driven away from other "lawful" resellers of its products (TAC ¶ 55) that is not sufficient because the required "showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff." *Lexmark*, 572 U.S. at 133–34. But Flycatcher does not even state that it was in turn affected (or how) or otherwise provides the "necessary link" between the alleged deception and harm to Flycatcher. (TAC ¶ 58 (alleging "the product being sold is inferior, in that it completely lacks a Flycatcher warranty, and Defendants' customers are thereby deceived into purchasing an inferior product").) That is not sufficient to plead the proximately caused commercial injury required to invoke a claim for false advertising under the Lanham Act. Where a plaintiff's claim is directed to "misleading, non-comparative commercials," the injury "accrues equally to all competitors; none is more likely to suffer from the offending broadcasts than any other." *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988). Therefore, where the advertisement does not refer to a competing product or make

22

a comparative claim, "'some indication of actual injury and causation' would be necessary in order to ensure that a plaintiff's injury is not speculative." *Dependable Sales*, 377 F. Supp. 3d at 346. The Second Circuit's decision in *Ortho*, 32 F.3d at 690 and the Supreme Court's decision in *Lexmark*, all require a direct commercial injury — i.e., that the deception caused consumers to withhold trade from plaintiff.

Here, since Flycatcher has alleged no facts showing an economic or reputational injury "flowing directly from the deception wrought by defendant's advertising" that "cause[d consumers] to withhold trade from" Plaintiffs, the Court should dismiss their false advertising claim. *Lexmark*, 572 U.S. at 133–34.

## IV.  The Court should decline to exercise supplemental jurisdiction.

Because the federal claims on which Plaintiffs rest federal question jurisdiction[6] (TAC ¶ 2) should be dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *See also K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995). In such circumstances, supplemental jurisdiction is left to the court's discretion. *See Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994).

---

[6]     Plaintiffs do not allege diversity as a basis for federal jurisdiction in this case. (TAC ¶ 2 (omitting any facts or reference to diversity of citizenship under 28 U.S.C. § 1332).)

In *Carnegie-Mellon Univ. v. Cohill*, the Supreme Court stated that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness and comity — will point toward declining jurisdiction over the remaining state-law claims." 484 U.S. 343, 350 n.7 (1988). Following this lead, courts in this Circuit regularly decline to exercise jurisdiction over purely state law claims after dismissing federal Lanham Act claims. *See, e.g.*, *Dependable*, 394 F. Supp. 3d at 376 (declining to exercise supplemental jurisdiction following the dismissal of plaintiffs' Lanham Act claims); *Millennium Access Control Tech., Inc. v. On the Gate, LLC*, No. 15-cv-6067, 2017 WL 10445800, at *14 (E.D.N.Y. Feb. 14, 2017) (same); *Gerffert Co., Inc. v. Dean*, 41 F. Supp. 3d 201, 219 (E.D.N.Y. 2014) (same); *Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 395 (S.D.N.Y. 2011) (same). The Court should follow suit and decline supplemental jurisdiction over the TAC's state law claims.

## V.    The TAC's claim under N.Y. General Business Law § 349 fails.

Plaintiffs assert a claim under N.Y. General Business Law § 349 ("Section 349") (Count IV) which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" and provides that any person injured as a result of such acts or practices may bring an action for

damages. Section 349(a) and (h). Plaintiffs' claim fails because it is indistinguishable from its claim for trademark infringement.

The gravamen of Plaintiffs' claims is that defendants are sowing confusion through the sale of purported stolen goods. (TAC ¶¶ 48-55, 58-79.) But this is contrary to the Second Circuit's mandate, which holds that for a Section 349 claim to lie, "the gravamen of the complaint must be consumer injury or harm to the public interest," not mere competitive disadvantage. *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (citation omitted). "[T]rademark infringement claims are not cognizable under [Section] 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012); *see also Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 432 (S.D.N.Y. 2022) ("It is well settled that trademark infringement claims are not cognizable under [S]ection 349 unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution.") The standard of injury or harm to state a claim under Section 349 includes potential danger to the public health or safety. *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003); *see also Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, No. 96-cv-5150, 1997 WL 137443, at *3 (Mar. 24, 1997)

(dismissing a Section 349 claim where the complaint merely alleged consumer confusion resulting from trademark infringement and was "devoid of allegations supporting an inference that the public's health or safety was at stake as a result of the alleged infringement").

