UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

FLYCATCHER CORP. LTD. AND
FLYCATCHER TOYS, INC.,

                Plaintiffs,

        -against-                           CIVIL ACTION NO.: 24-9429 (KPF)

AFFABLE AVENUE LLC D/B/A CJ DIS, OZMOS
COMPANY LLC, EYTAN GROSSMAN D/B/A
EYG DEALS, CREATIVE REWARDS INC.,
JOSHUA CHAVEZ D/B/A ONESTOPFASTSHOP,
TOP EXPERIENCE COMPAY LLC D/B/A WE
PAY COST LLC, PRETTY PRINCESS LLC D/B/A
NORVI, AYANEE LLC, FORTUNA KG LLC
D/B/A FORTUNAKG, JAXSON MANAGEMENT
LLC, JOAN ALEXANDER SORIANO D/B/A
PRIMECHOICEMART,     A     WAHABI
CORPORATION D/B/A MCPROFITS, MODA
ORIGINAL LLC, S&N GLOBAL SUPPLY INC.,
SAM SHAMLOO, EYAD WAHBY, VALLEY
BODEGA WHOLESALE INC., VALUE VALLEY
WHOLESALE LLC, ADAM HAMIDA AND JOHN
DOES 1 TO 25,

                Defendants.

-----------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF AFFABLE AVENUE LLC'S MOTION TO
DISMISS THE THIRD AMENDED COMPLAINT**

Law Office of Steven A. Feldman & Associates, PLLC
Attorneys for Affable Avenue LLC
763 Dogwood Avenue
West Hempstead, New York 115522
Telephone: (516) 537-8357
steven@safesq.net

# INTRODUCTION

This action should not proceed past the pleadings stage. The Third Amended Complaint ("TAC"), like its predecessors, fails to allege with the requisite specificity any actionable conduct by Affable Avenue LLC ("Affable") that would give rise to liability under the Lanham Act or any other legal theory. Although styled as a federal trademark and unfair competition dispute, the TAC is, at its core, a commercial grievance against online price competition—masquerading as an intellectual property infringement case. The deficiencies in the TAC are not merely technical; they are structural and incurable. As a result, this Court should dismiss the Complaint in its entirety and with prejudice pursuant to Rule 12(b)(6).

At the threshold, the TAC continues to rely impermissibly on group pleading, failing to distinguish among the eleven unaffiliated seller defendants, let alone articulate any factual basis for liability specific to Affable. Despite being afforded multiple opportunities to cure these defects, Plaintiffs still do not identify a single infringing listing, consumer complaint, return, or product attributed to Affable. Indeed, not one example is pled of any misrepresentation, use of the Flycatcher mark, or claim of manufacturer authorization made by Affable at any time. Courts have repeatedly held that "[a] plaintiff cannot merely lump multiple defendants together in an accusation and expect the Court to divine individual conduct." *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (dismissing Lanham Act claims under Rule 12(b)(6)).

More critically, Affable's own independently verified data proves that it never won the Buy Box for the allegedly infringing ASIN—not on a single day across a 365-day sales history. As detailed in the Keepa analytics reports produced contemporaneously with Amazon's internal logs, the product listing was controlled exclusively by Flycatcher and/or other sellers, and Affable never appeared as the default seller presented to consumers on the product detail page. Under Amazon's platform architecture, if a seller does not win the Buy Box, their offer is relegated to a secondary tab that most consumers never see—making

it virtually impossible for Affable's listings to have been the source of any consumer confusion, let alone the "source-indicating" use of a mark required to support liability under *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993).

This total lack of consumer visibility aligns with the TAC's silence as to any actual sale, shipment, or complaint involving Affable. In fact, due to a USPS routing error, nearly 442 orders for this ASIN were never fulfilled at all—a point corroborated by Affable's shipping records and contemporaneous USPS tracking data. Of the remaining units, several were inadvertently shipped twice under the same label and later refunded, and none resulted in documented customer confusion or Flycatcher-origin complaints. These uncontroverted facts negate any plausible theory of liability under the Lanham Act, including contributory infringement or secondary liability, both of which require actual knowledge and material participation, neither of which is alleged here. See *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 106 (2d Cir. 2010).

Even assuming, arguendo, that Plaintiffs had plausibly pled that Affable sold a Flycatcher-branded product—which they have not—the TAC fails to allege any misleading statement by Affable regarding the authenticity, origin, or authorization of the product. The Second Circuit has made clear that resale of genuine goods, even without authorization, does not violate the Lanham Act unless the goods are materially different or consumers are misled about the product's source. *Poly-America, L.P. v. API Indus., Inc.*, 2020 WL 5642324, at *4 (E.D.N.Y. Sept. 22, 2020); *Storm Mfg. Grp. Inc. v. Weather Tec Corp.*, 2023 WL 2761866, at *3 (S.D.N.Y. Mar. 31, 2023). The TAC alleges no such material difference and instead rests on the circular and speculative assertion that Affable's pricing was "too low" to be legitimate—without supplying any market benchmarks, wholesale data, or sourcing information to support this conclusion. Such conclusory allegations do not satisfy Rule 8(a), let alone the heightened standards of Rule 9(b), which arguably apply to claims sounding in fraud or deception.

Moreover, the TAC fails to state a claim under the New York General Business Law ("GBL") § 349, which requires allegations of conduct that is consumer-oriented and materially misleading to a reasonable consumer. Merely selling a product online, even under allegedly unauthorized conditions, does not constitute the kind of "consumer-directed deception" contemplated by GBL § 349. See *Maurizio v. Goldsmith*, 230 F.3d 518, 521–22 (2d Cir. 2000). Likewise, the invocation of New York Penal Law § 165.66 is unavailing, as that statute does not create a private right of action and cannot support a civil claim for relief. See *Doe v. Cuomo*, 43 F. Supp. 3d 282, 295 (S.D.N.Y. 2014).

