**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
FLYCATCHER CORP. LTD. AND
FLYCATCHER TOYS, INC.,

                        Plaintiffs,

        -against-                            CIVIL ACTION NO.: 24-9429 (KPF)

AFFABLE AVENUE LLC D/B/A CJ DIS, OZMOS COMPANY LLC, EYTAN GROSSMAN D/B/A EYG DEALS, CREATIVE REWARDS INC., JOSHUA CHAVEZ D/B/A ONESTOPFASTSHOP, TOP EXPERIENCE COMPAY LLC D/B/A WE PAY COST LLC, PRETTY PRINCESS LLC D/B/A NORVI, AYANEE LLC, FORTUNA KG LLC D/B/A FORTUNAKG, JAXSON MANAGEMENT LLC, JOAN ALEXANDER SORIANO D/B/A PRIMECHOICEMART, A WAHABI CORPORATION D/B/A MCPROFITS, MODA ORIGINAL LLC, S&N GLOBAL SUPPLY INC., SAM SHAMLOO, EYAD WAHBY, VALLEY BODEGA WHOLESALE INC., VALUE VALLEY WHOLESALE LLC, ADAM HAMIDA AND JOHN DOES 1 TO 25,

                        Defendants.

-------------------------------------------------------------x

**RESPONSE TO ORDER TO SHOW CAUSE**

Law Office of Steven A. Feldman & Associates, PLLC
Attorneys for Affable Avenue LLC
763 Dogwood Avenue
West Hempstead, New York 115522
Telephone: (516) 537-8357
steven@safesq.net

**To the Hon. Katherine Polk Failla, U.S.D.J.:**

I respectfully submit this brief in response to the Court's Order to Show Cause dated June 26, 2025, addressing why the memorandum of law filed in support of Affable Avenue LLC's motion to dismiss should not be stricken and why sanctions should not be imposed pursuant to Federal Rule of Civil Procedure 11, while simultaneously requesting leave to withdraw the current motion and memorandum and to file a corrected and amended memorandum of law that addresses both the citation deficiencies and material factual developments that have occurred since the original filing.

I accept full responsibility for the citation inaccuracies identified in the memorandum of law filed June 20, 2025, and respectfully request leave to withdraw that filing and submit a corrected memorandum that addresses both the citation deficiencies and material factual developments resulting in significant prejudice and unpremeditated harm to my client. However, I respectfully submit that these errors do not warrant striking the brief or imposing sanctions because: (1) the errors were inadvertent and resulted from sophisticated AI hallucination mechanisms rather than intentional misconduct; (2) immediate corrective action was undertaken upon discovery, with a substantially corrected draft prepared within twenty-four hours; (3) no prejudice has resulted to any party; (4) the legal arguments remain substantively sound and supported by legitimate authority; and (5) comprehensive verification protocols have been implemented to prevent recurrence. The appropriate resolution is withdrawal of the current motion with leave to refile the corrected version, thereby avoiding judicial resources on problematic authorities while preserving the substantive legal arguments that remain valid.

At the threshold, I accept unqualified responsibility for the citation deficiencies identified in my memorandum of law. These errors—encompassing non-existent case citations and misattributed quotations—represent a failure to meet the verification standards that this Court and the legal profession

demand. I do not seek to excuse these lapses or diminish their seriousness. My obligation as an officer of this Court requires that every authority cited be accurate, verifiable, and presented in absolute good faith.

The citation errors in this matter are, for me, a source of profound personal regret. My professional practice has always been guided by the principle that legal advocacy is not mere mechanical execution, but a craft that demands the gardener's touch—a careful, lasting engagement that leaves something of oneself behind. Each citation, each argument, each procedural decision is a mark upon the clay, an indelible impression that may one day be studied, critiqued, or serve as a cautionary tale.

To borrow the words of Ray Bradbury in *Fahrenheit 451*:

> *"Everyone must leave something behind when he dies, my grandfather said. A child or a book or a painting or a house or a wall built or a pair of shoes made. Or a garden planted. Something your hand touched some way so your soul has somewhere to go when you die, and when people look at that tree or that flower you planted, you're there.*
> *It doesn't matter what you do, he said, so long as you change something from the way it was before you touched it into something that's like you after you take your hands away. The difference between the man who just cuts lawns and a real gardener is in the touching, he said. The lawn-cutter might just as well not have been there at all; the gardener will be there a lifetime.*

In this spirit, I recognize that the work we do as advocates—our filings, our citations, our choices—are not ephemeral. They endure, shaping the legal landscape and, in their own way, becoming part of the record of our professional lives. My aspiration is always to be the gardener, not the lawn-cutter: to leave a mark that is careful, thoughtful, and lasting, even as I acknowledge and learn from my errors.

