UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLYCATCHER CORP. LTD, and FLYCATCHER TOYS INC., <br><br> Plaintiffs, <br><br> -v.- <br><br> AFFABLE AVENUE LLC d/b/a CJ DIST, OZMOS COMPANY LLC, EYTAN GROSSMAN d/b/a EYG DEALS, CREATIVE REWARDS INC., JOSHUA CHAVEZ d/b/a ONESTOPFASTSHOP, TOP EXPERIENCE COMPANY LLC d/b/a WE PAY COST LLC, PRETTY PRINCESS LLC d/b/a NORVI, AYANEE LLC, FORTUNA KG LLC d/b/a FORTUNAKG, JAXSON MANAGEMENT LLC, JOAN ALEXANDER SORIANO d/b/a PRIMECHOICEMART, A WAHABI CORPORATION d/b/a MCPROFITS, MODA ORIGINAL LLC, S&N GLOBAL SUPPLY INC., SAM SHAMLOO, EYAD WAHBY, VALLEY BODEGA WHOLESALE INC., and JOHN DOES 1 to 25, <br><br> Defendants. | 24 Civ. 9429 (KPF) <br><br> **ORDER** |

KATHERINE POLK FAILLA, District Judge:

On June 26, 2025, the Court ordered Mr. Feldman to show cause in writing on or before July 10, 2025, why the brief in support of Defendant Affable Avenue LLC's ("Affable") motion to dismiss should not be stricken from the docket and sanctions imposed against him pursuant to Federal Rule of Civil Procedure 11. (Dkt. #159). On July 11, 2025, Mr. Feldman submitted his written response to the Order to Show Cause. (Dkt. #164 (the "Response")). On the same date, Plaintiffs filed a letter opposing Affable's request to file

additional documents in support of its motion to dismiss. (Dkt. #165). On July 14, 2025, Mr. Feldman filed, on behalf of Affable, a letter in further support of Affable's request to file additional papers in support of its motion to dismiss. (Dkt. #166).

The Court looked askance at Mr. Feldman's Response because the writing style in it differed markedly from the writing style in the letter he submitted to the Court three days later. (*Compare* Response *with* Dkt. #166). Mr. Feldman's Response contains an extended quote from Ray Bradbury's *Fahrenheit 451* and a metaphor about an ancient stylus. (Response 3, 7). By contrast, his July 14, 2025 letter contains typographical errors in the very first paragraph, and, indeed, throughout. (Dkt. #166). This prompted the Court to further analyze Mr. Feldman's Response. On page three, Mr. Feldman contrasts his conduct with the misconduct described in two (real) cases: *Mata* v. *Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023), and *Park* v. *Kim*, 91 F.4th 610 (2d Cir. 2024). On page four of the Response, Mr. Feldman appears to quote from *Mata* (without providing a pin cite), as follows:

> Critically, unlike the pattern of deception identified in *Mata*, where sanctions were imposed not merely for citing fictitious cases but for the attorneys' "**failure to be forthcoming, withdraw the prior submissions, and continue to give legitimacy to fake cases in the subsequent submissions despite having multiple reasons to believe that the cases lacked authenticity**," I immediately acknowledged the errors upon notification and undertook comprehensive corrective action within twenty-four hours.

(Response 4 (emphasis added)).

This quote appears nowhere in *Mata*. A Google search revealed it to be a direct quote from an October 24, 2023 article that recaps an analysis of *Mata* done by an attorney named Christopher F. Lyon. *Christopher F. Lyon Delves into Risks of ChatGPT in Legal Field for NYLitigator*, GoldbergSegalla (Oct. 24, 2023), www.goldbergsegalla.com/news-and-knowledge/news/christopher-f-lyon-delves-into-risks-of-chatgpt-in-legal-field-for-nylitigator (last visited July 18, 2025). Mr. Feldman did not attribute the quote to this article. That is especially concerning considering that he was responding to an Order to Show Cause why he should not be sanctioned for his erroneous citations. And it would be especially concerning, and indeed unacceptable, if Mr. Feldman used a large language model to draft his Response without verifying whether the quotations in it were accurately attributed.

