Downloaded from vLex by Steven Feldman 

© Copyright 2025, vLex Fastcase. All Rights Reserved.
Copy for use in the context of the business of the vLex customer only. Otherwise, distribution or reproduction is not permitted

# Himmelstein v. Matthew Bender & Co.

| | |
|---|---|
| **Decision Date:** | 03 June 2021 |
| **Docket Number:** | No. 39, 39 |
| **Citation:** | Himmelstein v. Matthew Bender & Co., 37 N.Y.3d 169, 171 N.E.3d 1192, 150 N.Y.S.3d 79 (N.Y. 2021) |
| **Parties:** | HIMMELSTEIN, MCCONNELL, GRIBBEN, DONOGHUE & JOSEPH, LLP, et al., Appellants, v. MATTHEW BENDER & COMPANY, INC., a Member of LexisNexis Group, Inc., Respondent. |
| **Court:** | New York Court of Appeals Court of Appeals |

**Id. vLex Fastcase:** VLEX-901209366

**Link:** https://fastcase.vlex.com/vid/himmelstein-v-matthew-bender-901209366

Downloaded from vLex by Steven Feldman

vLex

37 N.Y.3d 169

171 N.E.3d 1192

150 N.Y.S.3d 79

**HIMMELSTEIN, MCCONNELL, GRIBBEN, DONOGHUE & JOSEPH, LLP, et al., Appellants,**

**v. MATTHEW BENDER & COMPANY, INC., a Member of LexisNexis Group, Inc., Respondent.**

No. 39

Court of Appeals of New York.

June 3, 2021[*1194] [**82]

Fishmanlaw, PC, New York City (James B. Fishman of counsel), and Anderson Kill P.C., New York City (Jeffrey E. Glen of counsel), for appellants.

Skadden, Arps, Slate, Meagher & Flom LLP, New York City (Anthony J. Dreyer, Susan L. Saltzstein and Jordan A. Feirman of counsel), for respondent.

Letitia James, Attorney General, New York City (Mark S. Grube, Barbara D. Underwood and Steven C. Wu of counsel), for State of New York, amicus curiae.

# OPINION OF THE COURT

RIVERA, J.**[*1195] [***173]**

For several consecutive years, plaintiffs bought the annual edition of a legal resource manual published and sold by defendant. The main issue on this appeal is whether plaintiffs' complaint adequately pleaded a deceptive act or practice prohibited by General Business Law § 349, based on defendant's alleged misrepresentations about the completeness of the laws reproduced in one section of its publication. Although defendant's acts are consumer-oriented—as the alleged misrepresentations are contained in a manual that was then marketed to and available for purchase by consumers—defendant's acts were not materially misleading. Contrary to plaintiffs' argument, a consumer acting reasonably under the circumstances here would not have believed that defendant represented that the section at issue, containing rent control statutes and regulations, was current and accurate for its one-year shelf life.

I.

Plaintiffs Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP, Housing Court Answers, Inc., and Michael McKee are, respectively, a law firm that handles landlord-tenant actions, **[***174]** a non-profit corporation that assists pro se litigants in housing court matters, and a tenant advocate and organizer. Plaintiffs brought this action on behalf of themselves and a putative class of purchasers of certain annual editions of *New York Landlord–Tenant Law* (the Tanbook), a compilation of New York legal materials on landlord-tenant law, against defendant Michael Bender & Company Inc. (defendant), the publisher of the Tanbook. The amended complaint alleges, inter alia, that defendant engaged in deceptive business practices in violation of General Business Law (GBL) § 349 in its marketing and sale of the 2016 and prior editions

Downloaded from vLex by Steven Feldman 

of the Tanbook. Specifically, plaintiffs claim that defendant materially misrepresented that Part III of the Tanbook contained a complete and accurate compilation of the statutes and regulations applicable to rent-controlled and rent-stabilized apartments in New York City, when, in fact, key portions were omitted or inaccurately presented. Plaintiffs contend that these omissions and inaccuracies rendered the Tanbook of no value to its users. Plaintiffs further allege that, after receiving complaints, defendant included the omitted statutes and regulations in the 2017 edition, which, although published late in the calendar year, was sold to plaintiffs and other subscribers at full price.

