2007 WL 1933147
United States District Court, D. Utah.

Klein-Becker usa LLC
v.
Englert

2:06-CV-378 TS.
|
Decided Mar. 28, 2007.

**Attorneys and Law Firms**

Charles A. Stormont, Christopher B. Sullivan, David A. Greenwood, Gary F. Bendinger, and Scott D. McCoy, of Howrey LLP, Salt Lake City, Utah; Catherine A. Van Horn, of Nagin Gallop & Figueredo, Miami, Fla.; Jason M. Kerr, Basic Research, Salt Lake City, for plaintiffs.

John D. Reinsel, of Tumminello & Associates, St. Louis, Mo.; Todd E. Zenger, of Kirton & McConkie, Salt Lake City, for defendants.

Stewart, J.

### I. PROCEDURAL BACKGROUND

**\*1** This matter came before the Court on March 22, 2007, for a hearing on Klein-Becker usa, LLC's and Klein-Becker IP Holdings, LLC's (collectively "Plaintiffs" or "Klein-Becker") Motions for Preliminary Injunction. Pursuant to Defendants' oral motion, the hearing and transcript were sealed.

Plaintiffs' Amended Complaint[1] contains claims for Trademark Infringement, False Adverting, Unfair Competition under the Lanham Act, and Intentional Interference with Existing Business Relations under Utah law. Plaintiffs originally filed their Motion for Preliminary Injunction on July 12, 2006.[2]

On February 28, 2007, the Court granted Plaintiffs' *Ex Parte* Emergency Motion for a Temporary Restraining Order (TRO) and Seizure Order. The TRO and Seizure Order was amended on March 1, 2007 (Amended TRO and Seizure Order). A second order amending the Amended TRO and Seizure Order was entered on March 1, 2007. The Court held a hearing on the continuance of the Seizure Order on March 14, 2007, and issued an Order extending the TRO through the conclusion of the preliminary injunction hearing and found that Plaintiffs met their burden of showing that the findings and conclusions necessary to support the Seizure Order were still in effect so that the Seizure Order should not be dissolved.

Also on March 14, 2007, Plaintiffs submitted a second Motion for Preliminary Injunction,[3] including supporting affidavits and declarations, based, in part, on evidence obtained during the execution of the Court's Seizure Order. Although the preliminary injunction motion was originally filed on July 12, 2006, hearing on the motion was reserved until after resolution of two matters. The first matter was the Motions to Dismiss for lack of personal jurisdiction,[4] and related discovery. These issues were subsequently resolved by stipulation and withdrawal of the Motions to Dismiss.[5] The second matter was Plaintiffs' request for discovery in connection with the motion for a preliminary injunction. The parties understood that substantial discovery would be necessary on the injunction issue. Accordingly, the hearing on the preliminary injunction was set for March 22-23, 2007, allowing sufficient time for the parties to conduct their requested discovery.[6]

Plaintiffs appeared at the March 22, 2007 hearing with declarations, exhibits, and live witnesses. The live witnesses were some of the individuals who had sworn declarations that had not previously been filed with the Court and they were available for cross-examination should Defendants wish to contest Plaintiffs' evidence. Defendants did not present any evidence, except for limited affidavits relating to Defendants' Sealed Motion for Sanctions dated March 14, 2007. Other than their Sealed Motion for Sanctions dated March 14, 2007, which the Court treated as an opposition to Plaintiffs' Motions for Preliminary Injunction, Defendants offered no written opposition to either Plaintiffs' July 12, 2006 Motion for Preliminary Injunction or Plaintiffs' March 14, 2007 Motion for Preliminary Injunction. Defendants did not subpoena any of the individuals who had submitted affidavits in support of Plaintiffs' March 14, 2007 Motion for Preliminary Injunction or provide any notice to Plaintiffs or the Court of their intention to attempt to cross examine any of these individuals.

### II. FINDINGS OF FACT

**\*2** The parties' discovery disputes were heard by the Magistrate Judge. The Court finds that the record in this case and the Magistrate Judge's Orders clearly establish that Defendants have not timely cooperated in the required

discovery.[7] Evidence presented at the March 22, 2007 hearing also demonstrated that Defendants have continued to conceal information from Plaintiffs. Specifically, Defendants' revised written discovery responses dated March 16, 2007, reveal that Defendants withheld from Plaintiffs more than three hundred boxes of product that were subject to both the Rule 34 inspection ordered by the Courts [8] and the Court's Seizure Order.