The TAC contains allegations to the effect that defendants are causing confusion and that such confusion is causing Plaintiffs to suffer harm. (SAC ¶¶ 62, 78-79.) But the TAC is entirely devoid of any allegations that the activities of the defendants are causing harm to the public's health or safety.

Plaintiffs' anticipated reliance on *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 171 N.E.3d 1192 (N.Y. 2021) and *Edmar Fin. Co., LLC v. Currenex, Inc.*, No. 21-cv-6598, 2023 WL 3570017, at *19 (S.D.N.Y. May 18, 2023) does not compel a different outcome. (ECF 129 at 3 n.4.) In *Kornea v. Miller*, this Court was confronted with *Himmelstein* and determined that it "does not warrant a different result" where, as here, "there are no allegations that Defendant engaged in consumer-oriented conduct that harmed Plaintiffs, nor do Plaintiffs cite evidence suggesting that Defendant engaged in consumer-oriented conduct that harmed them." No. 22-cv-4454, 2023 WL 9418674, at *13 (S.D.N.Y. Dec. 14, 2023), *report and recommendation adopted*, 2024 WL 283464 (S.D.N.Y. Jan. 25, 2024). The same is true with the TAC.

*Edmar* too is of no help to Plaintiffs. There, the Court determined that investment transactions which had traditionally been held not to be consumer-oriented because "individuals do not generally purchase securities in the same manner as traditional consumer product," was no longer good law because, under *Himmelstein*, New York's high court clarified that that to be "consumer oriented" did not turn on "whether the good or service was for personal use or business use — nor did it require that the good or service 'be directed to **all** members of the public.'" *Edmar Fin. Co.,* 2023 WL 3570017, at *20 (emphasis in original). Applying these principles, the court in *Edmar* ruled that the defendants' foreign exchange trading platform, wherein form contracts with the platform's users were utilized and affected all users alike, gave rise to a *prima facie* claim under Section 349. *See id.* But *Edmar*, like *Himmelstein*, "emphasized that the defendant 'relie[d] on a form contract with its customers' and that the defendant's allegedly deceptive business practices applied to all of defendant's customers and not the narrow subset of customers that were before the court." *Id.*

Nothing even remotely analogous is at issue here, including the use of form contracts. Accordingly, in the absence of credible allegations of public health or safety concerns, Plaintiffs have failed to state a claim under Section 349 and their claim should be dismissed.

## VI.    Plaintiffs' N.Y. Penal Law § 165.66 fails to state a claim.

Under New York law, three elements must be satisfied to find that there is an implied private right of action in a particular statute: "'(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme[.]'" *Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021) (quoting *Sheehy v. Big Flats Cmty. Day*, 73 N.Y.2d 629, 633 (1989)). Plaintiffs cite *Sheehy* in their TAC for the proposition that N.Y. Penal Law § 165.66 provides for a private cause of action. (TAC ¶ 83.)  Plaintiffs are wrong. The statute, enacted in late 2024, does not provide a private cause of action.

New York courts have consistently held that criminal statutes do not create private rights of action unless the Legislature explicitly states that it does. There is no such indication here.  In *Christian v. Town of Riga*, the court dismissed claims under various sections of the New York Penal Law, stating that these sections do not create a private right of action for any form of relief. *See* 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009); *see also Marvin v. Allen,* No. 23-cv-5947, 2024 WL 4290722, at *6 (S.D.N.Y. Sept. 24, 2024) (collecting cases holding that state criminal law does not create a private right of action.) Similarly, in *Patterson v. Patterson*, the court

emphasized that the legislature's express provision for civil remedies in certain sections of the Penal Law indicates that other sections, including those invoked by the plaintiff that do not contain such provisions, do not provide a private right to pursue civil claims. *See* No. 16-cv-00844, 2019 WL 1284346, at *8 (W.D.N.Y. Mar. 20, 2019).  Such is the case here.

Applying these principles to N.Y. Penal Law Section § 165.66, there is no indication that the statute was intended to benefit a specific class of plaintiffs or that a private right of action would promote the legislative purpose. The statute's primary aim is to criminalize the sale of stolen goods for financial gain. *See* McKinney's Penal Law § 165.66. Therefore, the Court should dismiss Count V of the TAC.