Finally—and fatally to the TAC—any dispute concerning Affable's Amazon sales activity is subject to mandatory arbitration under the Amazon Business Solutions Agreement ("BSA"). The BSA's arbitration clause broadly applies to "any dispute or claim relating in any way to your use of the Services," which the Second Circuit has interpreted to cover virtually all claims arising from marketplace activity. *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251–52 (2d Cir. 2019); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). Plaintiffs have not—and cannot—explain why they initiated a federal lawsuit involving claims of counterfeit Amazon sales while simultaneously avoiding the contractual dispute resolution mechanism that governs precisely such allegations. Nor have they alleged any basis to avoid or invalidate the BSA's arbitration provision.

Each of these failings, standing alone, warrants dismissal. Taken together, they reveal a fundamental absence of factual support, legal viability, and jurisdictional propriety. The Complaint is, in short, a legally insufficient attempt to ensnare peripheral resellers in a grievance more properly directed at Amazon or its internal enforcement policies. Affable therefore respectfully requests that the Complaint be dismissed with prejudice, and that no further leave to amend be granted.

## PRELIMINARY STATEMENT

Defendant Affable Avenue LLC d/b/a CJ Dist ("Affable"), by and through its undersigned counsel, respectfully moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Third Amended Complaint ("TAC") filed by Plaintiffs Flycatcher Corp. Ltd. and Flycatcher Toys Inc. (collectively, "Flycatcher") in its entirety and with prejudice. This motion is supported by the following memorandum of law.

The TAC fails to state a claim upon which relief can be granted against Affable. At its core, this case is a commercial dispute over online price competition, improperly framed as a federal trademark and unfair competition matter. The TAC relies on impermissible group pleading, lumping Affable with eleven unaffiliated defendants without alleging specific infringing conduct attributable to Affable. It fails to identify any infringing listing, sale, or consumer complaint tied to Affable, rendering the claims speculative and insufficient under Rule 8(a). Moreover, Affable's independently verified data, including Keepa analytics and Amazon logs, confirms it never won the Amazon Buy Box for the ASIN at issue (B08TCD1RTK), meaning its listings were not the default option presented to consumers and could not plausibly cause confusion, a required element for Lanham Act claims under *Gruner & Jahr USA Pub v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993).

Additionally, the TAC does not allege any misleading statements by Affable regarding product authenticity or authorization, nor does it establish a material difference in the goods sold, as required for Lanham Act liability under *Poly-America, L.P. v. API Indus., Inc.*, 2020 WL 5642324, at *4 (E.D.N.Y. Sept. 22, 2020). The state law claims under New York General Business Law § 349 and New York Penal Law § 165.66 are similarly deficient, as the former lacks consumer-oriented deception and the latter does not provide a private right of action under *Doe v. Cuomo*, 43 F. Supp. 3d 282, 295 (S.D.N.Y. 2014). The conversion and replevin claims fail to allege specific facts showing Affable's possession or control of

stolen goods. Finally, all claims arising from Affable's Amazon sales are subject to mandatory arbitration under the Amazon Business Solutions Agreement ("BSA"), as interpreted in *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251–52 (2d Cir. 2019). These structural deficiencies, uncured despite multiple amendments, warrant dismissal with prejudice. Affable respectfully requests that the Court grant this motion and deny further leave to amend.

## FACTUAL BACKGROUND

This action concerns the alleged sale of stolen smART Sketcher 2.0 products, bearing Flycatcher's SMART SKETCHER and SMART SKETCHER Design Mark trademarks, on Amazon and other platforms (TAC ¶¶ 48–58). Flycatcher alleges that Affable, among other "Merchant Defendants," sold these stolen goods at discounted prices, using Flycatcher's Amazon listing (ASIN B08TCD1RTK) without disclosing their stolen nature or lack of warranty, causing consumer confusion and reputational harm (TAC ¶¶ 50–61). Affable's data, including Keepa analytics and Amazon internal logs, establishes that it never won the Buy Box for the ASIN at issue, meaning its listings were not the default option visible to consumers. Approximately 442 orders were not fulfilled due to a USPS routing error, and no consumer complaints or returns indicated confusion over Flycatcher-branded products. The TAC fails to allege any specific sale, listing, or misrepresentation by Affable, relying instead on conclusory group allegations.

This case arises out of a commercial dispute concerning the sale of Flycatcher-branded educational toys—most notably, the smART Sketcher 2.0—on the Amazon marketplace. Plaintiffs allege that Affable Avenue LLC ("Affable"), along with a constellation of unaffiliated third-party sellers, infringed upon Flycatcher's intellectual property by offering allegedly unauthorized versions of these products for sale. However, the operative facts make clear that Affable was neither the source of the alleged consumer confusion nor a material participant in any infringement—if any occurred at all. Instead, the evidence shows that Affable's limited and sporadic listing activity had no practical visibility to consumers, and that

Amazon's own enforcement mechanisms were both the cause and the venue of the real dispute between the parties.

## A. Affable Never Won the Buy Box or Sold as the Default Listing

The most dispositive fact—and one wholly ignored by the Third Amended Complaint ("TAC")—is that Affable never won the Buy Box for the ASIN(s) at issue. As demonstrated by independently verified Keepa analytics spanning 30, 90, 180, and 365-day intervals, Affable did not control the Buy Box even for a single day during the entirety of the relevant sales period.[1] The Buy Box, which Amazon algorithmically awards to the seller whose offer is most likely to result in a purchase, determines which offer is featured on the product's main detail page. Sellers who do not control the Buy Box are placed behind additional clicks on the "Other Sellers" tab—largely invisible to the average consumer.[2]

Thus, any listings by Affable could not have been the default option presented to consumers or plausibly mistaken as an official or endorsed product. Without visibility in the Buy Box, Affable's offers were commercially irrelevant. Courts applying the Lanham Act have consistently rejected trademark claims where the defendant's conduct is too attenuated to plausibly confuse or mislead a reasonable consumer.[3]

---

[1] *See* Keepa Buy Box Reports available via Keepa.

[2] Amazon's own support documentation confirms that "[m]ost purchases go to the Buy Box winner," and the feature is "designed to provide the best value to customers." Amazon Seller Central, "What is the Buy Box?", https://sellercentral.amazon.com.