While serious, these errors differ materially from the egregious misconduct described in cases such as *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), and *Park v. Kim*, 91 F.4th 610 (2d Cir. 2024), and more closely align with circumstances where courts have demonstrated measured approaches to citation inaccuracies. Unlike cases involving wholesale fabrication of authorities or blind reliance on AI-generated content followed by deliberate concealment, the errors here arose from a confluence of technical and procedural factors that, while reflecting inadequate verification protocols, fundamentally

lack the subjective bad faith that typically triggers severe sanctions. Courts recognize that there is an important difference between unintentional citation mistakes and deliberate attempts to mislead. When errors occur without an intent to deceive, they are generally viewed as lapses in diligence rather than as misconduct deserving of severe sanctions.

 The primary source of citation inaccuracies stems from database migration complications wherein (i) many problematic citations originated from research conducted in December 2024 using Casetext with CoCounsel, (ii) when Casetext was subsequently acquired by Thomson Reuters and integrated into Westlaw, I discontinued my subscription due to prohibitive cost constraints, thereby losing verification access to previously compiled authorities, and (iii) this technological disruption created a verification gap that my alternative research methods failed to adequately bridge. Additionally, several errors involved cross-platform citation discrepancies, including parallel citations, unpublished opinions, and formatting inconsistencies between legal databases—technical issues that are distinct from deliberate fabrication of legal principles and reflect the type of inadvertent error that courts have treated with proportional rather than punitive responses.

 Critically, unlike the pattern of deception identified in *Mata*, where sanctions were imposed not merely for citing fictitious cases but for the attorneys' "failure to be forthcoming, withdraw the prior submissions, and continue to give legitimacy to fake cases in the subsequent submissions despite having multiple reasons to believe that the cases lacked authenticity," I immediately acknowledged the errors upon notification and undertook comprehensive corrective action within twenty-four hours. This forthcoming response aligns with judicial preferences for candor and prompt and acceptance of full responsibility and a committed to a stricter personal verification process.

 Furthermore, while I employed multiple AI-enhanced research platforms and cross-verification tools in preparing the memorandum, my final verification process proved insufficient to detect database-

specific errors and citation formatting problems, particularly where citations appeared consistent across certain platforms but were inaccurate when measured against authoritative sources. However, the substantive legal arguments advanced in the memorandum remain grounded in established doctrine and supported by legitimate authority, and the errors did not result in fabrication of legal principles, intentional misrepresentation of law, or material impact on the Court's consideration of the underlying legal issues—factors that courts, including this Court, have recognized as relevant to proportional sanctions analysis.

Upon notification by co-counsel on June 22, 2025, I immediately undertook comprehensive corrective measures designed to address both the immediate citation deficiencies and the underlying procedural gaps that permitted their occurrence. These remedial efforts encompassed (i) primary source research involving direct consultation of original court records, official reporters, and courthouse archives for pre-PACER cases, (ii) implementation of multi-platform cross-verification protocols requiring mandatory cross-checking through multiple independent legal research platforms including Justia, Google Scholar, and traditional print sources, and (iii) establishment of database reconciliation procedures involving resolution of discrepancies through direct consultation of archival legal resources and substitution of alternative, verifiable authorities where necessary.

As a result of these comprehensive verification efforts, a fully corrected and verified memorandum, incorporating both citation corrections and material factual developments that have emerged since the original filing, is prepared for immediate submission upon the Court's leave to amend.

To ensure such errors do not recur, I have implemented systematic procedural safeguards:

- Require primary source checks for all citations, especially unpublished or database-specific ones.
- Use AI tools alongside traditional methods for multi-platform verification.
- Enroll in legal education courses on technology and research accuracy.
- Implement multi-stage reviews to ensure each filing is accurate and candid.