Turning to the substance of Mr. Feldman's Response, the Court denies the request for leave to file "a corrected and amended memorandum of law that addresses both the citation deficiencies and material factual developments that have occurred since the original filing." (Response 2). Mr. Feldman makes several submissions in his Response that cannot be squared with reality. *First*, Mr. Feldman submits that his "errors were inadvertent and resulted from sophisticated AI hallucination mechanisms rather than intentional misconduct." (*Id.*). But if his errors were the result of "sophisticated AI hallucination mechanisms," then they could not have been "inadvertent" because Mr. Feldman is obligated to verify that the cases he cites are, in fact, real cases, *see* Fed. R. Civ. P. 11(b), and he did not. This amounts to a series

3

of deliberate choices, not "inadvertent" errors. On the one hand, Mr. Feldman states that he "accept[s] unqualified responsibility for the citation deficiencies" which are "a source of profound personal regret" for him. (Response 2-3). On the other hand, he blames "database migration complications" that resulted in his "losing verification access to previously compiled authorities" and "a verification gap that [his] alternative research methods failed to adequately bridge." (*Id.* at 4). To take a page out of Mr. Feldman's book, this is so much "sound and fury, [s]ignifying nothing." William Shakespeare, *Macbeth*, Act V, Scene V, Lines 30-31. Mr. Feldman must know how to verify that a case exists on Westlaw without the added benefit of AI tools. He claims that, going forward, he will undertake certain "remedial efforts," including, *inter alia*, "establish[ing] … database reconciliation procedures involving resolution of discrepancies through direct consultation of archival legal resources and substitution of alternative, verifiable authorities where necessary." (Response 5). Most lawyers simply call this "conducting legal research." All lawyers must know how to do it. Mr. Feldman is not excused from this professional obligation by dint of using emerging technology.

*Second*, Mr. Feldman submits that he "immediately acknowledged the errors upon notification and undertook comprehensive correction action within twenty-four hours." (Response 4). But that is not true. Mr. Feldman did not inform the Court "immediately" when he learned from counsel for Defendant Top Experience Company LLC that the brief Mr. Feldman filed contained several citation errors. Counsel for Defendant Top Experience Company LLC

informed Mr. Feldman of these errors on June 22, 2025. (Dkt. #158). Yet — setting aside whether he was prepared to submit a corrected brief — Mr. Feldman did not inform the Court that he submitted a brief containing citation errors before the Court issued the Order to Show Cause four days later, on June 26, 2025. (Dkt. #159). Mr. Feldman was obligated to inform the Court that his brief contained these errors immediately upon learning that it did, but he did not.

*Third*, Mr. Feldman states that "significant factual developments occurred immediately prior to the original filing deadline — notably Amazon's comprehensive account impoundment and resulting third-party financial enforcement actions," which "fundamentally alter the case's legal and equitable framework, necessitating substantive amendment." (Response 6-7). In his July 14, 2025 letter, he expands on this and requests "leave to file [a] supplemental motion and accompanying documents" regarding arbitration. (Dkt. #166 at 3). The Court previously expressed skepticism about Affable's motion to compel arbitration. (*See* Dkt. #144). The Court presumed that was why the issue was only briefly raised in Affable's opening brief. (*See* Dkt. #156 at 9-10, 12). Of course, it turned out that Mr. Feldman used AI technology to generate this brief without sufficiently verifying it, which perhaps explains why the brief was not as focused on arbitration as he would have liked it to be. Accordingly, the Court denies Mr. Feldman's request to amend his brief regarding arbitration because the Court will not allow Mr. Feldman to benefit from failing to substantially raise the issue in the first place.

For now, the Court reserves decision on whether to impose sanctions on Mr. Feldman (including the form of such sanctions), and whether to strike the June 20, 2025 brief from the docket and allow him to file an amended brief regarding his non-arbitration arguments. In the meantime, Defendant Top Experience Company LLC's motion to dismiss is pending. (Dkt. #150-152). The Court wants to hear directly from Mr. Feldman, so that it can give him the opportunity to — as he puts it — "prove [himself] worthy to carry the stylus once more in service of justice and truth." (Response 8). Accordingly, Mr. Feldman, and all parties who have appeared in this action, are hereby ordered to appear at a conference on **August 14, 2025**, at **2:00 p.m.**, in Courtroom 618 of the Thurgood Marshall United States Courthouse, New York, New York 10007.[1]

SO ORDERED.

Dated:  July 18, 2025
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[1] The Court also reserves decision on Mr. Feldman's request to file docket entry 158-1 under seal to "protect confidential co-counsel communications and work product reflected in the draft memorandum and related correspondence." (Response 7). It will address this issue at the conference.