Defendant moved to dismiss the amended complaint under CPLR 3211(a). Among other assertions, defendant argued that plaintiffs failed to plead the necessary elements of a GBL § 349 cause of action. In support, defendants submitted the affidavit of an Operations Director of LexisNexis, **[\*\*83]** a division of one of defendant's affiliates. The Operations Director provided a general overview of the Tanbook's contents and described the standard practices and contractual terms governing its sale and purchase. The Operations Director also described plaintiffs' respective purchases of the Tanbook and the lack of any complaints from them regarding the manual's contents. The Agreement and Order Forms for each plaintiff's purchase of the Tanbook were attached to the affidavit.**[\*1196]**

Plaintiffs opposed the motion and responded, in part, that they had adequately alleged the elements of a GBL § 349 claim, specifically arguing that their pleading established that the sale of the Tanbook was "consumer oriented" under the Court's precedents, that the purported representations of completeness in the Tanbook were materially misleading, and that they were harmed by that deception **[\*\*\*175]** because they received a product that was seriously diminished in value. Supreme Court granted defendant's motion and dismissed the complaint in its entirety.

The Appellate Division affirmed the order of dismissal, in part on different grounds ( 172 A.D.3d 405, 100 N.Y.S.3d 227 [2019] ). We granted plaintiffs leave to appeal ( 34 N.Y.3d 908, 2020 WL 205529 [2020] ).

II.

On a motion to dismiss a complaint pursuant to CPLR 3211, we must liberally construe the pleading and "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" ( *Leon v. Martinez,* 84 N.Y.2d 83, 87–88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1994] ; *Connaughton v. Chipotle Mexican Grill, Inc.,* 29 N.Y.3d 137, 141, 53 N.Y.S.3d 598, 75 N.E.3d 1159 [2017] ). When, as here, a defendant moves for dismissal of a cause of action under CPLR 3211(a)(1), their documentary evidence must "utterly refute[ ] the plaintiff's factual allegations, conclusively establishing a defense as a matter of law" ( *Goshen v. Mutual Life Ins. Co. of N.Y.,* 98 N.Y.2d 314, 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190 [2002] ). Dismissal under CPLR 3211(a)(7) "is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" ( *Connaughton,* 29 N.Y.3d at 142, 53 N.Y.S.3d 598, 75 N.E.3d 1159 ).

Plaintiffs allege that defendant's characterization of the Tanbook's contents deceptively indicated that Part III contained a complete compilation of the rent control and stabilization laws and regulations applicable to New York City. Specifically, plaintiffs contrast the description of the Tanbook's contents in the book's "Overview" section, which, in describing other sections of the book, indicates that those sections consisted of "selected" laws and regulations or were merely "excerpts" thereof. In contrast, the Overview describes Part III of the Tanbook as containing "*the* laws and regulations covering rent stabilization" (emphasis added). As conceded by defendant, Part III omitted significant portions of the relevant laws and regulations. Plaintiffs claim that lawyers practicing landlord tenant law in New York City and the Housing Court judiciary use the Tanbook as a primary reference for the rent regulation laws and rules. They further claim

Downloaded from vLex by Steven Feldman 

that defendant's conduct is a classic "bait and switch" and that they would not have purchased the Tanbook absent defendant's alleged misrepresentation [***176] of Part III's completeness. Defendant responds that [**84] the omissions were an unfortunate mistake but not actionable misconduct. Defendant asserts that plaintiffs have failed to make out the elements of a GBL § 349 claim, in part because plaintiffs cannot plausibly argue that a reasonable consumer would have been misled by the alleged misrepresentation, given the nature of the misrepresentation, the product involved, and because the sales contracts expressly disclaimed the accuracy, reliability, and currency of the Tanbook.