The Court finds that Plaintiffs have met their burden at the hearing of showing that (1) they will suffer irreparable harm if a preliminary injunction is not granted; (2) their threatened injury outweighs the harm caused to Defendants from the injunction; (3) the injunction is not adverse to the public interest; and (4) they have a substantial likelihood of success on the merits of the case. Those facts include the following findings, made for the purposes of the injunction proceedings: That 269 units bearing the unique product numbers of StriVectin-SD® recently stolen from Plaintiffs' business were obtained from Defendants' business premises during the seizure. Additional empty cardboard boxes that once contained multiple boxes of product bearing labels corresponding to stolen product numbers were also found at Defendants' business. Also found were product labeled StriVectin-SD® but packaged in boxes without lot numbers. Product without lot numbers is likely to be counterfeit because all genuine products produced by Plaintiffs bear such lot numbers. Invoices obtained during the seizure reveal that other product was obtained when Defendants, not authorized resellers, deceptively and repeatedly used the name and account of an authorized reseller to purchase some product directly from Plaintiffs. Defendants' website, *MrFinest.com*, offered StriVectin-SD® using Plaintiffs' mark in interstate commerce, without Plaintiffs' consent. The website also uses Plaintiffs' mark to divert traffic to other products. The disclaimer, only added since this litigation began, is not conspicuous on the website. Similarly, Defendants' offered StriVectin-SD® using Plaintiffs' mark for sale on an Internet auction site, eBay, without Plaintiffs' consent. Defendants' use of the StriVectin-SD trademark on their website and on eBay is likely to cause confusion as to the source of Defendants' products, as well as to the sponsorship and affiliation of the Defendants and their products to Klein-Becker. Despite being served with the Amended TRO and Seizure Order on March 1, 2007, two days later, on March 3, 2007, Defendant Englert communicated by e-mail with a customer that Defendants may have product mid-to-late next week, meaning the following week, which would be the week before the March 14, 2007 TRO and Seizure hearing. If Defendants are not enjoined, it is likely that they will sell or offer to sell stolen or counterfeit product under Plaintiffs' mark.

 *3  In addition to the above, Plaintiffs presented unrebutted evidence in support of their Motion for Preliminary Injunction as follows: [9] Klein-Becker is the exclusive licensee of the StriVectin-SD trademarks, trade dress, and copyrights. StriVectin-SD is a validly registered trademark that is well-recognized and has acquired secondary meaning among consumers. Plaintiffs have expended a great deal of time, effort, and money in developing their intellectual property rights in connection with StriVectin-SD. Plaintiffs and their exclusive distributor, Basic Research, LLC, maintain rigorous quality control over the manufacture and distribution of the product, including strict criteria for resellers regarding customer service, and quality control standards for storing and selling their products. Plaintiffs enjoy a reputation for selling only the highest quality products. The value of their intellectual property can only be maintained by continuing the high quality controls Plaintiffs maintain in all aspects of the product including its production, shipment, exclusive distribution network, product placement, customer service by resellers, and a money-back guarantee. Defendants are not authorized resellers and do not have permission to use the mark for any purpose. The discount prices at which Defendants offered the product raise questions about the quality and authenticity of the product. Defendants' sale of these products devalues the StriVectin-SD trademark by tarnishing its image and reputation, which cannot be calculated in monetary terms. The diversion of sales by Defendants from Plaintiffs' authorized resellers damages Plaintiffs' goodwill and reputation among their authorized resellers, diminishes the economic advantage of Plaintiffs' agreements with authorized resellers, and diminishes the ability of Plaintiffs to enter into future agreements with new resellers, which cannot be calculated in monetary terms. Defendants offered no evidence that they possessed any StriVectin-SD as a result of an authorized sale by Plaintiffs. These facts are undisputed and established for the purpose of the preliminary injunction hearing. Defendant Englert had a copy of Plaintiffs' reseller policy on his desk when the Seizure Order was served and several other copies were found at the business. He was having the product shipped to his company using a false name (that of the authorized reseller) at various addresses.

The Court finds that there is a clear inference that Defendant Englert knew from the reseller policies and the manner in which he conducted his business that the product was not

purchased through authorized channels, that it was sometimes purchased using deceptive means, and that the product he was obtaining was not always genuine product.