## VII.   Plaintiffs' conversion and replevin claims fail.

Counts VII and VIII of the TAC sound in claims for conversion and replevin. (SAC ¶¶ 88-97.) Under New York law, "[c]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property." *Meese v. Miller*, 436 N.Y.S.2d 496, 500 (4th Dept. 1981). To maintain a viable claim for conversion, a plaintiff must allege that "a demand for the return of property was made and that a refusal to comply with this demand followed." *Schloss*

29

*v. Danka Business Systems PLC,* No. 99-cv-0817, 2000 WL 282791, *7 (S.D.N.Y. March 16, 2000) (citing *Tompkins v. Fonda Glove Lining Co.*, 188 N.Y. 261 (1907)), *aff'd*, 2000 WL 1715262 (2d Cir. Nov. 13, 2000); *Granat v. Center Art Galleries– Hawaii, Inc.,* No. 91-cv-7252, 1993 WL 403977, at *7 (S.D.N.Y. Oct. 6, 1993) (finding defendants' alleged refusal to return painting satisfies grounds for conversion claim).

Replevin too, like conversion, requires a demand for the return of the property followed by a refusal to do so. "[T]o state a claim for replevin, a plaintiff must demand return of the property in question, and the cause of action then accrues when the defendant refuses to return it." *Cohen v. Dunne*, No. 15-cv-3155, 2017 WL 4516820, at *6 (S.D.N.Y. Sept. 27, 2017) (citations omitted) (dismissing plaintiff's replevin and conversion claims because his statements lacked specificity, including dates of the purported demand and refusal.)

Here, the TAC contains new allegations — and the only one specifically directed toward Top — alleging that Top failed to comply with Plaintiffs' demand letter which, they contend, required the return of all remaining inventory. (TAC ¶¶ 53-54, 92.) Their letter — an over-the-top-hyperaggressive-communique from plaintiffs' counsel — demanded an affirmative response from Top within 24 hours. (*See* Declaration of Joel G. MacMull, Esq., dated June 20, 2025 ("MacMull Decl."),

30

¶3, Ex. A.[7]) Yet, despite the unjustified demand for such a prompt response, Flycatcher's letter did not provide the location for which Top was to return the goods. (TAC ¶ 53; MacMull Decl., Ex. A at 2, ¶ 5 ("**Return all inventory** to a destination specified by our Client, providing proof of shipment and tracking information." (emphasis in original).)

The TAC alleges Top's purported refusal to return Plaintiffs' remaining inventory in purely conclusory terms. (TAC ¶¶ 53-54, 92.) No allegation is made that Top expressly refused to return Plaintiffs' property or when such a refusal was made. (*See generally*, TAC). And, insofar as Plaintiffs intend to rely on the mere fact that Top remained silent in connection with their November 13, 2024 demand letter, this theory of liability too fails. Silence is not tantamount to "refusal." "Refusal" requires an affirmative act. It is "[t]he denial or rejection of something offered or demanded." Black's Law Dictionary (12th ed. 2024). Courts have long distinguished between the two concepts. *See, e.g.*, *W. Tube Co. v. Aetna Indem. Co.*, 181 Ill. App. 592, 597 (1st Dist. 1913) ("Mere silence or refusal to answer letters . . . is not sufficient" to establish waiver). And while the foregoing is dispositive in assessing the defects associated with these claims as pled, the Court need not wrestle with

---

[7]    In considering a Rule 12(b)(6) motion to dismiss, a district court may consider "any statements or documents incorporated in [the complaint] by reference" and any document where the complaint "'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002).

these concepts for too long. Rather, a sufficient basis to dismiss Counts VII and VIII lies with *Cohen*, where, like here, plaintiff failed to allege "any specificity, including the dates of the purported . . . refusal." 2017 WL 4516820, at \*6. Accordingly, Plaintiffs' claims for conversion and replevin should be dismissed.