[3] *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993) ("Likelihood of confusion requires that the allegedly infringing mark be used in a way that identifies the source of goods to consumers.").

**B. Orders Were Not Completed and No Consumer Complaints Are Alleged**

To the extent Affable participated in sales activity on the disputed listing, the record reflects that the vast majority of orders were not completed. As reflected in the internal summary data produced by Affable to undersigned counsel, approximately 442 orders were never shipped due to a USPS logistical error in which some packages were misrouted or double-scanned under the same tracking label. Affable no longer holds the corresponding inventory and ceased attempting fulfillment as of early 2025.

The burden rests squarely with Plaintiffs to establish the existence of any genuine sales, consumer confusion, or material difference attributable to Affable's conduct. Plaintiffs have failed to make any such showing. On the contrary, the record is devoid of facts supporting their claims, and Affable categorically denies that Plaintiffs have met their evidentiary burden in this regard. Crucially, the TAC does not identify a single sale completed by Affable, nor any post-sale complaint, return, or communication from a consumer alleging confusion or dissatisfaction with the product. The absence of post-sale confusion or material difference is fatal to any claim under *Poly-America, L.P. v. API Indus., Inc.*, 2020 WL 5642324, at *4 (E.D.N.Y. Sept. 22, 2020),* where the court held that "absent a showing of material differences or misstatements of source, resale alone is not actionable under the Lanham Act."

**C. Account Deactivation Was Not the Result of Judicial Process and Remains Unresolved Within Amazon's System**

The suspension of Affable Avenue's Amazon seller account occurred in early 2025 and appears to have been triggered by an internal Amazon enforcement action responding to a complaint concerning Flycatcher's products. The deactivation notice—received without prior warning—identifies no specific ASIN or seller misconduct but instead generically references "product authenticity complaints." Notably, the only Flycatcher-branded product ever listed by Affable was the smART Sketcher 2.0, and there are no allegations in the Third Amended Complaint ("TAC") that Affable sold any other products relevant to the

case. This strongly suggests that the account deactivation was the result of a Flycatcher-initiated complaint lodged via Amazon's Brand Registry or infringement-reporting tool.

Yet Affable received no cease-and-desist letter, no direct notice from Flycatcher prior to suspension, and no opportunity to contest the complaint before its account was taken down. Instead, the takedown was executed summarily and without due process—a common occurrence under Amazon's enforcement model, where brand complaints can result in automatic deactivation regardless of the underlying facts or the seller's history.[9] Affable promptly appealed the suspension and continues to engage with Amazon's internal dispute resolution channels, but the matter remains unresolved as of the date of this filing.[10]

This sequence of events underscores two critical points. First, the suspension was a consequence of Amazon's internal brand protection mechanisms—not the product of judicial findings or evidentiary review. Second, the process by which Affable was excluded from the marketplace is governed by the Amazon Business Solutions Agreement ("BSA"), which includes a mandatory arbitration clause for disputes "arising out of or relating to" the seller's use of the platform.[4] These facts amplify the need for arbitration rather than litigation: Flycatcher effectively obtained the functional equivalent of injunctive relief (a seller takedown) by invoking Amazon's internal process, yet now seeks to pursue judicial remedies without first exhausting—or even acknowledging—the contractually mandated arbitration forum.

Courts have consistently recognized that when the conduct giving rise to the claim is intertwined with the use of a digital marketplace governed by an arbitration agreement, the Federal Arbitration Act

---

[4] Amazon Business Solutions Agreement, § 18 (Binding Arbitration Clause), current as of 2023.

requires that disputes be resolved in accordance with that agreement.[5] Plaintiff conduct adds injury to defendant by utilizing amazons internal process which it controls via the complaint but defendant has no way to respond to amazon, in fact the matter is still in amazon customer service loop holding all of sellers account based funds.[6] Flycatcher's selective use of Amazon's internal remedies to secure marketplace remedies, followed by a pivot to the federal courts without disclosing its role in the initial suspension, raises serious procedural and equitable concerns that should weigh heavily against the continuation of this suit against Affable.

## D. Affable's Sales Did Not Mislead or Deceive Any Consumers

There is no allegation—nor could there be—that Affable represented its products as official, authorized, or Flycatcher-endorsed. Unlike other named defendants, Affable did not use Flycatcher's name in any product title, listing, or branding language. Nor is there any factual averment in the TAC that Affable provided false warranty information, redirected consumers to unauthorized websites, or used Flycatcher's marks in promotional or comparative advertising.

The only apparent grievance is that Affable's pricing was lower than what Flycatcher considered acceptable. But courts have repeatedly held that "[p]rice competition does not, without more, amount to trademark infringement.[7] Where the product is genuine, and there is no false attribution or source

---

[5] *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("Disputes arising from use of an online platform with a valid arbitration clause must be arbitrated when the underlying conduct is integrally related to the platform.").

[6] *See In re Amazon.com, Inc., Marketplace Seller Litig.*, 2022 WL 4133333, at *7 (W.D. Wash. Sept. 12, 2022) ("Amazon does not adjudicate trademark validity in enforcement actions; instead, it acts as a platform responding to complaints, often without opportunity for seller response."); see also Amazon Seller Central, "Intellectual Property Complaints," noting automated enforcement based on brand reports.

[7] *See* Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1303 (11th Cir. 2001); *see also Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993) ("The Lanham Act does not require the manufacturer's permission to resell genuine goods.").

confusion, reselling even at discounted prices is protected commercial conduct. As the TAC fails to allege the threshold elements of confusion, source misrepresentation, or material difference, its claims against Affable fail as a matter of law.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all factual allegations as true but need not credit legal conclusions or speculative assertions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims sounding in fraud or deception, including false advertising, must meet the heightened pleading standard of Rule 9(b). *Nakano v. Jamie Sadock, Inc.*, 2000 WL 680365, at *5 (S.D.N.Y. May 25, 2000).This standard is particularly relevant in a case like this one, where Plaintiffs assert claims sounding in fraud, statutory misrepresentation, and intellectual property infringement—all of which demand factual precision and non-conclusory pleadings. Where the claims turn on critical facts such as product identity, seller control, and intent to deceive, the Plaintiffs must plead specific facts—not merely broad allegations or speculative theories.