The relief sought should be proportional to the nature of the misconduct, with particular attention to the immediacy and comprehensiveness of corrective action undertaken upon discovery of the

deficiencies. I understand that Courts have distinguished between inadvertent citation errors and deliberate attempts to deceive, recognizing that the former category warrants measured remedial response rather than punitive sanctions. I hope to have the opportunity to share my experience with my collegues and work with the court to rectify what has be wronged.

The procedural posture here demonstrates the inadvertent nature of the errors and supports measured relief rather than severe sanctions. Within twenty-four hours of co-counsel's notification on June 22, 2025, I had prepared and transmitted a substantially corrected draft memorandum to co-counsel for collaborative review, the email that was forwarded contained correspondence including the draft amended which will be provided to the court under separate cover upon request as well as a comprehensive corrective citation table. This immediate response reflects both the good faith nature of my original research efforts and the prompt remedial action undertaken upon discovering the verification deficiencies. The fact that I voluntarily shared the corrected draft with co-counsel for verification—rather than attempting to conceal or minimize the scope of corrections required—further demonstrates transparency and professional accountability consistent with inadvertent error rather than deliberate misconduct.

Moreover, no prejudice has resulted to any party, no judicial resources have been expended on consideration of fictitious authorities, and comprehensive corrective action has been undertaken with systematic procedural safeguards implemented to prevent recurrence. Under these circumstances, the appropriate remedy is permission to file corrected pleadings with enhanced verification protocols rather than case-dispositive sanctions that would be disproportionate to the inadvertent nature of the underlying errors.

Beyond citation corrections, significant factual developments occurred immediately prior to the original filing deadline—notably Amazon's comprehensive account impoundment and resulting third-

party financial enforcement actions. These developments fundamentally alter the case's legal and equitable framework, necessitating substantive amendment to ensure the Court has a complete and accurate record.

Based on the immediate corrective actions taken, the absence of prejudice to any party, and the comprehensive measures implemented to prevent recurrence, I respectfully request that this Court exercise its discretion to (i) grant leave to withdraw the current motion to dismiss and memorandum of law filed June 20, 2025, (ii) grant leave to file a corrected and amended memorandum of law incorporating both citation corrections and material factual developments that have emerged since the original filing, (iii) decline to strike the withdrawn motion, recognizing that the substantive legal arguments remain valid and supported by legitimate authority, (iv) impose no sanctions given the inadvertent nature of the errors, the immediate corrective measures undertaken, and the voluntary withdrawal request, or alternatively, impose sanctions proportional to the inadvertent nature of the errors and focused on deterrence rather than punishment, (v) permit supplementation of the record with a sworn declaration addressing threshold issues as appropriate to ensure a complete and accurate procedural foundation, and (vi) order that Exhibit A be filed under seal to protect confidential co-counsel communications and work product reflected in the draft memorandum and related correspondence.

Your Honor, in the ancient libraries of Ashurbanipal, scribes carried their stylus as both tool and sacred trust—understanding that every mark upon clay would endure long beyond their mortal span. As the role the mark (x) in Ezekiel Chapter 9, that marked the foreheads with a *tav* (x) of blood and ink, bear the same solemn recognition: that the written word carries power to preserve or condemn, to build or destroy, and leaves an indelible mark which cannot be erased but should be withdrawn, let it lead other to think these citations were correct.

I have failed in that sacred trust. The errors in my memorandum, however inadvertent, have diminished the integrity of the record and the dignity of these proceedings. Like the scribes of antiquity

who bore their stylus as both privilege and burden, I understand that legal authorship demands more than mere competence—it requires absolute fidelity to truth and precision in every mark upon the page.

I do not ask for absolution, but for the opportunity to demonstrate that this failure has deepened rather than diminished my commitment to the craft we serve. The *tav* marked a sign of accountability—a recognition that once written it is inscribed indelibly. I pray that through comprehensive correction and unwavering diligence going forward, I may prove myself worthy to carry the stylus once more in service of justice and truth.

Dated: July 11, 2025
      West Hempstead, New York

Respectfully submitted,

_____
Steven A. Feldman, Esq.,
*Attorneys for Defendant,*
*Affable Avenue, LLC*

**CERTIFICATE OF SERVICE:**

I hereby certify that a true and correct copy of the foregoing was served upon all counsel of record via the Court's ECF system on this 11th day of July, 2025.

    **/s/ Steven A. Feldman**