GBL § 349(a) declares unlawful all "[d]eceptive acts or practices in the conduct of any business, trade or commerce [*1197] or in the furnishing of any service in this state." Section 349, "on its face, applies to virtually all economic activity" ( *Karlin v. IVF Am.,* 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 712 N.E.2d 662 [1999] ). Because the legislature was concerned with the impact of deceptive conduct on consumer purchases, GBL § 349 prohibits deceptive acts and practices that misrepresent the nature or quality of products and services (*see Teller v. Bill Hayes, Ltd.,* 213 A.D.2d 141, 146, 630 N.Y.S.2d 769 [2d Dept. 1995] ). Put simply, "[t]he statute seeks to secure 'an honest marketplace' where 'trust,' and not deception, prevails" ( *Goshen v. Mut. Life Ins. Co. of N.Y.,* 98 N.Y.2d 314, 324, 746 N.Y.S.2d 858, 774 N.E.2d 1190 [2002], citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 [1995] ). To ensure the broadest enforcement of the statute, the legislature added a private right of action for injunctive and monetary relief ( GBL § 349[h] ). Thus, in addition to the Attorney General, individuals and businesses may bring an action under GBL § 349 (*id.* ).

The requisite elements of the cause of action are well established. A plaintiff must allege that: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception ( GBL § 349[h] ; *Plavin v. Group Health Inc.,* 35 N.Y.3d 1, 10, 124 N.Y.S.3d 5, 146 N.E.3d 1164 [2020] ). Thus, to avoid dismissal, plaintiffs must adequately plead each of these elements.

Supreme Court determined that plaintiffs failed to demonstrate that the allegedly deceptive conduct was consumer oriented. The court relied on First Department caselaw holding that consumers are those "who purchase goods and services for personal, family, or household use" ( [***177] 2018 NY Slip Op 30294[U], *15, 2018 WL 984850, at *5 [Sup Ct, NY County 2018], quoting *Med. Socy. v. Oxford Health Plans, Inc.,* 15 A.D.3d 206, 207, 790 N.Y.S.2d 79 [1st Dept. 2005] ), and that GBL § 349 does not apply to a business's purchase of "a widely sold service that can only be used by businesses" ( *id.,* quoting *Cruz v. NYNEX Info. Resources,* 263 A.D.2d 285, 286, 290, 703 N.Y.S.2d 103 [1st Dept. 2000] ). Thus, the court determined that GBL § 349 is inapplicable to defendant's marketing and sale of the Tanbook because the product is not directed at consumers at large for personal, family, or household use, but rather to legal professionals. This was error.

First, there is no textual support in GBL § 349 for a limitation on the definition of "consumer" based on use. Indeed, any such narrowing of the term "consumer" would be contrary to the legislative intent to protect the public against all forms of deceptive business practices (*see* GBL § 349[a] ; *Karlin,* 93 N.Y.2d at 290, 690 N.Y.S.2d 495, 712 N.E.2d 662 ). To the extent the First Department's analysis has relied on other statutory definitions of "consumer" or "consumer good" (*see* [**85] *Cruz v. NYNEX Info. Resources,* 263 A.D.2d 285, 289, 703 N.Y.S.2d 103 [1st Dept. 2000] ), such reliance is misplaced. The text and purpose of GBL § 349 does not support the importation of other statutory definitions because, unlike other provisions, section 349 broadly prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" ( GBL § 349 ).

Second, given the text and purpose of GBL § 349, the Court has explained that an act or practice is consumer-oriented when it has "a broader impact on consumers at large" ( *Oswego Laborers' Local 214*

Downloaded from vLex by Steven Feldman 

*Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25–27, 623 N.Y.S.2d 529, 647 N.E.2d 741 [1995] ; **[\*1198]** *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 [1995] ). For example, the consumer-oriented element precludes a GBL § 349 claim based on "[p]rivate contract disputes, unique to the parties" ( *Oswego,* 85 N.Y.2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 ). Nor does the consumer-oriented element depend on the use to be made of the product, as what matters is whether the defendant's allegedly deceptive act or practice is directed to the consuming public and the marketplace. In other words, GBL § 349 is focused on the seller's deception and its subsequent impact on consumer decision-making, not on the consumer's ultimate use of a product.**[\*\*\*178]**

Plaintiffs allege that defendant advertised the Tanbook and made it available for sale to the general public, including through its website and a public, online shopping service. Defendant does not contend otherwise. Instead, it claims that the complaint is deficient because it alleges that the Tanbook is oriented towards legal professionals (i.e., lawyers, judges, and tenant advocates) rather than consumers. We are unpersuaded by defendant's attempt to limit the reach of GBL § 349.