Defendants' Motion for Sanctions dated March 14, 2007 reveals a technical, *de minimis* violation of the Court's December 27, 2007 Protective Order, as amended by the Seizure Order. Technically, Detective Vu should not have been informed of the seizure that took place on March 1, 2007.

### III. DISCUSSION

**\*4** The Court has jurisdiction pursuant to 28 U.S.C. § 1338(a) and (b), and 15 U.S.C. § 1121. Venue lies pursuant to 28 U.S.C. § 1391.

The Motion for Preliminary Injunction involves an injunction under 15 U.S.C. § 1116(a). The Tenth Circuit recently explained:

Under the Lanham Act, a court may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). A party seeking injunctive relief must establish four factors:

(1) it will suffer irreparable harm if the injunction is not granted, (2) its threatened injury outweighs the harm caused to the opposing party as a result of the injunction, (3) the injunction is not adverse to the public interest, and (4) it has a substantial likelihood of success on the merits of the case.

"[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." [10]

\* \* \*

In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial. [11]

[Plaintiff] argues that a prima facie case of trademark infringement establishes irreparable harm, per se. This court has stated, "[i]rreparable injury is frequently presumed where a trademark is wrongfully appropriated by another." In response, [Defendant] contends that the Supreme Court recently disapproved the use of categorical rules in connection with injunctive relief in intellectual property actions. [12]

The Court finds that Defendants had adequate notice of the hearing on Plaintiffs' Motion for Preliminary Injunction in accordance with the requirement of the Rules and that Defendants had more than sufficient time to allow them to adequately prepare for the hearing. Defendants did not present any evidence in opposition to any of the facts presented by Plaintiffs. They do argue, through counsel, that there is no evidence that Defendants knew the product was stolen or that the unnumbered boxes contained counterfeit product. The Court found above that the evidence established the unnumbered boxes likely contain counterfeit product.

Instead of opposing Plaintiffs' factual evidence, Defendants main argument in opposition to the preliminary injunction is that they are protected by the first sale defense. That defense is as follows:

Because in general "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product [,] [r]esale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." "It is the essence of the 'first sale' doctrine that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." "When a purchaser resells a trademarked article under the Producer's trademark, and nothing more, there is no actionable misrepresentation under the statute." [13]

**\*5** However, the first sale doctrine only covers the stocking and reselling of *genuine* products. It has no application to counterfeit goods because the producer's product is not being offered under the producer's mark. It has no application to stolen goods because "one approved sale" has not "already occurred." [14] It has no application to goods that have not been subject to the mark holder's legitimate quality control standards, even if the goods are not otherwise counterfeit, because a trademark holder is entitled to maintain control of the quality of goods bearing its mark. [15]

Further, the first sale doctrine does not cover the manner in which Defendants used Plaintiffs' marks on Defendants' Internet site or on eBay.

[T]he first sale doctrine does not protect resellers who use other entities' trademarks to give the impression that they are favored or authorized dealers for a product when in fact they are not. In this case, Defendants' use of Plaintiffs' trademarks on the Internet was such an act. Defendants' intentional use of Plaintiffs' trademarks on Defendants' Web sites, in the metatags for the Web sites, and with *Overture.com* constitutes

more than merely displaying and stocking trademarked items. Thus, Defendants' actions were indicative of an intent to cause consumer confusion, and are not shielded by the first sale doctrine. [16]

Although a disclaimer may be effective, a disclaimer that is not in close proximity to the use of the infringing mark is generally considered ineffective. [17] There is no evidence to support its effectiveness in this case. [18]

In sum, the Court finds that the Defendants have not shown that the first sale doctrine applies to their actions. The Court finds that Plaintiffs have shown that they are likely to prevail on the merits of their Lanham Act clams by showing that Defendants' actions are likely to cause confusion, deceive consumers, or result in mistake. The Court also finds that Plaintiffs have established that they are likely to prevail on their intentional interference claim by showing that Defendants knowingly acquired product without authorization and through deceptive means, and by inducing authorized resellers to violate Plaintiffs' reseller policy. [19]

Plaintiffs have shown that he Plaintiffs have shown that they will suffer irreparable harm if a preliminary injunction is not granted. Plaintiffs have not merely shown a prima facie case of trademark infringement. They have also shown irreparable harm by showing that they have expended considerable resources in establishing and maintaining their quality controls and that there will be a loss of reputation, trade, and goodwill if counterfeit product or product that does not meet its quality controls is sold. This threatened injury to Plaintiffs' control over the quality of the product that bears their mark is irreparable. [20] Further, the extent of loss of consumer goodwill and reputation that Plaintiffs could suffer from the sale of counterfeit product is largely unquantifiable, as is the harm caused by the diversion of sales by Defendants from Plaintiffs' authorized resellers and the harm caused to Plaintiffs' ability to enter into future agreements with new resellers.