## VIII. Plaintiffs' claim under California Penal Code §496 (a) and (c) fails.

Plaintiff's round out their TAC with a claim under California Penal Code § 496 (a) and (c) ("Section 496"). The statute provides a civil claim when a "person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained . . . ." Cal. Penal Code § 496(a), (c). To state a claim under Section 496, a claimant must plead three elements: "(i) property was stolen or obtained in a manner constituting theft; (ii) the defendant knew the property was so stolen or obtained; and (iii) the defendant received or had possession of the stolen property." *Motivo Engr., LLC v. Black Gold Farms*, No. 22-cv-01447, 2023 WL 3150099, at \*8 (C.D. Cal. Mar. 28, 2023) (quoting *Switzer v. Wood*, 247 Cal. Rptr. 3d 114, 121 (Ct. App. 2019)). Plaintiffs' claim fails under this standard.

The statute's language is clear that for liability to attach, a person must buy or receive stolen property "knowing the property to be so stolen or obtained." Cal. Penal Code § 496(a); *see also Motivo Engr., LLC*, 2023 WL 3150099, at \*8. And

"knowing the property is stolen" is measured at the time defendant receives or obtains the property. *Switzer*, 247 Cal. Rptr. 3d at 122; *see CHEP USA v. Paco*, No. 23-cv-04535, 2024 WL 2875101, at *7 (N.D. Cal. May 3, 2024) (finding plaintiff's claim for a violation of Section 496 adequately pled where plaintiff alleged, *inter alia*, "[defendant] had actual knowledge that the pallets were stolen or obtained by theft at the time [defendant] obtained them").

Here, however, Plaintiffs do not allege such an allegation in their TAC. Rather, Plaintiffs merely allege that they notified/warned Top that the property was stolen only after Top took possession of the property and started selling it online. (TAC ¶¶ 50-54; MacMull Decl., Ex. A.) But such an after-the-fact warning does not satisfy the element that Top knew the property was stolen at the time that it bought or received the property. An after-the-fact warning by Plaintiffs is irrelevant to what Top knew at the time that it acquired the goods.

Plaintiffs' resulting conclusory allegation to the contrary that Top "acted knowingly or with willful ignorance of the facts" that the property was stolen, does not meet the pleading standard. (TAC ¶ 102); *Drimal*, 786 F.3d at 223 (stating legal conclusions couched as factual allegations are not accepted as true). Nothing alleged in paragraph 102, even if accepted as true, establishes Top knew the property was stolen because Plaintiffs merely allege that Top was sold large quantities of the goods

33

at below market prices and that they did not seek or receive proof of the source of the goods. (*Id.*) And, Plaintiffs also allege therein that the property is "generally only available from Flycatcher," but notably never allege that Top knew that. (*See id.*) Moreover, paragraph 102 purports to allege knowledge but it is yet another improper group pleading allegation, impermissibly lumping together all of the "California Defendants." *See Atuahene* 10 F. App'x at 34 (holding that lumping defendants together and providing no factual basis to distinguish their conduct fails to satisfy the minimum standard and warrants dismissal); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2015 WL 1344429, at *1–3 (S.D.N.Y. Mar. 23, 2015) (dismissing specific defendants from a matter for impermissible group pleading).

For these reasons, the Court should also dismiss Plaintiffs' Count IX of the TAC.

## CONCLUSION

For the foregoing reasons, Top respectfully requests that the Court grant its motion to dismiss the TAC in its entirety and with prejudice. Plaintiffs had three tries. The Court was clear that they would not get a fourth. (ECF 144).

Respectfully submitted,

Joel G. MacMull
Brian M. Block

34

**MANDELBAUM BARRETT PC**
510 Lexington Avenue, 21st Floor
New York, New York 10022
Tel.: 973-736-4600
Fax: 973-325-7467
Email:  jmacmull@mblawfirm.com
        bblock@mblawfirm.com

Dated: June 20, 2025

35

## CERTIFICATE OF COMPLIANCE

This document complies with the word limitation set forth in § 4.B. of Your Honor's Individual Rules of Practice in Civil Cases, because excluding the parts of the document exempted by this Rule, this document contains no more than 8,609 words. In determining the number of words, I have relied on the "word count" feature of Microsoft Office Word 2021, which was used to prepare this document.

This document complies with the typeface and type style requirements of the foregoing Rule, because this document has been prepared in proportionally spaced typeface using Microsoft Office Word 2021 in Equity A 14-point type.

_____
Joel G. MacMull

4910-8231-9695, v. 2