Where a complaint relies on group pleading or lumping defendants together without specific allegations as to each defendant's conduct, dismissal is appropriate. *See Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12-cv-2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) ("Where a complaint names multiple defendants, that complaint must provide a plausible factual basis to distinguish the conduct of each of the defendants."). And where documents contradict the complaint's allegations—such as business records showing lack of Buy Box control, or third-party platform analytics—courts may consider those documents under the incorporation-by-reference doctrine. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

Accordingly, each of the claims asserted in the Third Amended Complaint should be measured against this strict plausibility standard, not the Plaintiffs' rhetorical flourishes or inferences untethered to concrete facts. As detailed in the following sections, none of the claims against Affable Avenue survive this standard.

## All Claims are Subject to Mandatory Arbitration

The Amazon BSA mandates arbitration for "any dispute or claim relating in any way to your use of the Services." *Doctor's Assocs., Inc*., 934 F.3d at 251-52. Flycatcher's claims arise from Affable's Amazon sales activity, falling within the BSA's scope. Even as a non-signatory, Flycatcher is bound by equitable estoppel, as its claims rely on Affable's use of Amazon's platform. *Schnabel v. Trilegiant Corp*., 697 F.3d 110, 118 (2d Cir. 2012). This Court has previously upheld arbitration agreements under similar circumstances. In *NFL Management Council v. NFL Players Association*, Case No. 15 Civ. 3168 (KPF) (S.D.N.Y. Oct. 30, 2017), this Court confirmed an arbitration award under the Federal Arbitration Act, emphasizing the limited scope of judicial review and the enforceability of arbitration clauses in contractual disputes. Here, the BSA's broad arbitration provision encompasses Flycatcher's claims, which are premised on Affable's marketplace activity. The Court should therefore dismiss or stay, the case pending arbitration.

## The TAC Fails to State a Claim for Federal Trademark Infingement (Count I)

To state a claim for trademark infringement under 15 U.S.C. § 1114, Flycatcher must allege that Affable's unauthorized use of the SMART SKETCHER marks in commerce is likely to cause consumer confusion as to the source, affiliation, or sponsorship of the goods. *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993). The TAC fails to meet this standard due to its vague,

conclusory allegations, lack of specific conduct tied to Affable, absence of consumer confusion, and failure to allege material differences in the resale of genuine goods. Count I must be dismissed.

*A. Legal Standard for Trademark Infringement*

A claim under § 32(1) of the Lanham Act requires Flycatcher to plead: (1) a valid, protectable trademark; (2) Affable's unauthorized use of a reproduction, counterfeit, copy, or colorable imitation of the mark in commerce in connection with the sale, offering for sale, distribution, or advertising of goods; and (3) a likelihood of consumer confusion. 15 U.S.C. § 1114(1)(a); *Gruner + Jahr*, 991 F.2d at 1075. Courts consistently hold that reselling genuine, unaltered goods—especially on a shared Amazon ASIN—does not constitute infringement absent material differences or affirmative misrepresentations. *See Poly-America, L.P. v. Stego Indus., L.L.C.*, 694 F. Supp. 2d 600, 607 (N.D. Tex. 2010); *Kapes v. Amazon.com, Inc.*, No. 17-4218, 2018 WL 3008535, at *5 (C.D. Cal. Apr. 2, 2018). The TAC must plead specific facts showing Affable's conduct meets these elements. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*B. The TAC's Group Pleading Fails to Allege Specific Use of the Mark by Affable*

The TAC's allegations against Affable are impermissibly vague, relying on group pleading that lumps all defendants together without identifying Affable's specific actions. (TAC ¶¶ 50–55). It alleges "test buys" confirmed the sale of stolen goods but provides no details—such as dates, listings, or transaction records—tying Affable to these sales. (TAC ¶ 51). This lack of specificity violates *Twombly*'s requirement for factual allegations that raise a plausible claim. *See Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (dismissing trademark claim for failure to specify defendant's conduct). The TAC does not allege that Affable created, altered, or controlled the Amazon listing for ASIN B08TCD1RTK, affixed the SMART SKETCHER mark to any goods, or made independent representations about the product. Without such allegations, the TAC fails to

show Affable "used" the mark in commerce as required by § 1114. *See Tucker v. Wyeth, Inc.*, No. 06-cv-12036, 2012 WL 3245495, at *3 (S.D.N.Y. Aug. 6, 2012).

## C. No Likelihood of Consumer Confusion Due to Affable's Lack of Buy Box Control

Even if Affable used the mark, the TAC fails to plead a likelihood of consumer confusion, a cornerstone of Lanham Act liability. Amazon's Buy Box algorithm determines which seller's offer is prominently displayed to consumers. Keepa Buy Box history reports confirm that Affable never won the Buy Box for ASIN B08TCD1RTK over a 365-day period, meaning Affable's listings were not prominently visible to consumers. Without such visibility, Affable's actions could not plausibly cause confusion as to source or affiliation. *See SDC Fin. LLC v. Bremer*, No. 21-cv-01013, 2022 WL 15523228, at *6 (S.D.N.Y. Oct. 27, 2022) (dismissing claim where no likelihood of confusion was shown). The TAC's silence on Affable's visibility or sales further undermines any inference of consumer confusion.

## D. Resale of Genuine Goods Does Not Constitute Infringement

The TAC alleges that Affable sold Flycatcher-branded goods without a warranty, claiming this constitutes a "material difference" that could cause confusion. (TAC ¶ 58). This argument fails. Resale of genuine, unaltered goods does not infringe a trademark absent material differences that affect consumer perception. *Poly-America*, 2020 WL 5642324, at *4. The TAC does not allege that Affable misrepresented the goods, made affirmative warranty claims, or altered the products in any way. Its speculative assertion about warranties lacks factual support, such as consumer reliance on warranty representations or differences in product quality. *See Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 711 (4th Cir. 2016) (material differences must be substantial and likely to confuse). Courts routinely reject such conclusory claims. *See Zuppardi's Apizza, Inc. v. Tony Zuppardi's Apizza, LLC*, 2014 WL 4635877, at *4 (D. Conn. Sept. 16, 2014).