The fact that persons and businesses working in the legal field purchase the Tanbook to assist in their professional endeavors is unsurprising given that the Tanbook is a legal resource manual, but that does not mean that the defendant's conduct was not consumer oriented. Legal professionals are merely a subclass of consumers and, as we recently clarified, "consumer-oriented conduct" need not "be directed to *all* members of the public" ( *Plavin,* 35 N.Y.3d at 13, 124 N.Y.S.3d 5, 146 N.E.3d 1164 ).

Significantly, defendant's conduct is not unique to the parties before us. The marketing and sale of the Tanbook is not limited to a single transaction, as defendant sold it to a robust consumer base, including through a subscription plan whereby purchasers (including plaintiffs) automatically received new annual editions and updates. Nor is the sales agreement designed to the specifications of a particular buyer; defendant relies on a form contract with its customers. Thus, we conclude that plaintiffs sufficiently allege that defendant's conduct is consumer oriented.

However, the amended complaint was properly dismissed because plaintiffs cannot plead the materially misleading element of a GBL § 349 cause of action. A defendant's actions are materially misleading when they are "likely to mislead a reasonable consumer acting reasonably under the circumstances" ( *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 725 N.E.2d 598 [1999] ). What is objectively reasonable depends on the facts and context of the alleged misrepresentations and "may be determined as a matter of law or fact (as individual cases require)" ( *Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 [1995] ).**[\*\*86]**

The amended complaint alleges that defendant misled plaintiffs to believe that the statutes and regulations contained in Part III of the Tanbook were full and accurate reproductions of the New York City and State rent control and stabilization **[\*\*\*179]** laws and regulations.1 Plaintiffs' **[\*1199]** allegations are based on various statements in the Tanbook, its advertisements, and the fact that the Tanbook is published annually. For the reasons we discuss below, defendant's conduct could not materially mislead a consumer into believing that defendant guaranteed the accuracy or currentness of the publication under the circumstances presented here. As even plaintiffs concede, the legal materials contained in Part III are subject to legislative amendment at any time,2 seriously undermining plaintiffs' contention that yearly publication was a representation that the Tanbook was complete and accurate. Similarly, to the extent that defendant's statements misrepresented the contents of the Tanbook, such purported misrepresentations are not materially misleading under all the circumstances, including defendant's disclaimer.

Plaintiffs' claims are significantly undercut by defendant's supporting documentary evidence, including the undisputed terms and conditions of the contract for purchase, which constitutes the entire agreement between

Downloaded from vLex by Steven Feldman 

defendant and each plaintiff. Plaintiffs contracted for editions of the Tanbook under a "non-service subscription whose price does not include [u]pdates." Thus, in addition to the Tanbook, plaintiffs would automatically receive "any supplementation, releases, replacement volumes, new editions and revisions ... made available during the annual subscription period" along with invoices for the additional cost of any updated materials. Therefore, defendant expressly offered, and plaintiffs chose to receive, automatic serial mailings of the year's Tanbook edition upon its publication, with any updates to that edition—if and when they became available—at an additional and separate cost charged by invoice and sent with the update. As the agreement makes clear, updates might be forthcoming during the edition year but were not guaranteed, and it fell to plaintiffs to confirm **[\*\*\*180]** the Tanbook's contents pending arrival of those updates. It is therefore clear to a consumer that the Tanbook is not a completely accurate compilation of the law.