**\*6** Defendants have not presented any evidence from which it is possible to weigh this potential harm to Plaintiffs against the potential harm to Defendants. Defendants' counsel represents that the preliminary injunction would put Defendants out of business, but there is no evidence as to the proportion of Defendants' business that is made up of sales of product under Plaintiffs' mark. Further, Defendants are not entitled to sell stolen, counterfeit, or goods that are not otherwise genuine under Plaintiffs' mark. Denying Defendants' the ability to resell products obtained from unauthorized, unlawful, or otherwise illicit sources does not establish any legally cognizable harm to Defendants. Nor are Defendants entitled to use Plaintiffs' mark on the Internet to give the impression that they are authorized dealers or to divert Plaintiffs' customers and, therefore, they are not harmed by losing the ability to do so. The Court finds that the threatened injury to Plaintiffs outweighs the harm caused to Defendants as a result of the preliminary injunction.

The Court finds that the injunction is not adverse to the public interest in any respect. In fact, not issuing a preliminary injunction would be adverse to the public interest because of the deception and contractual interference caused by Defendants' conduct [21]

Finally, the Court finds that the equities favor granting the preliminary injunction.

For the foregoing reasons, the Court finds that Plaintiffs' right to a preliminary injunction is clear and unequivocal. It is hereby

ORDERED that Defendants' Sealed Motion for Sanctions and Release of the Bond dated March 14, 2007 is DENIED. It is further

ORDERED that Plaintiffs Motions for Preliminary Injunction [22] are GRANTED. It is further

ORDERED that Defendants are hereby preliminarily enjoined and ordered, until further Order of the Court, as follows:

1. Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are enjoined from purchasing, offering for sale, distributing, selling, and/or otherwise disposing of any Klein-Becker or Basic Research, LLC product in their possession, custody or control. They are prohibited and enjoined from directly or indirectly using Klein-Becker's registered service marks and trademarks in any fashion, including United States Registration No. 2,760,414 for the trademark "StriVectin-SD" as used for topical cosmetic skin care products, and they are further prohibited and enjoined from directly or indirectly using all similar marks or names that are likely to cause confusion among the public as to the source, origin, sponsorship or affiliation of any goods or services marketed or distributed by

the Klein-Becker Plaintiffs or their affiliates, including Basic Research, LLC.

\*7 2. Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, on the Internet or otherwise, all signs, structures or forms of advertising and promotion indicative of StriVectin-SD, or Klein-Becker and its business or products, or its marks and name, and from using all similar signs, structures or forms of advertising and promotion that are likely to cause confusion among the public as to the source, origin, sponsorship or affiliation of any goods or services offered by Defendants.

3. Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are hereby directed and ordered to take immediate, affirmative steps to stop, cancel or discontinue any previously obtained or purchased goods, and all advertising or services, on the Internet or otherwise, related to goods which refer to, indicate or use the Klein-Becker Plaintiffs' registered marks, including the "StriVectin-SD" name, or any similar marks or names that are likely to cause confusion among the public as to the source, origin, sponsorship or affiliation of any goods or services offered by the Defendants.

4. All StriVectin-SD® products in Defendants' possession or control that have not been made available to Plaintiff's counsel for inspection shall be immediately made available to Plaintiff's counsel or their agents, who shall hold any of the product that they believe to the stolen or counterfeit, in their capacity as substitute custodians pending further order of this court.