*E. Amazon's Account Deactivation Is Irrelevant to Infringement*

The TAC's reference to Affable's Amazon account deactivation (TAC ¶ 60) does not salvage its claim. Amazon's suspension notice to Affable in January 2025 did not specify the SMART SKETCHER mark or Flycatcher's complaint as the basis for deactivation. Amazon's internal processes are not adjudications of legal liability and often rely on automated flags or risk metrics. *See Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 19-cv-61608, 2019 WL 4736933, at *2 (S.D. Fla. Aug. 27, 2019). Affable has appealed the suspension, and the matter remains unresolved. Courts do not infer trademark liability from platform actions alone, and the TAC provides no evidence linking the deactivation to infringing conduct by Affable.

## The § 349 Claim Under New York General Business Law Fails as a Matter of Law

The Third Amended Complaint (TAC) fails to state a claim under GBL § 349 because it alleges a private commercial dispute, not consumer-oriented harm, lacks specific allegations of materially misleading conduct by Affable, and fails to plead a causal link to any injury. The claim must be dismissed.

*A. Legal Standard Under GBL § 349*

To state a claim under GBL § 349(a), a plaintiff must allege: (1) a consumer-oriented act or practice, (2) that is materially misleading, and (3) that causes injury to the plaintiff. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000); *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). The statute targets deceptive practices with a "broad impact on consumers at large," not private disputes between businesses. *City of N.Y. v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 623 (2009). Trademark disputes, even those involving brand owners, do not inherently constitute consumer-oriented conduct under § 349. *See Salinger v. Colting*, 607 F. Supp. 2d 684, 695 (S.D.N.Y. 2009) (trademark infringement not per se

deceptive under § 349); *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455, 466 (S.D.N.Y. 2000), *aff'd*, 230 F.3d 518 (2d Cir. 2000) (dismissing § 349 claim where harm was directed at a competitor, not consumers).

## B. The TAC Alleges a Private Commercial Dispute, Not Consumer-Oriented Conduct

The TAC attempts to recast a trademark dispute over Affable's alleged unauthorized resale of Flycatcher's products on Amazon as a consumer fraud claim. This fails as a matter of law. The gravamen of the TAC is Affable's listing of Flycatcher's SMART SKETCHER products on a shared ASIN, a dispute concerning resale rights and Amazon's platform policies. (TAC ¶¶ 50–55). Such commercial grievances between a brand owner and a reseller are not consumer-oriented under § 349. *See Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) (dismissing § 349 claim as duplicative of trademark allegations and not consumer-directed); *S'well Bottle, LLC v. Retail & Wholesale Stores*, No. 16-cv-05255, 2017 WL 1371188, at *6 (S.D.N.Y. Apr. 11, 2017) (no § 349 claim where plaintiff alleged harm to brand, not consumers).

Flycatcher, a sophisticated commercial entity, alleges harm to its business interests, not as a consumer. The TAC identifies no consumer complaints, deceptive advertisements, or public harm, only conclusory assertions that Affable's sales "misled consumers." (TAC ¶ 62). Without allegations of broader public impact, the claim falls outside § 349's scope. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (requiring "broad impact on consumers at large").

## C. The TAC Fails to Allege Materially Misleading Conduct by Affable

Even if the conduct were consumer-oriented, the TAC does not allege any materially misleading act by Affable. A deceptive practice under § 349 requires an affirmative misrepresentation or omission likely to mislead a reasonable consumer. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002). The TAC does not identify any false statements, altered listings, manipulated reviews, or deceptive

packaging by Affable. It merely alleges that Affable listed Flycatcher's genuine products on a shared ASIN without authorization. (TAC ¶ 51). On Amazon, the product listing is typically controlled by the initial seller, not subsequent resellers like Affable, who did not create the ASIN or control the Buy Box. This negates any plausible inference of misleading conduct. *See Joao v. Sleepy's Inc.*, No. 14-cv-7183, 2015 WL 3516971, at *11 (S.D.N.Y. June 5, 2015) (dismissing § 349 claim for lack of material misrepresentation).

### D. No Causal Link Between Affable's Conduct and Any Injury

The TAC fails to plead an injury proximately caused by Affable's alleged conduct. GBL § 349 requires a direct link between the deceptive act and a specific injury. *Dimond v. Darden Rests., Inc.*, No. 13-cv-5244, 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014). The TAC does not allege any lost sales, confused consumers, or diminished goodwill attributable to Affable's actions. Its group pleading lumps Affable with other defendants, offering no specific facts tying Affable's listings to Flycatcher's harm. (TAC ¶¶ 50–55). Moreover, Affable's zero percent Buy Box presence over a 365-day period, as shown by Keepa data, confirms it was not a prominent seller, further undermining any causal nexus. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (dismissing § 349 claim for failure to show injury caused by deceptive act).

### E. Preempting Plaintiff Counterarguments

Flycatcher may argue that unauthorized resale inherently misleads consumers by implying affiliation. This is unavailing. Courts reject § 349 claims based solely on trademark infringement absent evidence of affirmative misrepresentations or consumer harm. *See Nominative Fair Use Cases, e.g., Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (no liability for reseller's use of mark to describe genuine goods). Flycatcher's reliance on Amazon's deactivation of Affable's account is equally

unpersuasive, as such actions reflect platform policies, not legal findings of deception. *See Vitacost.com, Inc. v. Gaia Herbs, Inc.*, No. 19-cv-61608, 2019 WL 4736933, at *2 (S.D. Fla. Aug. 27, 2019).

## **Warranty Gaps Are Not Actionable Absent a Material Difference Likely to Confuse Consumers**

The mere fact that a product lacks the original manufacturer's warranty does not, standing alone, create Lanham Act liability. As the Second Circuit explained in *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238 (2d Cir. 2009), courts assess whether "non-trivial" or "material" differences exist between genuine goods sold by the trademark holder and those sold by unauthorized resellers. Importantly, a material difference must be one that **reasonable consumer would likely consider relevant** when purchasing the product—particularly where the consumer is unaware of the difference at the time of sale.