Defendant also relies on the express disclaimer included in the terms and conditions. A disclaimer may not bar a GBL § 349 claim at the pleading stage unless it utterly refutes plaintiff's allegations, and thus establishes a defense as a matter of law (*see Goshen,* 98 N.Y.2d at 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190 ; *Fink v. Time Warner Cable,* 714 F.3d 739, 742 [2d Cir.2013] ). The defendant must do more than disclaim liability generally; instead, a disclaimer must address the alleged deceptive conduct precisely, so as to eliminate any possibility that a reasonable **[\*\*87]** consumer would be misled (*id.* ; *see also Gaidon,* 94 N.Y.2d at 345, 704 N.Y.S.2d 177, 725 N.E.2d 598 ).3 Furthermore, where the overall impression of the representations is misleading (notwithstanding the disclaimer), the disclaimer is not a defense as a matter of law (*see Goshen,* 98 N.Y.2d at 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190 ; *Delgado v. Ocwen Loan Servicing, LLC,* 2014 WL 4773991, at \*9 [E.D.N.Y. 2014] ). For example, in *Gaidon,* where plaintiffs claimed the defendant life insurance companies' alleged **[\*1200]** "vanishing premium" scheme was a deceptive practice in violation of GBL § 349, the Court held that the defendants' disclaimer that future dividends and values were not guaranteed did not preclude the claim because those representations did not "speak to the true, unrevealed relationship between dividend/interest rates and the vanishing dates as represented" ( 94 N.Y.2d at 339, 341, 345, 704 N.Y.S.2d 177, 725 N.E.2d 598 ).

The disclaimer set forth in the parties' agreement states, "WE DISCLAIM ALL WARRANTIES WITH RESPECT TO PUBLICATIONS, EXPRESS OR IMPLIED ... WE DO NOT WARRANT THE ACCURACY, RELIABILITY OR CURRENTNESS OF THE MATERIALS CONTAINED IN THE PUBLICATIONS." Plaintiffs do not dispute that the disclaimer was included in at least one invoice sent to each of them. Yet plaintiffs nonetheless allege that defendant misled them based on omissions in Part III of the Tanbook—a section that plaintiffs knew was subject to revision and whose accuracy defendant could not ensure, since the statutes and regulations **[\*\*\*181]** are subject to revision. The Tanbook's susceptibility to revision at any time, coupled with the fact that the disclaimer addresses the precise deception alleged in plaintiffs' complaint, leaves no possibility that a reasonable consumer would have been misled about the contents of the Tanbook.

That plaintiffs characterize defendant's alleged deception as an attempt to hide the Tanbook's lack of "completeness" (as opposed to "accuracy" or "currentness") does not affect our analysis. The disclaimer states that defendant does not warrant "the accuracy, reliability or currentness" of the Tanbook's contents. This phrase is equivalent to a disclaimer of completeness. Indeed, plaintiffs' allegation that the Tanbook is incomplete turns entirely on whether the content is accurate, reliable, and current.

The fact that a purchaser might not buy the Tanbook without an accurate and complete reproduction of the statutes and regulations—because, as plaintiffs allege, that would render the Tanbook unreliable—goes to whether defendant is offering an item worth buying, not whether defendant has deceived consumers about the nature of its product. GBL § 349 is concerned only with the latter conduct.

In sum, plaintiffs' cause of action is based on purchases of yearly editions of the Tanbook, under a sales

Downloaded from vLex by Steven Feldman 

agreement that charged extra for any updates of the year's materials contained in the corresponding edition. Plaintiffs' allegations are limited to omissions and inaccuracies in a section of the Tanbook they knew was subject to legislative amendment, which they concede were corrected in the 2017 edition after the errors were brought to defendant's attention, and which were specifically contemplated by defendant's express disclaimer of the currentness of the Tanbook's contents. Under the circumstances, plaintiffs, [**88] or any reasonable consumer, could not have been materially misled to believe that defendant guaranteed Part III of the Tanbook was complete and accurate at any given time. Thus, because plaintiffs failed to adequately plead this element, their GBL § 349 cause of action was properly dismissed.4 [***182]

III.

Plaintiffs' remaining arguments challenging the dismissal of their other causes [*1201] of action are either without merit or are not properly before us. Accordingly, the order of the Appellate Division should be affirmed, with costs.

FAHEY, J. (dissenting in part).

I respectfully dissent. Plaintiffs sufficiently pleaded all elements of a cause of action based on General Business Law § 349, and that cause of action in the amended complaint should be reinstated.