5. Pursuant to Federal Rule of Civil Procedure 65(c), the security bond previously posted by Klein-Becker in connection with the Court's TRO in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) is reduced to TEN THOUSAND DOLLARS ($10,000.00). Counsel for Plaintiffs shall make arrangements with the Clerk of Court regarding any necessary paperwork or proposed order required to change the amount of the bond and have the balance returned to Plaintiff.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1933147, 83 U.S.P.Q.2d 1112

---

**Footnotes**

| | |
|---|---|
| 1 | Docket No. 51. |
| 2 | Docket No. 22. |
| 3 | Sealed Docket No. 141, dated March 14, 2007. |
| 4 | *See* Docket No. 40. |
| 5 | *See* Docket Nos. 55 (withdrawal of Defendant Patrick Englert's Motion to Dismiss) and 56 (Stipulated Motion to Dismiss Defendant Tom Englert). |
| 6 | *See* Docket No. 59, October 6, 2006 hearing notice. |
| 7 | *See* Orders at Docket Nos. 115 and 140. |
| 8 | *See* Docket No. 115. |
| 9 | Sealed Docket No. 142, Memorandum in Support of Plaintiffs' 3/14/07 Motion for Preliminary Injunction, Ex. 11 (Fobbs 2/27/07 Affidavit; Erickson 3/13/07 Affidavit). |

Case 1:24-cv-09429-KPF    Document 183-3    Filed 08/12/25    Page 6 of 6
Klein-Becker usa LLC v. Englert, Not Reported in F.Supp.2d (2007)
83 U.S.P.Q.2d 1112

10    *Lorillard TobaccoCo. v. Engida,* No. 06-1115, 2007 WL 39207 at *2 (10th Cir. Jan. 8 2007) (quoting *Dominion Video Satellite, Inc.v.Echostar Satellite Corp.,* 356 F.3d 1256, 1260-61 (10th Cir. 2004)); *see also SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1100-01 (10th Cir. 1991), overruled on other grounds, by *0 Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 389 F.3d 973, 975 (10th Cir. 2004)).

11    *Id.* at *3.

12    *Id.* (citing *eBay, Inc. v. MercExchange, L.L.C.,* 126 S.Ct. 1837, 1840-41 [78 USPQ2d 1577] (2006)).

13    *Australian Gold, Inc. v. Hatfield,* 436 F.3d 1228, 1240-41 [77 USPQ2d 1968] (10th Cir. 2006) (quoting *Sebastian Intl., Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073-74 [34 USPQ2d 1720] (9th Cir. 1995)).

14    *McDonald's Corp. v. Shop at Home, Inc.,* 82 F.Supp.2d 801, 807-08 [53 USPQ2d 1959] (M.D. Tenn. 2000).

15    *El Greco Leather Prods. Co., Inc. v. Shoe World,Inc.,* 806 F.2d 392, 395 [1 USPQ2d 1016] (2d Cir. 1986); *Goldic Elec., Inc. v. Loto Corp. U.S.A.,* No. 00 CFV. 0028 (DC), 2000 WL 1880327, *5 (S.D.N.Y. Dec. 28, 2000) (citing *Warner Lambert Co. v. Northside Dev. Co.,* 86 F.3d 3, 6 [39 USPQ2d 1136] (2d Cir. 1996).

16    *Australian Gold,* 436 F.3d at 1241 (internal citations omitted).

17    *Toho Co., Ltd. v. William Morrow and Co., Inc.* 33 F.Supp.2d 1206, 1212 [46 USPQ2d 1801] (C.D. Cal. 1998) (citing *Adray v. Adry-Mart; Inc.,* 76 F.3d 984, 991 n.7 [37 USPQ2d 1872] (9th Cir. 1995)).

18    *See Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.,* 832 F.2d 1311 [4 USPQ2d 1789] (2nd Cir. 1987) (requiring infringing users to demonstrate effectiveness of a proposed disclaimer).

19    *See Triesault v. Greater Salt Lake Bus. Dist.,* 126 P.3d 781, 785 (Utah Ct. App. 2005) ("To recover for intentional interference with prospective economic relations, [plaintiff] must show '(1) that [defendant] intentionally interfered with [plaintiffs'] existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to [plaintiff].'" (quoting *Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 304 (Utah 1982)).

20    *See El Greco,* 806 F.2d at 395.

21    *See Tsunami Softgoods, Inc. v. Tsunami Int'l., Inc.,* No. 2:00-CV738K, 2001 WL 670926, *6 (D. Utah Jan. 19, 2001).

22    Docket No. 22; Sealed Docket No. 141, dated March 14, 2007.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.