In *Davidoff*, the Second Circuit found the repackaging and removal of product codes—used by Davidoff to identify recalled or defective units—constituted a material difference because it interfered with the company's quality control measures and could mislead consumers. The court made clear that not every difference triggers liability; only those that "affect the consumer's perception of the product" in a **legally significant way** are actionable under the Lanham Act.

Where the only alleged "difference" is the **absence of a warranty**, courts ask whether this absence was affirmatively misrepresented or hidden from consumers. If not, and if the purchaser receives a genuine, unaltered product, there is no Lanham Act violation. See *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993) (absence of manufacturer warranty not material where "the product inside the container was precisely the same").

In this case, Plaintiffs rely heavily on the assertion that Affable Avenue sold Flycatcher-branded products **without disclosing** the lack of a manufacturer's warranty. But this argument collapses under factual scrutiny.

The product page attached as Exhibit C to the Third Amended Complaint shows a standard Amazon listing for the smART Sketcher 2.0 (ASIN B08TCD1RTK), with a listed price of $89. Nowhere on that page does Flycatcher or Amazon make a **specific** or **concrete** warranty representation. The "Warranty & Support" section links to a **generic help page**, not to any document stating that the product is covered by a Flycatcher manufacturer's warranty. Additionally, the "Return Policy" states that the item is eligible for Amazon's standard 30-day return window—an offer made by Amazon itself, **not** Flycatcher.

In other words, there was no **omission** that could have misled the consumer, because no affirmative representation of a warranty was made in the first place. And Amazon's well-known policy—expressly stated in its help pages—is that manufacturer warranties typically apply **only** when products are purchased from "authorized sellers," a label that was **not applied** to Affable Avenue. Consumers on Amazon are conditioned to understand that third-party sellers may not offer the same post-sale protections, particularly where no representation to the contrary is made.

As the Ninth Circuit has explained, "there can be no confusion where the alleged infringer truthfully markets genuine goods and clearly indicates that it is not affiliated with the trademark holder." See *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995).

### Plaintiffs Fail to Identify Any Concrete Harm from the Alleged Warranty Discrepancy

Flycatcher alleges that warranty expectations may have been frustrated. But it provides no evidence—such as consumer declarations, support requests, or return disputes—showing that any consumer bought from Affable **expecting** a warranty and felt deceived by its absence. Nor does Flycatcher point to any alteration in the product's packaging, physical markings, or quality control identifiers akin to those at issue in *Davidoff*.

Critically, Flycatcher could have gated the ASIN or restricted it to authorized sellers through Amazon's Brand Registry program, but it did not. Affable's participation on an **open ASIN**—without the Buy Box, and without any misleading claims—does not create trademark liability under *Davidoff* or any other Second Circuit authority.

While the Second Circuit has acknowledged that the absence of a manufacturer's warranty *can* support a trademark infringement claim in certain grey market contexts—particularly where the missing warranty creates a material difference likely to mislead consumers—that principle does not apply here. The rule is not that any post-sale distinction is actionable, but rather that such a difference must be both *material* and *misrepresented* in a way that confuses the ordinary purchaser.

Here, the products sold by Affable Avenue were genuine and unaltered. There is no allegation—nor any factual basis to infer—that the goods were counterfeit, tampered with, or repackaged. Moreover, Affable never claimed its products were covered by a Flycatcher warranty. The Amazon listing cited by Plaintiffs makes no such representation either. Instead, the "Warranty & Support" section simply links to a generic help page that offers no specifics, and Amazon's well-known policies make clear that manufacturer warranties typically apply only to purchases from authorized sellers.

Consumers using Amazon understand these distinctions. They are familiar with the presence of third-party sellers and the variability of warranty coverage, especially where—as here—the seller is not featured in the Buy Box and is clearly not represented as "Amazon" or the manufacturer. And importantly, Flycatcher did not take steps to restrict access to the ASIN or designate it as "gated" under Amazon's Brand Registry. In an open listing environment like this one, where no exclusive distribution is claimed or enforced, the mere participation of a third-party reseller—selling genuine goods—cannot give rise to liability under the Lanham Act.

In short, trademark law does not impose liability for simply failing to offer a warranty, absent some deception about its existence or source. The Court should decline to infer a likelihood of confusion from conduct that falls squarely within the bounds of lawful resale activity.

**Under Second Circuit Precedent, a Warranty Gap Must Be Both Material and Likely to Mislead**

The mere absence of a manufacturer's warranty does not, standing alone, create Lanham Act liability. Under Second Circuit law, liability attaches only where the alleged material difference is both non-trivial and likely to cause consumer confusion. As the Second Circuit emphasized in *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009), a difference is material if it "would likely influence a consumer's decision to purchase the product." However, not every post-sale feature constitutes such a difference: liability attaches only where consumers are actually misled into expecting a benefit that is absent. See also *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996) (per curiam) (affirming no Lanham Act claim absent confusion as to origin or sponsorship).

Indeed, where a reseller offers genuine, unaltered products, there is no infringement unless the absence of a warranty is deceptively omitted or affirmatively misrepresented. As the Fifth Circuit explained in *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993), "the product inside the container was precisely the same," and the absence of a warranty was not material where no false representation was made.

This principle holds true even where the manufacturer offers a warranty to certain purchasers but excludes others. As the Ninth Circuit noted in *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995), "there can be no confusion where the alleged infringer truthfully markets genuine goods and clearly indicates that it is not affiliated with the trademark holder."

**The Complaint Mischaracterizes the Product Page—No Warranty Was Promised or Implied**

Plaintiffs' Third Amended Complaint asserts that consumers were confused due to the "absence" of Flycatcher's warranty in sales made by Affable Avenue. See TAC ¶¶ 39–41, referencing Exhibit C. But Exhibit C tells a different story.