To adequately state a claim under General Business Law (GBL) § 349, " 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice' " ( *Plavin v. Group Health Inc.,* 35 N.Y.3d 1, 10, 124 N.Y.S.3d 5, 146 N.E.3d 1164 [2020], quoting *Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 [2012] ). I agree with my colleagues in the majority that plaintiffs have sufficiently alleged consumer-oriented conduct, and that the First Department's case law requiring the good or service to be purchased for personal, family, or household use in order to satisfy the consumer-oriented element is incorrect. As the majority explains (*see* majority op. at 177–178, 150 N.Y.S.3d at 84–86, 171 N.E.3d at 1197–99), the First Department's standard is not supported by the text of the statute, its legislative purpose, or this Court's precedent.

Moreover, in *Cruz v. NYNEX Info. Resources,* 263 A.D.2d 285, 703 N.Y.S.2d 103 (1st Dept. 2000), the First Department erred in relying upon other statutes contained within the General Business Law that define the term "consumer" or "consumer goods" to pertain to goods or services purchased for personal, family, or household use (*see Cruz,* 263 A.D.2d at 289, 703 N.Y.S.2d 103 ; GBL §§ 399–c [1][b] ; 399–p [1][c]). The legislature included no such language in GBL § 349 and is therefore presumed to have intentionally omitted it (*see Commonwealth of the N. Mariana Is. v. Canadian Imperial Bank of Commerce,* 21 N.Y.3d 55, 60–61, 967 N.Y.S.2d 876, 990 N.E.2d 114 [2013] ). Instead, the legislature prohibited deceptive acts or practices "in the conduct of *any* business, trade or commerce or in the furnishing of *any* service in this state" ( GBL § 349[a] [emphasis added]; *see Polonetsky v. Better Homes Depot,* 97 N.Y.2d 46, 53, 735 N.Y.S.2d 479, 760 N.E.2d 1274 [2001] ). Our precedent requires the plaintiff to "demonstrate that the acts or practices have a broader impact on consumers at large," as distinguished from "[p]rivate contract disputes, unique to the parties" in order [***183] for the alleged conduct to be consumer-oriented ( *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 [1995] ; *see Plavin,* 35 N.Y.3d at 10–13, 124 N.Y.S.3d 5, 146 N.E.3d 1164 ). That standard was met [**89] here. It is irrelevant that the Tanbook was primarily marketed to and purchased by businesses and professionals. A business may be a consumer.

I cannot agree with the majority, however, that plaintiffs failed to sufficiently allege conduct that was materially misleading. Plaintiffs have essentially articulated two theories of alleged deceptive conduct: (1)

Downloaded from vLex by Steven Feldman 

that defendant's statements on its online store and in the Tanbook itself would lead a reasonable consumer to believe that the Tanbook contained all the updated laws regarding rent regulation and stabilization; and (2) the fact that the Tanbook is updated and purchased by customers annually would lead a reasonable consumer to believe that the Tanbook was updated on an annual basis with the changes to the law that were made the previous year, i.e., that consumers were not merely purchasing **[*1202]** another copy of the same book each year.1

This is a motion to dismiss. The latter theory is not well articulated in the amended complaint but was expressly stated in plaintiffs' affidavits in opposition to the motion. On a motion to dismiss, plaintiffs must be given "the benefit of every possible favorable inference" and we must "determine only whether the facts as alleged fit within any cognizable legal theory" ( *Leon v. Martinez,* 84 N.Y.2d 83, 87–88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1994] ). The question "is whether the proponent of the pleading has a cause of action, not whether he has stated one," and the Court should "freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint" ( *id.* at 88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [internal quotation marks omitted]).

Defendant argues that the amended complaint fails to allege that plaintiffs actually saw the allegedly deceptive statements **[***184]** upon which they rely before they purchased the Tanbook. Defendant concedes that reliance is not an element of a GBL § 349 claim but asserts that causation is required (*see Koch,* 18 N.Y.3d at 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 ; *Stutman v. Chemical Bank,* 95 N.Y.2d 24, 29–30, 709 N.Y.S.2d 892, 731 N.E.2d 608 [2000] ; *Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 ). Affording the amended complaint a liberal construction and extending plaintiffs every possible favorable inference, I would conclude that causation with respect to the allegedly deceptive statements may be adequately inferred from the allegations in the amended complaint and plaintiffs' affidavits. Even if that theory were insufficiently pleaded, however, plaintiffs' theory based on the annual update of the Tanbook would remain.