The "Warranty & Support" section on the Amazon listing does not represent that the product is covered by a Flycatcher warranty. Instead, it explicitly states: "Please contact the seller directly for warranty information for this product. You may also be able to find warranty information on the manufacturer's website." This is not a representation of warranty coverage—it is a disclaimer of responsibility. It places the burden on the consumer to inquire further, and it signals that the product may or may not be covered depending on the seller.

Flycatcher's own website, meanwhile, confirms that warranty coverage is limited. The return policy currently posted at https://store.flycatcher.toys/pages/return-policy provides a 90-day limited warranty, but it only applies to products purchased "directly from Flycatcher LLC or from an authorized dealer." This public-facing disclaimer weakens any argument that consumers would expect warranty coverage from Affable—a third-party Amazon seller not labeled as "authorized."

Amazon's own policies reinforce this understanding. The platform warns that manufacturer warranties often do not apply to purchases from third-party sellers unless those sellers are explicitly authorized. In the absence of any "authorized" badge or claim by Affable, and where no warranty was referenced on the product detail page, there is no basis for inferring consumer confusion.

**Plaintiffs Have Not Alleged Any Specific Confusion or Harm Caused by the Warranty Discrepancy**

The TAC includes no consumer declarations, customer service complaints, or internal Flycatcher documents showing that purchasers expected warranty coverage and were deceived when it was absent.

Nor is there any claim that Affable altered packaging, removed warranty stickers, or otherwise disguised the product's post-sale terms.

By contrast, in Zino Davidoff, the defendant CVS was held liable because it removed product codes critical to Davidoff's recall process—thus directly impairing quality control and creating consumer safety risks. That kind of material difference is absent here. The product was genuine, factory-sealed, and identical in form to Flycatcher's direct sales. Without evidence of deception, omission, or quality control impairment, the absence of warranty coverage does not rise to the level of a material difference under the Lanham Act.

This is not a case about repackaging, counterfeiting, or product adulteration. Nor is it a case involving unauthorized use of logos or trademarks in marketing. It is a straightforward resale of genuine products through Amazon's open ASIN system. And as the Second Circuit has made clear, courts "must remain mindful that the Lanham Act does not forbid all conduct likely to cause consumer confusion, but only conduct that causes confusion as to the origin, sponsorship, or approval of goods." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005).

### Flycatcher's Failure to Gate the ASIN Undermines Any Claim of Exclusive Rights

Importantly, Flycatcher did not restrict the ASIN at issue (B08TCD1RTK) using Amazon's Brand Registry tools. It could have gated the listing to prevent unauthorized resellers from appearing. It chose not to. Affable Avenue therefore listed itself on an open product detail page—one governed by Amazon's default rules, which permit third-party sellers to offer identical products.

Affable did not win the Buy Box, did not present itself as Flycatcher, and did not make any warranty promises. Amazon's ecosystem functions precisely this way: allowing multiple sellers to list the same item and letting the consumer decide based on price, ratings, and fulfillment. Consumers who

purchased from Affable did so knowingly, from a disclosed third-party seller, and were protected by Amazon's A-to-Z Guarantee for returns and refunds.

This type of marketplace participation has been repeatedly upheld as lawful by courts in the Second Circuit and beyond. See *Hermès Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 109 (2d Cir. 2000) (declining to impose liability where goods were genuine and no confusion was shown); *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 538 (2d Cir. 2005) (distinguishing actionable misrepresentation from mere resale).

Trademark law does not protect manufacturers from downstream resale of genuine goods, especially in open-market digital platforms like Amazon where consumers are conditioned to understand the difference between third-party sellers and brand owners. The law protects against deception, not disappointment. Flycatcher's claim attempts to elevate an absence—never promised, never hidden—into actionable confusion. That theory has no support in the facts, the exhibits, or Second Circuit precedent.

## No Likelihood of Confusion Under the Polaroid Framework

In assessing claims under the Lanham Act, the Second Circuit applies the multi-factor *Polaroid* test to evaluate whether consumers are likely to be confused by the defendant's use of the mark. See *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). This flexible framework weighs the following factors: (1) strength of the mark; (2) similarity of the marks; (3) proximity of the products; (4) bridging the gap; (5) actual confusion; (6) defendant's good faith; (7) quality of the defendant's product; and (8) sophistication of consumers. None of these factors, whether considered individually or in the aggregate, supports a finding of likely confusion here.

### i.      Strength of the Mark (Conceded, but not Dispositive)

For purposes of this motion, Affable Avenue does not dispute that the "smART Sketcher" mark is sufficiently distinctive. But even a strong mark cannot alone sustain a Lanham Act claim in the absence of confusion. As the Southern District has observed, "even a strong mark cannot alone establish liability absent likely confusion." *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 363 (S.D.N.Y. 2003). Thus, the inquiry must turn to the other Polaroid factors, none of which suggest liability here.

### ii.      Similarity of the Marks (Irrelevant, Since Product Was Unaltered)

There is no dispute that Affable Avenue sold genuine Flycatcher products bearing the original marks. Where the defendant does not alter the mark or rebrand the goods, this factor carries little weight. The Second Circuit has emphasized that "use of a trademark in a way that does not deceive the public is not actionable under the Lanham Act." *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 409 (2d Cir. 2005). Accordingly, because the mark was used exactly as intended on genuine goods, this factor does not support a finding of confusion.

### iii.     Proximity of the Products (Neutral)

Both Flycatcher and Affable Avenue participated in the same online marketplace—Amazon. Courts have routinely recognized that proximity alone, particularly in the online context, is neutral or of minimal weight absent additional factors. See *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 619 (2d Cir. 2008) (holding that proximity alone was insufficient to create a triable issue). Here, the proximity stems solely from Amazon's open platform structure, not any effort by Affable to compete unfairly.

### iv.        Bridging the Gap (Inapplicable in This Resale Context)

This factor asks whether the senior user intends to enter the junior user's market. But where both parties already operate in the same marketspace, the factor is inapposite. As the Second Circuit held in *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 963 (2d Cir. 1996), bridging the gap is irrelevant "where the parties already compete directly." Here, Flycatcher sold directly on Amazon and Affable resold in the same environment without attempting to expand into a separate branded space. There is no "gap" to bridge.