Defendant's disclaimer does not establish a defense as a matter of law pursuant to CPLR 3211(a)(1). This Court has repeatedly rejected the assertion that a disclaimer establishes a defense as a matter of law to a GBL § 349 claim at the pleading stage (*see* **[**90]** *Koch,* 18 N.Y.3d at 941, 944 N.Y.S.2d 452, 967 N.E.2d 675, citing *Goshen v. Mutual Life Ins. Co. of N.Y.,* 98 N.Y.2d 314, 326–327, 746 N.Y.S.2d 858, 774 N.E.2d 1190 [2002] ; *see Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 345, 704 N.Y.S.2d 177, 725 N.E.2d 598 [1999] ). A disclaimer is not a per se bar to a GBL § 349 cause of action, even when it is specific. This theory would allow routine disclaimers to render the consumer protections, codified by the statute, meaningless. Rather, defendant's disclaimer must be considered as one part of the overall analysis in determining whether the alleged deceptive conduct was "likely to mislead a reasonable consumer acting reasonably under the circumstances" ( *Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 ). Plaintiffs have adequately pleaded that element, which is not amenable to resolution at the motion to dismiss stage. In concluding otherwise, **[*1203]** the majority has treated defendant's motion to dismiss as a motion for summary judgment.

Finally, because I conclude that the first two elements of the cause of action were adequately pleaded, I address the third element: whether plaintiffs alleged a cognizable injury. Relying on our decision in *Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999), the First Department concluded that this element was not satisfied "because the only injury alleged to have resulted from defendant's allegedly deceptive business practices is the amount that plaintiffs paid for the book, which does not constitute an injury cognizable under the statute" ( 172 A.D.3d 405, 406, 100 N.Y.S.3d 227 [1st Dept. 2019] ). In *Small,* this Court "disagree[d]" with the plaintiffs' contention that "consumers who buy a product that they would not have purchased, absent a manufacturer's **[***185]** deceptive commercial practices, have suffered an injury under General Business Law § 349" ( *Small,* 94 N.Y.2d at 56, 698 N.Y.S.2d 615, 720

Downloaded from vLex by Steven Feldman 

N.E.2d 892 ).

Although there may be different ways to interpret *Small*, this broad statement at face value was incorrect. It is unsupported by the text of the statute or its legislative history and purpose. The Court did not explain in *Small* why the cost of a product that the plaintiff would not have purchased but for the seller's deceptive practices does not constitute a cognizable injury. The underlying legislative purpose behind GBL § 349, as well as common sense, require the conclusion that when a consumer would not have purchased a product but for the defendant's deceptive conduct, that consumer has suffered a cognizable injury, i.e., the price that the consumer paid for the product. In that scenario, the money the consumer paid for the product would still be in the consumer's possession but for the defendant's deceptive practices. The use of deception to induce a consumer to buy a product is precisely the kind of conduct the legislature sought to prohibit with GBL § 349.2

For example, if one purchases a novel for $20 because it advertises on its cover **[\*\*91]** that it was written by a famous author, but in reality, the book was written by an unknown author, the consumer has suffered a cognizable injury: the $20 paid for the book. Of course, the parties could litigate whether the book had some value even without the involvement of the famous author (*cf. Rice v. Penguin Putnam,* 289 A.D.2d 318, 318–319, 734 N.Y.S.2d 98 [2d Dept. 2001], *lv denied* 98 N.Y.2d 635, 744 N.Y.S.2d 757, 771 N.E.2d 829 [2002] ). That, however, pertains to the *measure* of damages; it does not mean **[\*\*\*186]** that the consumer has failed to allege a cognizable injury in the first instance.3 **[\*1204]**

*Small* should be corrected by this Court at the appropriate opportunity, or, alternatively, by the legislature.

I agree with the majority that plaintiffs' remaining contentions are without merit. Accordingly, I would modify the order of the Appellate Division by reversing that part affirming the dismissal of the General Business Law § 349 cause of action.