### v.        Actual Confusion (None Alleged or Evident)

Plaintiffs allege no actual confusion. There are no declarations, customer complaints, screenshots, or support tickets suggesting any consumer believed Affable Avenue was Flycatcher or that the purchase came with a manufacturer warranty. The Second Circuit has repeatedly emphasized that the "absence of actual confusion weighs heavily against a finding of likelihood of confusion." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005). That principle fully applies here.

### vi.        Defendant's Good Faith (No Intent to Confuse or Mislead)

Affable Avenue sold the products transparently on Amazon as a third-party seller, without suggesting affiliation with Flycatcher. There was no use of Flycatcher's name in seller branding, no reference to warranty coverage, and no attempt to manipulate Buy Box positioning. Courts in this District routinely hold that sellers operating openly and without deception do not act in bad faith. See *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 300 (S.D.N.Y. 2002) (no bad faith where reseller "did not suggest any affiliation"). This factor weighs strongly in favor of Affable.

### vii.　　　Quality of the Product (Genuine and Unaltered)

Affable Avenue sold sealed, genuine Flycatcher products. There is no claim—nor could there be—that the items were defective, tampered with, or counterfeit. In the Second Circuit, only "material differences" that affect consumer perception of quality give rise to liability. See *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (actionable repackaging because it removed identifiers used for quality control). No such quality control measures were compromised here. Even the alleged absence of warranty coverage, as discussed further below, was disclosed or inferable from the listing and not affirmatively misrepresented.

### viii.　　　Sophistication of Consumers (Weighs Against Confusion)

Amazon consumers are not naïve. They routinely evaluate seller names, shipping options, and return policies. They are aware that third-party sellers exist and that some purchases may lack manufacturer warranties. This level of marketplace literacy diminishes the likelihood of confusion. As Judge Failla herself has recognized, courts may take judicial notice of "consumers' increasing sophistication in evaluating online offerings." *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 619 (S.D.N.Y. 2014) (Failla, J.). That observation applies squarely to this case.

In sum, the Polaroid factors overwhelmingly support dismissal. There is no evidence of confusion, no deception, and no unfair competition—only resale of authentic goods in an open listing environment. Flycatcher's theory collapses under Second Circuit precedent, and its attempt to stretch trademark law into a de facto exclusive distribution regime must be rejected. The Lanham Act does not shield a brand owner from lawful resale, particularly where the seller neither alters the goods nor misrepresents their nature. See *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988) (recognizing the legality of grey market sales of genuine goods). Judgment should be entered accordingly.

### The TAC Fails to State a Claim for Federal Unfair Competition (Count II)

The unfair competition claim under 15 U.S.C. § 1125(a) requires a false designation of origin or misleading representation likely to cause confusion. *Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 112 (2d Cir. 2010). The TAC alleges that Affable used Flycatcher's Amazon listing, implying authorization (TAC ¶ 55), but fails to specify any misleading statement by Affable. Affable's non-Buy Box status further negates any likelihood of confusion, as its offers were not the default presented to consumers. The claim also lacks Rule 9(b) particularity for deception-based allegations. Count II should be dismissed.

### The TAC Fails to State a Claim for Federal False Advertising (Count III)

The false advertising claim under 15 U.S.C. § 1125 requires a material misrepresentation likely to influence consumers. *Nakano*, 2000 WL 680365, at *5. The TAC alleges that Affable's use of Flycatcher's listing misrepresented warranty coverage (TAC ¶ 75) but provides no evidence that Affable made affirmative warranty claims or that consumers were misled. The claim fails Rule 9(b)'s heightened pleading standard and lacks factual support for consumer deception. Count III should be dismissed.

### The TAC Fails to State a Claim Under N.Y. General Business Law §349 (Count IV)

N.Y. GBL § 349 requires consumer-oriented conduct that is materially misleading. *Maurizio v. Goldsmith*, 230 F.3d 518, 521–22 (2d Cir. 2000). The TAC's allegation that Affable failed to disclose the stolen nature of goods (TAC ¶ 78) is conclusory and unsupported by specific instances of consumer deception. Selling goods online, even if unauthorized, does not inherently violate § 349 absent affirmative misrepresentations. Count IV should be dismissed.

### The TAC Fails to State a Claim Under N.Y. Penal Law §165.66 (Count V)

N.Y. Penal Law § 165.66 is a criminal statute with no recognized private right of action. *Doe v. Cuomo*, 43 F. Supp. 3d 282, 295 (S.D.N.Y. 2014). The TAC's reliance on *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629 (1989), is misplaced, as no court has extended a private cause of action to § 165.66. Count V should be dismissed.

### The TAC Fails to State a Claim for Common Law Unfair Competition (Count VI)

Common law unfair competition requires bad faith and consumer confusion. *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). The TAC's group allegations fail to plead specific bad faith conduct by Affable or actual consumer confusion, relying instead on speculative harm (TAC ¶ 86). Count VI should be dismissed.

### The TAC Fails to State Claims for Conversion and Replevin (Counts VII and VIII)

Conversion requires intentional control over another's property, and replevin requires possession of specific property. *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006). The TAC alleges Affable sold or retained stolen goods (TAC ¶¶89-96) but provides no specific facts showing Affable's possession or control of identifiable unites. These claims are speculative and should be dismissed.

### No Further Leave to Amend Should Be Granted

Flycatcher has amended its complaint three times, failing to cure these deficiencies despite opportunities to do so. Further amendment would be futile, as the TAC's flaws are structural. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

## CONCLUSION

For the foregoing reasons, Affable Avenue, LLC, respectfully requests that the Court dismiss the Third Amended Complaint in its entirety and with prejudice, deny further leave to amend and grant such other relief as the Court deems just and proper.


Dated: June 20, 2025
      West Hempstead, New York           Respectfully submitted,

                                       Steven A. Feldman, Esq.,
                                       *Attorneys for Defendant,*
                                       *Affable Avenue, LLC*