Chief Judge DiFiore and Judges Stein, Garcia and Wilson concur. Judge Fahey dissents in part in an opinion.

Order affirmed, with costs.

1 In our assessment of plaintiffs' amended complaint, we are cognizant of our obligation to read the pleadings liberally, affording plaintiffs the benefit of every possible favorable inference (*Leon,* 84 N.Y.2d at 87–88, 614 N.Y.S.2d 972, 638 N.E.2d 511 ). Contrary to the dissent's assertion (dissenting op. at 184, 150 N.Y.S.3d at 90, 171 N.E.3d at 1202–03), we reach our conclusion based on this standard for a motion to dismiss, not summary judgment. That standard requires, on a motion to dismiss under CPLR 3211(a)(1), that we consider, in addition to the amended complaint, plaintiffs' affidavits and defendant's documentary evidence.

2 In fact, as plaintiffs point out, the legislature significantly altered the laws contained in Part III after the publication of the 2019 edition, thereby rendering the Tanbook out of date once those amendments became law.

3 In the cases cited by the dissent (dissenting op. at 184, 150 N.Y.S.3d at 90, 171 N.E.3d at 1202–03), the Court concluded that, on the unique facts of those cases, the respective disclaimer did not utterly refute the plaintiff's allegations.

4 Given our conclusion, we have no occasion to address whether the Appellate Division correctly determined that plaintiffs failed to adequately allege injury under the statute and this Court's holding in *Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999).

Downloaded from vLex by Steven Feldman 

1 Adopting defendant's baseless theory that plaintiffs have alleged that the Tanbook must be accurate "up-to-the-minute," the majority incorrectly concludes that plaintiffs' claims are seriously undermined by the fact that the legislative materials contained within the Tanbook are subject to amendment at any time (majority op. at 178–180, 150 N.Y.S.3d at 85–86, 171 N.E.3d at 1198–99). Plaintiffs have contended only that "it is more than reasonable to believe that an annually issued book, which prominently bears the current year on its cover, is complete and accurate 'up-to-the-year' and that it contains all amendments and modifications occurring during the prior year." Plaintiffs' amended complaint alleges, for example, that the 2016 edition of the Tanbook failed to include legislative amendments to statutes contained within the text even though those amendments had taken place years, even a decade, earlier.

2 Further support for this commonsense view of consumer protection comes from the federal context. Sections 349 and 350 of the GBL were modeled upon the Federal Trade Commission Act (*see Oswego,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 ; *Matter of People v. Applied Card Sys., Inc.,* 11 N.Y.3d 105, 121 n. 14, 863 N.Y.S.2d 615, 894 N.E.2d 1 [2008] ). The FTC Act does not bar recovery of the price a consumer pays for a deceptively sold good. Far from it. "[B]ecause the FTC Act is designed to protect consumers from economic injuries, courts have often awarded the full amount lost by consumers" (*Federal Trade Commn. v. Stefanchik,* 559 F.3d 924, 926 [9th Cir.2009] ). Nothing in the text or history of section 349 reveals any intent by the legislature to bar consumers from recovering money spent as a result of a seller's deception, an essential and longstanding protection under the FTC Act (*see Federal Trade Commn. v. Figgie Intl., Inc.*, 994 F.2d 595, 606 [9th Cir.1993] [interpreting "injury to consumers" under the FTC Act as encompassing "the amount consumers spent on (a product) that would not have been spent absent (the seller's) dishonest practices"], *cert denied* 510 U.S. 1110, 114 S.Ct. 1051, 127 L.Ed.2d 373 [1994] )

3 Even then, the buyers may be able to recover the full purchase price. Federal courts interpreting the FTC Act have often allowed recovery of the full purchase price of a good, even if the product had some residual value to purchasers (*see Figgie Intl.,* 994 F.2d at 606 [declining to offset damages for deceptively-marketed heat detectors based on the value retained by consumers because "(t)he fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds"]; *Federal Trade Commn. v. Kuykendall,* 371 F.3d 745, 766 [10th Cir.2004] [adopting the 9th Circuit's analysis in *Figgie Intl.* and concluding that the court "need not offset (damages by) the value of any product the defrauded consumers received"]).