UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FLYCATCHER CORP. LTD and FLYCATCHER TOYS, INC.,

                Plaintiffs,

                -v.-

AFFABLE AVENUE LLC, *doing business as* CJ DIST; OZMOS COMPANY LLC; EYTAN GROSSMAN, *doing business as* EYG DEALS; CREATIVE REWARDS INC.; JOSHUA CHAVEZ, *doing business as* ONESTOPFASTSHOP; TOP EXPERIENCE COMPANY LLC, *doing business as* WE PAY COST LLC; PRETTY PRINCESS LLC, *doing business as* NORVI; AYANEE LLC; FORTUNA KG LLC, *doing business as* FORTUNAKG; JAXSON MANAGEMENT LLC; JOAN ALEXANDER SORIANO, *doing business as* PRIMECHOICEMART; A WAHABI CORPORATION, *doing business as* MCPROFITS; MODA ORIGINAL LLC; VALLEY BODEGA WHOLESALE INC.; EYAD WAHBY; SAM SHAMLOO; S&N GLOBAL SUPPLY INC.; VALUE VALLEY WHOLESALE LLC; ADAM HAMIDA; and JOHN DOES 1 to 25,

                Defendants.

24 Civ. 9429 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

      In October 2024, three truckloads of children's educational toys were "divert[ed]" — *i.e.*, stolen — while in transit to a distribution center. Plaintiffs Flycatcher Corp. Ltd. and Flycatcher Toys, Inc. (collectively, "Plaintiffs" or "Flycatcher") tried in vain to recover their lost goods. However, Plaintiffs soon noticed that online merchants began to offer these same toys at unusually discounted prices; test purchases undertaken by Plaintiffs later confirmed the source of these toys to be the stolen shipments. After issuing cease-and-desist letters, Plaintiffs brought the instant action, alleging federal claims under the

Lanham Act, state-law claims under New York and California law, and common-law claims. Defendants Top Experience Company LLC ("Top") and Valley Bodega Wholesale Inc. ("Valley Bodega") (collectively, the "Moving Defendants") have moved to dismiss Plaintiffs' Third Amended Complaint (the "TAC") in full.[1] For the reasons that follow, the Court grants in part and denies in part the Moving Defendants' motion.

**BACKGROUND**[2]

## A.    Factual Background

Flycatcher Corp. Ltd., a U.K.-based company, is the owner of the "SMART SKETCHER" trademark for children's educational toys. (TAC ¶¶ 4, 34). Flycatcher Toys Inc., its wholly-owned U.S. subsidiary, distributes Flycatcher products in the United States, including through the Flycatcher website and retail internet platforms like Amazon. (*Id.* ¶¶ 5, 33, 39-40). Flycatcher offers a toy called the smART Sketcher 2.0, which allows children to turn photos from a mobile device into drawings via a projector. (*Id.* ¶¶ 41-43).

---

[1]    Defendant Affable Avenue LLC ("Affable") also moved to dismiss the TAC. (Dkt. #153-156; *see also* Dkt. #164 (submission requesting leave to withdraw opening memorandum of law)). In a companion Opinion and Order issued today, the Court struck Affable's motion papers and entered a default judgment against it.

[2]    This Opinion draws its facts from the TAC (Dkt. #142), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). For ease of reference, Defendant Top's memorandum of law in support of its motion to dismiss the TAC, which motion was joined by Defendant Valley Bodega, is referred to as "Def. Br." (Dkt. #151); Plaintiffs' memorandum of law in opposition to the motion to dismiss is referred to as "Pl. Opp." (Dkt. #167); Defendant Top's reply memorandum is referred to as "Top Reply" (Dkt. #177); Defendant Valley Bodega's reply memorandum is referred to as "VB Reply" (Dkt. #178); and Plaintiffs' sur-reply brief is referred to as "Pl. Sur-Reply" (Dkt. #190).

The events giving rise to this action occurred on October 16 or 17, 2024, when 12,600 units of smART Sketcher 2.0 products (valued at over $1 million) were stolen from three trucks traveling from a warehouse in Nevada to a Walmart fulfillment distribution center in Georgia.  (TAC ¶ 48).  Flycatcher did not have a sale arrangement with Walmart; rather, Walmart was to hold the smART Sketcher 2.0 units in its warehouse and offer them for sale (by Flycatcher) on the Walmart website.  (*Id.* ¶ 49).  But because the units were stolen before they could reach Walmart's warehouse, Flycatcher was never able to sell them.  (*Id.*).

Shortly after the theft, Flycatcher discovered that various internet and wholesale merchants, including Defendant Top, were selling an unusually high volume of smART Sketcher 2.0 units at artificially low prices — thereby undercutting Flycatcher's sales.  (TAC ¶¶ 50-51, 59).  In its TAC, Flycatcher labels these merchants as the "Merchant Defendants."  (*Id.* ¶ 28).  Flycatcher also discovered that other companies, including Defendant Valley Bodega, had supplied large quantities of the stolen smART Sketchers to the Merchant Defendants.  (*Id.* ¶ 56).  The TAC identifies these companies as the "Supplier Defendants."  (*Id.* ¶ 29).  After discovering the theft, Flycatcher sent cease-and-desist letters to the Merchant Defendants demanding the return of the stolen smART Sketchers, but the Merchant Defendants refused and continued to offer the goods for sale.  (*Id.* ¶¶ 53-54).

Normally, Flycatcher offers a manufacturer's warranty against defects, which warranty Flycatcher advertises on its own website and on Amazon.  (TAC

¶ 47).  To find warranty information on Amazon, the listing directs customers to Flycatcher's website.  (*Id.* ("Please contact the seller directly for warranty information for this product.  You may also be able to find warranty information on the manufacturer's website.")).  Flycatcher's website states that there is a 90-day warranty that extends to all Flycatcher customers, which is a superior warranty to Amazon's 60-day return policy.  (*Id.*).  But Flycatcher's website explicitly states that Flycatcher requires a customer to provide an order number and that it will not honor the warranty if a product is not acquired from legitimate sources.  (*Id.*).

The Merchant Defendants have advertised the stolen smART Sketcher 2.0 products on Amazon and Walmart using the exact same listing as Flycatcher, including the statement that a manufacturer's warranty is available via the manufacturer's website.  (TAC ¶ 55).  But because Flycatcher does not honor warranties on stolen products, Plaintiffs argue that the products sold by Defendants lack warranties, are materially different (and inferior to) other Flycatcher products, and thus are not genuine.  (*Id.* ¶¶ 1, 47, 55, 58).  What is more, Plaintiffs argue that Defendants have deceived customers by selling the smART Sketchers without disclosing that they were stolen and therefore lacked warranties.  (*Id.* ¶¶ 1, 58).

## B.    Procedural Background

On December 11, 2024, Flycatcher filed a complaint alleging federal claims for trademark infringement and unfair competition, as well as state- and common-law claims for deceptive trade practices, fostering the sale of stolen

goods, and unfair competition. (Dkt. #1). On March 18, 2025, Top filed an answer. (Dkt. #67). Flycatcher amended its complaint on April 6, 2025 (Dkt. #97), and on April 29, 2025, moved for leave to file a proposed Second Amended Complaint (the "SAC") (Dkt. #115-117).

On May 9, 2025, Top submitted a pre-motion letter opposing Flycatcher's motion to file the SAC and seeking leave to file a motion to dismiss it. (Dkt. #129). Flycatcher responded on May 14, 2025. (Dkt. #135). On May 19, 2025, the Court granted Flycatcher leave to amend. (Dkt. #140). Further, recognizing that Top's pre-motion letter previewed grounds on which it intended to move to dismiss the SAC, the Court invited Flycatcher to amend its complaint a third time in the interest of efficiency. (*Id.* at 3). Flycatcher filed its TAC (the operative complaint) on May 23, 2025. (Dkt. #142). The Court issued an Order that same day stating that it would not grant Flycatcher a fourth chance to amend its complaint and setting a briefing schedule for Top's motion to dismiss. (Dkt. #144).

The TAC contains nine claims. Counts I, II, and III allege Lanham Act violations for trademark infringement in violation of 15 U.S.C. § 1114 (Count I), unfair competition in violation of 15 U.S.C. § 1125 (Count II), and false advertising in violation of 15 U.S.C. § 1125 (Count III). Count IV is a New York state-law claim for deceptive trade practices in violation of New York General Business Law ("GBL") § 349. Count V alleges that Defendants fostered the sale of stolen goods in violation of New York Penal Law § 165.66. Count VI is a common-law unfair competition claim. Count VII alleges conversion, and

Count VIII seeks replevin, both under the common law.  Count IX is a California state-law claim alleging that Defendants bought, received, and sold stolen goods in violation of California Penal Code § 496(a) and (c).

On June 20, 2025, Top filed its motion to dismiss the TAC and supporting papers.  (Dkt. #150-152).  On June 27, 2025, Valley Bodega sought leave to join and adopt Top's brief in support of its motion to dismiss.  (Dkt. #162).  Flycatcher filed no opposition to Valley Bodega's request, which the Court granted on July 8, 2025.  (Dkt. #163).  The Court also prospectively construed Flycatcher's forthcoming opposition brief as an opposition to both Top's and Valley Bodega's motions.  (*Id.*).  Flycatcher submitted its consolidated opposition brief on July 16, 2025.  (Dkt. #167).  The Moving Defendants filed separate replies on August 8, 2025.  (Dkt. #177-178).

On August 12, 2025, Flycatcher filed a letter arguing that the Moving Defendants had raised a new argument in their reply briefs and asking the Court to disregard it.  (Dkt. #184).  The Moving Defendants submitted a joint opposition that same day.  (Dkt. #186).  On August 13, 2025, the Court issued an Order stating that it would not disregard the argument but would permit Flycatcher to file a sur-reply.  (Dkt. #187).  Flycatcher did so on August 18, 2025.  (Dkt. #190).

This Opinion and Order resolves the Moving Defendants' motions to dismiss.  In a companion Opinion and Order, the Court resolves its outstanding Order to Show Cause directing counsel for Defendant Affable to

respond to certain questions regarding the use of generative artificial

intelligence in certain problematic submissions to the Court.

## DISCUSSION

### A.    Applicable Law

The Moving Defendants seek dismissal of Flycatcher's claims under

Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim

upon which relief can be granted.  When considering such a motion, a court

should "draw all reasonable inferences in Plaintiffs' favor, 'assume all well-

pleaded factual allegations to be true, and determine whether they plausibly

give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98,

104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 548 F.3d 82, 88 (2d

Cir. 2009)).  Flycatcher is entitled to relief if it alleges "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S.

544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.

2007) ("While *Twombly* does not require heightened fact pleading of specifics, it

does require enough facts to 'nudge[ ] [plaintiffs'] claims across the line from

conceivable to plausible.'" (second alteration in original) (quoting *Twombly*, 550

U.S. at 570)).

A court is not, however, bound to accept "conclusory allegations or legal

conclusions masquerading as factual conclusions."  *Rolon* v. *Hennenman*, 517

F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Loc. 819 I.B.T. Pension Plan*, 291

F.3d 236, 240 (2d Cir. 2002); *see also Harris* v. *Mills*, 572 F.3d 66 (2d Cir.

2009) ("[A]lthough 'a court must accept as true all of the allegations contained

7

in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (alteration in original) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009))).

**B.    Analysis**

**1.    Flycatcher's Group Pleading Is Permissible Because the TAC Provides Sufficient Notice to Each Defendant of Its Conduct**

The Moving Defendants begin with a threshold argument that the TAC improperly employs "shotgun" or "group" pleading because it lumps together all twenty-plus Defendants and fails to differentiate each Defendant's individual conduct. (Def. Br. 1, 5-8). It is true that a complaint that names multiple defendants must provide a plausible factual basis to distinguish each defendant's conduct. *See Atuahene* v. *City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (explaining that Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests'" (quoting *Ferro* v. *Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961))); *accord George* v. *Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 449 (S.D.N.Y. 2016). This standard cannot be satisfied "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *George*, 221 F. Supp. 3d at 449 (alteration in original) (quoting *Atuahene*, 10 F. App'x at 34).

But that is not to say that "group pleading can never satisfy federal pleading standards." *Vantone Grp. Ltd. Liab. Co.* v. *Yangpu NGT Indus. Co.*, No. 13 Civ. 7639 (LTS), 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015); *see*

*also Wynder* v. *McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("Dismissal pursuant to [Rule 8] 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" (quoting *Salahuddin* v. *Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988))). Rather, "[t]he Second Circuit has held that the 'key to Rule 8(a)'s requirements is whether adequate notice is given,' and that 'fair notice' is 'that which will enable the adverse party to answer and prepare for trial, allow the application of *res judicata*, and identify the nature of the case so that it may be assigned the proper form of trial.'" *Vantone Grp.*, 2015 WL 4040882, at *3 (quoting *Wynder*, 360 F.3d at 79). "[C]ourts within this Circuit have held that '[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.'" *Id.* (second alteration in original) (quoting *Hudak* v. *Berkley Grp., Inc.*, No. 13 Civ. 89 (WWE), 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014)).

Here, Flycatcher's group pleading satisfies federal pleading standards. It divides Defendants into three groups: the Merchant Defendants (including Top), the Supplier Defendants (including Valley Bodega), and the Manager Defendants. (TAC ¶¶ 28-30). The TAC makes clear in separate and readily distinguishable paragraphs which allegations apply to which sets of Defendants. (*See id.* ¶¶ 50-57). Specifically, the TAC accuses the Merchant Defendants of selling and offering for sale non-genuine goods that bear Flycatcher's trademarks, misrepresenting warranty coverage, and refusing to

return the stolen goods even after being advised of their stolen nature. (*Id.* ¶¶ 50-55). And it accuses the Supplier Defendants of supplying large quantities of stolen product to the Merchant Defendants, selling them in interstate commerce, and encouraging their customers to market the product on the internet. (*Id.* ¶ 56).

These allegations sufficiently distinguish the conduct of Top and Valley Bodega, thus allowing them to answer and prepare for trial. *See Atuahene*, 10 F. App'x at 34; *Vantone Grp.*, 2015 WL 4040882, at *3; *see also Canon U.S.A., Inc.* v. *F & E Trading LLC*, No. 15 Civ. 6015 (DRH), 2017 WL 4357339, at *8 (E.D.N.Y. Sept. 29, 2017) (holding that a complaint dividing defendants into three groups satisfied Rule 8(a), "even though it contain[ed] allegations against [two groups of defendants] collectively"). In fact, Valley Bodega argues that certain claims in the TAC do not apply to it as a Supplier Defendant because they involve only the Merchant Defendants. (VB Reply 4-5). Such arguments would not be possible if the TAC did not provide Valley Bodega adequate notice.

### 2. Count I (Trademark Infringement) and Count II (Unfair Competition) State Claims Because Plaintiffs Have Alleged That at Least Some of the Stolen Goods Were Not Genuine

Count I alleges that Defendants infringed on Flycatcher's smART Sketcher trademark in violation of the Lanham Act, 15 U.S.C. § 1114. (TAC ¶¶ 63-68). Count II alleges that Defendants' conduct constituted unfair competition, also in violation of the Lanham Act, 15 U.S.C. § 1125. (*Id.* ¶¶ 69-73). In general, the Lanham Act requires a plaintiff asserting such claims to "demonstrate that [i] 'it has a valid mark that is entitled to protection' and that

[ii] the defendant's 'actions are likely to cause confusion with [that] mark.'"
*Tiffany & Co.* v. *Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting
*Sports Auth., Inc.* v. *Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)); *see
also Virgin Enters. Ltd.* v. *Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (noting that
trademark infringement claims under Lanham Act §§ 1114(1) and 1125(a) are
analyzed under the same test).

The Moving Defendants' arguments for dismissal of these counts are
predicated on what has come to be known as the "first sale doctrine" in
trademark law.  *See generally* 3 J. Thomas McCarthy, *McCarthy on Trademarks
and Unfair Competition* § 25:41 (5th ed. 2025) (discussing the doctrine).  By way
of background, "[a]s a general rule, trademark law does not reach the sale of
genuine goods bearing a true mark even though the sale is not authorized by
the mark owner."  *Polymer Tech. Corp.* v. *Mimran*, 975 F.2d 58, 61-62 (2d Cir.
1992) (footnote omitted) (citing *NEC Electronics* v. *CAL Circuit Abco*, 810 F.2d
1506, 1509 (9th Cir. 1987)); *see also Chanel, Inc.* v. *WGACA, LLC*, No. 18 Civ.
2253 (LLS), 2022 WL 902931, at *11 (S.D.N.Y. Mar. 28, 2022) ("[S]uch a sale
does not inherently create consumer confusion or deceive the public.").

One corollary to this rule is the first sale doctrine, pursuant to which
"there is no violation of the Lanham Act, despite the subject goods having been
resold without the trademark holder's consent, if the trademark holder
authorized the first sale of the trademarked goods into the stream of or
channels of commerce and the goods at issue are found to be genuine."
*Energizer Brands, LLC* v. *My Battery Supplier, LLC*, 529 F. Supp. 3d 57, 62

11

(E.D.N.Y. 2021) (citation and quotation marks omitted); *see also Bel Canto Design, Ltd.* v. *MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 222 (S.D.N.Y. 2011) ("This observation is sometimes referred to as the 'first sale doctrine,' insofar as it recognizes that 'the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product.'" (quoting *Beltronics USA, Inc.* v. *Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1071-72 (10th Cir. 2009))).

"The Lanham Act does not give mark holders the right to control subsequent, non-authorized resales, as long as the product sold is genuine." *Bel Canto Design, Ltd.*, 837 F. Supp. 2d at 222. In this regard, the Second Circuit has explained that "goods are not genuine if they do not conform to the trademark holder's quality control standards or if they differ materially from the product authorized by the trademark holder for sale." *Zino Davidoff SA* v. *CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (citation omitted). The quality control exception to the first sale doctrine "applies when goods do not conform to the trademark holder's quality control standards," while the material difference exception "applies if the goods differ in a way that would likely be relevant to a consumer's decision to purchase them." *Coty Inc.* v. *Cosmopolitan Cosms. Inc.*, 432 F. Supp. 3d 345, 349-50 (S.D.N.Y. 2020) (collecting cases).

Plaintiffs offer two arguments against application of the first sale doctrine to this case. (Pl. Opp. 6). While the first is potentially viable, the second provides a basis for Counts I and II to go forward.

12

### a. The Law Is Unclear as to Whether Flycatcher Authorized a First Sale

Flycatcher first contends that the stolen goods were not "genuine" (*i.e.*, that the first sale doctrine does not apply) because Flycatcher never authorized their "first sale." (Pl. Opp. 6). That is, Flycatcher never sold the stolen smART Sketchers, but instead arranged for Walmart to hold them in a warehouse and offer them for sale on Walmart's website. (TAC ¶ 49). The Moving Defendants counter that "first sale" means the first sale of the line of goods. (Def. Br. 13-17). Because, they contend, Flycatcher authorized the sale of smART Sketcher 2.0 products in the United States generally, it cannot selectively single out the stolen goods as not having undergone an authorized first sale. (*Id.* at 14 ("[T]he question of whether a good is genuine turns on its initial introduction into the market and a resulting sale.")).

"It is well-settled that '[t]rademarked goods produced by a manufacturer under contract with the trademark owner are not genuine goods until their sale under the mark is authorized by the trademark owner.'" *Microban Prods. Co.* v. *API Indus., Inc.*, No. 14 Civ. 41 (KPF), 2014 WL 1856471, at *10 (S.D.N.Y. May 8, 2014) (alteration in original) (emphasis omitted) (quoting *Liz Claiborne, Inc.* v. *Mademoiselle Knitwear, Inc.*, 979 F. Supp. 224, 230 (S.D.N.Y. 1997)). It is less clear, however, what qualifies as the "first sale," particularly in the context of stolen goods.

A strong argument can be made that the term "first sale" pertains to the specific goods in question, and not the line of goods in general. Support for this argument is found in the Second Circuit's treatment of goods produced

after a manufacturing relationship has concluded.  For example, in *El Greco Leather Products Co.* v. *Shoe World, Inc.,* 806 F.2d 392 (2d Cir. 1986), a trademark holder cancelled a sales agreement with a manufacturer after the manufacturer had already produced five-sevenths of the contracted-for goods. *Id.* at 393-94.  The trademark holder transferred the remaining orders to another manufacturer, but the original manufacturer produced the remaining two-sevenths anyway.  *Id.*  The Second Circuit found these remaining goods were not genuine because the trademark holder had not authorized them.  *Id.* at 395-96.  Similarly, in *Ryan* v. *Volpone Stamp Co.*, 107 F. Supp. 2d 369 (S.D.N.Y. 2000), the court explained that "simply because Nolan Ryan authorized the use of his name, signature and likeness in connection with [defendant]'s products in the past, does not make his endorsement irrevocable for all time."  *Id.* at 380-81.

Courts have, however, come to markedly different conclusions on the operation of the first sale doctrine in the context of stolen goods.  A sister court in this District observed in *dicta* that "the first sale doctrine would not be satisfied here if the unauthorized dealer from whom [the defendant] purchased [the plaintiff's watches] had stolen the watches from [the plaintiff]." *TechnoMarine SA* v. *Jacob Time, Inc.*, No. 12 Civ. 790 (KBF), 2013 WL 5231471, at *7 (S.D.N.Y. July 16, 2013) (citing, *inter alia*, *Quality King Distribs.* v. *Lanza Int'l, Inc.*, 523 U.S. 135, 146-47 (1998) (concluding, in the analogous context of the Copyright Act, that "the first sale doctrine would not provide a defense ... [for] one whose possession of the copy was unlawful [*e.g.*, a seller with stolen

motion picture prints]")).  Courts in other districts have concluded similarly in denying application of the first sale doctrine.  *See, e.g.*, *Klein-Becker usa LLC* v. *Englert*, No. 06 Civ. 378 (TS), 2007 WL 1933147, at *5 (D. Utah Mar. 28, 2007) ("However, the first sale doctrine only covers the stocking and reselling of genuine products. …  It has no application to stolen goods because one approved sale has not already occurred." (emphasis, citation, and quotation marks omitted)).

Other courts, however, emphasizing the consumer-oriented focus of the doctrine, have rejected trademark infringement claims regarding stolen goods. For example, in *McCarthy* v. *Fuller*, No. 08 Civ. 994 (WTL) (DML), 2013 WL 6073039 (S.D. Ind. Nov. 15, 2013), the court found that

> with regard to the sale of the Medallions that the Counterclaim Defendants obtained from [the defendant] — regardless of how they were obtained — those who purchased the Medallions received a genuine Medallion, not a substitute.  There was no confusion with regard to the origin of each Medallion; the trademark indicates that it originated with [the defendant], and it did, in fact, originate with [the defendant].

*Id.* at *2.  Another district court within this Circuit concluded similarly, reasoning that the alleged disputes over ownership involved neither an affirmative false representation on the defendant's part nor a material alteration of the product:

> The plaintiffs' trademark infringement and false designation of origin claims boil down to claims that the defendants violated the Lanham Act simply by selling stolen goods.  And that is simply not sufficient.  Indeed, as this Court pointed out at oral argument, if the allegations here were enough to state a claim under the

> Lanham Act, then it would seem that any distributor — say, Target — that sells genuine goods under their trademarked names could be liable under the Lanham Act should there be a dispute about ownership.
>
> In sum, while the plaintiffs' allegations regarding the sale of stolen property might well state a claim for conversion or some other tort, such claims, without more, do not fall within the Lanham Act's purview.

*Tentandtable.com, LLC* v. *Aljibouri*, No. 22 Civ. 78 (LJV), 2025 WL 959656, at *7

(W.D.N.Y. Mar. 31, 2025) (citations omitted).

### b. Plaintiffs Have Alleged a Material Difference as to Certain of the Goods

Ultimately, the Court need not wade into this doctrinal dispute, because Plaintiffs offer a second exception to the first sale doctrine that allows the two claims to proceed, at least in part. Flycatcher argues that because the stolen goods lacked a manufacturer's warranty, they were materially different and therefore not genuine. (Pl. Opp. 6). Courts in this District have found that the lack of a manufacturer's warranty can render a good materially different for first sale doctrine purposes, *see, e.g.*, *Bel Canto Design, Ltd.*, 837 F. Supp. 2d at 226 (first citing *Beltronics USA, Inc.*, 562 F.3d at 1071-72; then citing *Original Appalachian Artworks, Inc.* v. *Granada Elecs., Inc.*, 816 F.2d 68, 71 (2d Cir. 1987)), and "when a trademarked product that is being resold is materially different from the product as it is sold by the plaintiff, it is not a genuine article," *id.* at 223 (internal quotation marks omitted) (citing *Beltronics USA, Inc.*, 562 F.3d at 1072).

The Moving Defendants suggest two reasons why Flycatcher could not refuse to honor the warranty. They first say that the lack of warranty is a

product of Flycatcher's "own unilateral conduct." (Def. Br. 12). That is, they argue that Flycatcher has unilaterally chosen not to honor its warranty and that it cannot manufacture liability by its own independent actions. (*Id.*). But this argument misapprehends the state of affairs. As alleged, Flycatcher does not honor warranties of stolen goods. An unknown third party, not Flycatcher, stole the goods, and Defendants supplied and sold them. It is those actions, not Flycatcher's, that led Flycatcher to not honor its warranties.

Separately, the Moving Defendants point to New York GBL § 369-b, which prohibits manufacturers like Flycatcher from limiting warranties to direct purchasers. (Def. Br. 12). GBL § 369-b provides:

> A warranty or guarantee of merchandise may not be limited by a manufacturer doing business in this state solely for the reason that such merchandise is sold by a particular dealer or dealers, or that the dealer who sold the merchandise at retail has, since the date of sale, either gone out of business or no longer sells such merchandise. Any attempt to limit the manufacturer's warranty or guarantee for the aforesaid reason is void.

N.Y. Gen. Bus. Law § 369-b.

By its terms, GBL § 369-b is quite broad. Few courts have had occasion to interpret its reach, but the court to most extensively engage with the language has found that it bars manufacturers from "refusing to honor warranties of products for the sole reason that they were sold by unauthorized dealers." *Bel Canto Design, Ltd.*, 837 F. Supp. 2d at 227; *see also NOCO Co.* v. *ABC Deals, Inc.*, No. 22 Civ. 1172 (BMB), 2024 WL 519886, at *5 (N.D. Ohio Feb. 8, 2024) ("General Business Law § 369-b provides that a manufacturer may not disclaim product warranties for the sole reason that the product is

17

sold by an unauthorized retailer[.]"); *TechnoMarine SA* v. *Jacob Time, Inc.*,
No. 12 Civ. 790 (KBF), 2012 WL 2497276, at *4 n.2 (S.D.N.Y. June 22, 2012)
("[P]laintiff concedes, 'N.Y. GBL § 369-b bans refusals to honor warranties
based solely on a dealer's unauthorized status.'" (alterations adopted) (quoting
plaintiff's brief, in turn citing *Bel Canto Design, Ltd.*, 837 F. Supp. 2d at 227)).
*But see Worldhomecenter.com, Inc.* v. *KWC Am., Inc.*, No. 10 Civ. 7781 (NRB),
2011 WL 4352390, at *8 (S.D.N.Y. Sept. 15, 2011) (opining that a policy
disclaiming "warranties for all products sold by 'unauthorized Internet sellers'
may be too general to fit within the statutory language of § 369-b").

Anticipating this conclusion, Flycatcher homes in on the word "solely" to
argue that GBL § 369-b does not require it to honor the warranty. Specifically,
Flycatcher says that because it had another reason not to honor the
warranties — that the goods were stolen — it was not refusing "solely" because
the Moving Defendants were unauthorized dealers. (Pl. Opp. 11). But this is
just another way of saying the same thing: The Moving Defendants were
unauthorized dealers because the goods were stolen. The *Bel Canto* court
acknowledged the premise of Flycatcher's argument: "A manufacturer may
have other reasons for refusing to honor a warranty, and nothing in GBL
[§] 369-b prevents the manufacturer from enforcing such restrictions." 837 F.
Supp. 2d at 228-29. But, unfortunately for Flycatcher, the TAC alleges no
other reason for refusing to honor the warranty.

As it happens, however, the Moving Defendants win the battle, but lose
the war. Even as the Court accepts their argument that those purchasers able

to invoke New York law would receive the benefit of GBL § 369-b, nothing in the TAC suggests that the purloined smART Sketchers were sold *only* to such purchasers. And in the absence of a showing of an analogous provision in every state in which the goods were sold, the Moving Defendants fail to rebut Plaintiffs' argument that the absence of a warranty renders the goods materially different. The Moving Defendants cannot take shelter under the first sale doctrine, and the Court will therefore allow Counts I and II to proceed.[3]

### 3. Count VI (Common-Law Unfair Competition) States a Claim as to Top But Not as to Valley Bodega

Count VI alleges common-law unfair competition. (TAC ¶¶ 85-87). The Court addresses this claim out of order because the same standard that governs Flycatcher's trademark infringement claim governs this unfair competition claim, except that common law also requires a showing of bad faith or intent. *See Chanel, Inc.* v. *RealReal, Inc.*, 449 F. Supp. 3d 422, 446 (S.D.N.Y. 2020); *CDC Newburgh Inc.* v. *STM Bags, LLC*, 692 F. Supp. 3d 205, 225 (S.D.N.Y. 2023); *Maharishi Hardy Blechman Ltd.* v. *Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 550-51 (S.D.N.Y. 2003). Courts have found bad faith in instances where defendants do not accept plaintiffs' demands to "cease and

---

[3] The Court acknowledges the additional briefing the parties submitted regarding the content of Flycatcher's warranty. (*See* Dkt. #184, 186, 190). The Moving Defendants accuse Flycatcher of strategically changing the warranty on its website before filing the original complaint in this action. (Top Reply 7-9; VB Reply 3-4). Flycatcher counters that Defendants are looking in the wrong place; Flycatcher's warranty is physically included in the box with its products and is different from the online refund policy. (Pl. Sur-Reply 1). Flycatcher also says that it updated its online policy while the infringing acts were still ongoing, and only did so to provide "clear warning to customers" that stolen goods would not carry warranties. (*Id.* at 1-2). The Court accepts Plaintiffs' well-pleaded allegations in the TAC concerning the Flycatcher warranty, which allegations, at this stage, the Moving Defendants have failed to rebut.

desist from offering for sale counterfeit products," *RealReal, Inc.*, 449 F. Supp. 3d at 447, or where "a defendant adopts or uses a mark with the goal of capitalizing on the plaintiff's reputation and goodwill through confusion or deception," *WM Int'l, Inc.* v. *99 Ranch Mkt. #601*, 329 F.R.D. 491, 500 (E.D.N.Y. 2019).

Flycatcher contends that Defendants acted in bad faith because they, among other things, (i) sold the smART Sketchers "at an unusually high volume and low price"; (ii) "were advised that the goods were stolen but still continued selling them"; (iii) "used the same Amazon listing which falsely stated that the manufacturer's warranty applies, when as to these goods it does not"; and (iv) willfully misused the marks.  (Pl. Opp. 12 (citing TAC ¶¶ 47, 50, 51)).  Even modifying the third reason to account for the effect of GBL § 369-b on certain purchases, the Court finds the remaining allegations sufficient to allege bad faith.  The Merchant Defendants refused Flycatcher's demands in its cease-and-desist letters, and, indeed, continued to sell the products.  *See RealReal, Inc.*, 449 F. Supp. 3d at 447.  And they capitalized on Flycatcher's goodwill and reputation by deceptively selling high volumes of stolen smART Sketchers at artificially low prices.  *See WM Int'l, Inc*, 329 F.R.D. at 500.

In sum, the Court finds that Flycatcher has stated a common-law unfair competition claim in Count VI — but only as to Top.  The TAC's allegations do not pertain to the Supplier Defendants, so Count VI does not state a claim as to Valley Bodega.  (*See* VB Reply 4).

20

### 4.      Count III (False Advertising) States a Claim

Count III alleges false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). (TAC ¶¶ 74-76; Pl. Opp. 12). To state a claim for false advertising, Flycatcher must allege that (i) "the statement in the challenged advertisement is false"; (ii) "the defendants misrepresented an inherent quality or characteristic of the product"; (iii) "the defendant placed the false or misleading statement in interstate commerce," and (iv) "the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG* v. *Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (alteration adopted) (citation and quotation marks omitted).

For the reasons already discussed, Count III fails to state a claim to the extent it is vitiated by GBL § 369-b. After all, Flycatcher says the false advertisements are Defendants' Amazon listings, which recite that there are warranties available for the stolen products. (Pl. Opp. 13 (citing TAC ¶¶ 47, 55, 58)). And as explained above, GBL § 369-b requires Flycatcher to honor the warranties in this case as to a subset of the stolen goods. (*See also* Def. Br. 18 n.3). Flycatcher tries to recast its argument by claiming that the false warranty statement constitutes the misrepresentation of an inherent quality of the product (the second false advertising element), but this argument fails for the same reason. (*See* Top Reply 11). However, as with Counts I, II, and VI, the Court sustains this claim because Plaintiffs' allegations extend to a group of purchasers *unable* to invoke GBL § 369-b or an analogous state statute.

21

The Moving Defendants advance additional arguments why Count III does not state a claim, but the Court does not find them to be persuasive. To begin, the Moving Defendants argue that Flycatcher has not adequately pleaded an injury. (Def. Br. 19-23). "To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). That standard, in turn, breaks down into a two-part test: (i) an injury to plaintiff's commercial interest in sales or reputation that (ii) flows directly "from the deception wrought by the defendant's advertising." *Id.* at 133-34. The Moving Defendants focus on the second part, asserting that Flycatcher has not adequately alleged injuries flowing directly from their alleged deception because Flycatcher has not expressly pleaded that it lost revenue or that deceived consumers withheld trade from it. (Def. Br. 21-23).

The Court is persuaded by Flycatcher's response, which argues that a presumption of injury applies here. (Pl. Opp. 14). The "upshot" of *Merck* and *Lexmark* "is that if Plaintiffs are in direct competition with Defendants, and if Defendants' false advertising implicated Plaintiffs in some way, then injury and proximate cause are presumed." *Souza* v. *Exotic Island Enters., Inc.*, 68 F.4th 99, 119 (2d Cir. 2023). And here, Flycatcher directly competed with Top for sales of the same products on the same website. The TAC also alleges that Flycatcher suffered commercial injuries because Top undercut it with

22

artificially low prices, thereby diverting sales. (*See* TAC ¶¶ 50-51, 59).  It is worth noting, though, that this argument only applies to the Merchant Defendants, so on this theory Count III would also fail to state a claim as to the Supplier Defendants like Valley Bodega, who did not sell to consumers. (*See* VB Reply 4).

The Moving Defendants also argue that Flycatcher failed to allege that they "use[d] in commerce" Flycatcher's products, as required under the Lanham Act. (Def. Br. 18-19 (quoting 15 U.S.C. § 1125(a)(1)(B))).  But that does not make sense, because the TAC clearly sets forth allegations that the Merchant Defendants sold the stolen products to consumers nationwide via the internet.  *See CDC Newburgh Inc.*, 692 F. Supp. 3d at 229 ("Counterclaim Defendant clearly made 'use in commerce' of Counterclaim Plaintiff's Trademarks by selling products bearing these Trademarks on Amazon.").  It is less clear whether the Supplier Defendants' sales to the Merchant Defendants suffice, but the Court will allow the claim to proceed as modified at this stage of the proceedings.

### 5.    Count IV (New York Deceptive Trade Practices) Fails to State a Claim Because Flycatcher Does Not Allege a Significant Risk of Harm to the Public Health or Interest

Count IV alleges that Defendants' conduct constitutes deceptive trade practices in violation of GBL § 349. (TAC ¶¶ 77-79).  GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and provides that any person injured as a result of such acts or practices may bring an action for damages.

N.Y. Gen. Bus. Law § 349(a), (h).  The "well established" elements of a GBL § 349 claim are that "[i] the defendant's conduct was consumer-oriented; [ii] the defendant's act or practice was deceptive or misleading in a material way; and [iii] the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP* v. *Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 176 (2021).  The parties' disagreements center on the first prong.

Flycatcher advances several arguments why its GBL § 349 claim succeeds.  For starters, it observes that GBL § 349 and Lanham Act false advertising claims are nearly coextensive, and reasons from this similarity that because Flycatcher states a false advertising claim, it also states a GBL § 349 claim.  (Pl. Opp. 16 (citing *Davis* v. *Avvo, Inc.*, 345 F. Supp. 3d 534, 540 (S.D.N.Y. 2018), for the proposition that "[t]he standards for bringing a NYGBL § 349 claim are substantially the same as those applied to claims brought under [the Lanham Act, 15 U.S.C. § 1125]") (citation and quotation marks omitted))).  Separately, Flycatcher contends that GBL § 349 and Lanham Act trademark infringement claims are also essentially coextensive.  (*Id.* at 16-17).  Unsurprisingly, the Moving Defendants vigorously dispute these contentions (*see* Def. Br. 25-27; Top Reply 12-14), and ultimately they have the better of the argument.

Flycatcher invokes the following language from *Himmelstein* to support a capacious reading of GBL § 349:  "[G]iven the text and purpose of General Business Law § 349, the Court has explained that an act or practice is

24

consumer-oriented when it has 'a broader impact on consumers at large.'"
*Himmelstein*, 37 N.Y.3d at 177 (quoting *Oswego Laborers' Loc. 214 Pension
Fund* v. *Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)).  (*See also* Pl. Opp. 17).
The statement is, of course, true, but it is also consistent with the Moving
Defendants' point that consumer confusion or mere competitive disadvantage
is not enough and thus that a GBL § 349 claim requires more than a
trademark infringement claim does.  (*See* Def. Br. 25).

The rule is that "to bring a claim of deceptive business practices under
[GBL §] 349, a plaintiff must allege harm by the defendants that poses a
significant risk of harm to the public health or interest, and consumer
confusion is insufficient to meet that requirement."  *Mayes* v. *Summit Ent.
Corp.*, 287 F. Supp. 3d 200, 206 (E.D.N.Y. 2018); *see also DePinto* v. *Ashley
Scott*, Inc., 635 N.Y.S.2d 215, 217 (1995) (affirming dismissal of claims under
GBL § 349 "involving the alleged use of confusing labels in the manufacture of
women's coats which does not pose a significant risk of harm to the public
health or interest").  Flycatcher tacitly concedes that it does not meet this
heightened standard (Pl. Opp. 18-19), which is why it protests that *DePinto*'s
"significant risk of harm to the public health or interest" standard conflicts
with — and loses out to — *Himmelstein*'s "appli[cable] to virtually all economic
activity" and "secur[ing] 'an honest marketplace'" standard.  *Himmelstein*, 37
N.Y.3d 176 (first quoting *Karlin* v. *IVF Am.*, 93 N.Y.2d 282, 290 (1999); then
quoting *Goshen* v. *Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002)).  But
the conflict Flycatcher identifies is more apparent than real.

To be sure, *Himmelstein* clarifies that GBL § 349's definition of "consumer" is broad, *Himmelstein*, 37 N.Y.3d at 177-78, and, as mentioned, it also explains that "an act or practice is consumer-oriented when it has 'a broader impact on consumers at large,'" *id.* at 177 (quoting *Oswego*, 85 N.Y.2d at 25). That is entirely harmonious with *DePinto*'s focus on harm to the public health or interest, which is a version of broad impact on consumers at large. Flycatcher tries one last-gasp effort, arguing that *DePinto*'s standard cannot be reconciled with *Himmelstein*'s holding that "the consumer oriented element is meant to exclude conduct limited to private transactions, such as a contract dispute." (Pl. Opp. 18 (internal quotation marks omitted)). But the opposite is true; *Himmelstein*'s public-facing holding is consonant with *DePinto*'s. *See also Nat'l Distillers Prods. Co., LLC* v. *Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486-87 (S.D.N.Y. 2002) ("Finally, National asserts a cause of action based on §§ 349 and 350 of the New York General Business Law. It is well settled, however, that trademark or trade dress infringement claims are not cognizable under these statutes unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." (collecting cases)).

Accordingly, because the TAC does not allege harms that pose a significant risk of harm to the public health or interest, the Court finds that Count IV fails to state a claim for relief. Additionally, Count IV fails to state a claim as to Valley Bodega for the separate reason that the claim applies only to

the Merchant Defendants' conduct and not to the Supplier Defendants' private

transactions.  (*See* VB Reply 4).

### 6. Count V (New York Penal Law § 165.66) Fails to State a Claim Because There Is No Private Right of Action

Count V alleges that Defendants violated New York Penal Law § 165.66,

which makes fostering the sale of stolen goods a class A misdemeanor.  (TAC

¶¶ 80-84).  But Flycatcher reads into Section 165.66 a private right of action

where none exists.

Under New York law, three elements must be satisfied to find that there

is an implied private right of action in a particular statute: "[i] whether the

plaintiff is one of the class for whose particular benefit the statute was enacted;

[ii] whether recognition of a private right of action would promote the legislative

purpose; and [iii] whether creation of such a right would be consistent with the

legislative scheme[.]"  *Ortiz* v. *Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021)

(quoting *Sheehy* v. *Big Flats Cmty. Day*, 73 N.Y.2d 629, 633 (1989)).  New York

courts have consistently held that criminal statutes do not create private rights

of action unless the Legislature explicitly states otherwise, and there is no such

indication here.  *See Marvin* v. *Allen,* No. 23 Civ. 5947 (KMK), 2024 WL

4290722, at *6 (S.D.N.Y. Sept. 24, 2024) (collecting cases holding that New

York state criminal laws do not generally create a private right of action).

Flycatcher's position conflicts with the "general rule applied by federal

courts" that "a bare criminal statute, which contains absolutely no indication

that a civil remedy is available, does not provide a basis from which to infer a

private cause of action."  *Michelson* v. *Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 669 F. Supp. 1244, 1254 (S.D.N.Y. 1987) (internal quotation marks omitted) (quoting *Creech* v. *Fed. Land Bank of Wichita*, 647 F. Supp. 1097, 1099 (D. Colo. 1986)); *see also Casey Sys., Inc.* v. *Firecom, Inc.*, No. 94 Civ. 9327 (KTD), 1995 WL 704964, at *3 (S.D.N.Y. Nov. 29, 1995). Moreover, the New York Court of Appeals has stated that "where a statutory scheme contains private or public enforcement mechanisms, this demonstrates that the legislature considered and decided what avenues of relief were appropriate." *Ortiz*, 37 N.Y.3d at 362; *see also Metz* v. *State*, 20 N.Y.3d 175, 180-81 (2012) (finding that law specifying criminal penalties and fines on vessel owners demonstrated an intent not to impose private right of action).

The Court declines to break new ground and find a private right of action under Section 165.66. (*See* Top Reply 15 (arguing that "no New York state court has ever recognized a civil claim implied in § 165.66")). *See Durr Mech. Constr., Inc.* v. *PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 414 (D.N.J. 2021) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." (quoting *City of Philadelphia* v. *Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002)). It therefore finds that Count V does not state a claim upon which relief can be granted.

### 7. Count VII (Conversion) and Count VIII (Replevin) State Claims as to Top But Not as to Valley Bodega

Count VII alleges common-law conversion (TAC ¶¶ 88-94), and Count VIII seeks replevin (*id.* ¶¶ 95-97). Under New York law, "[c]onversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior

possessory right of another in the property." *Meese* v. *Miller*, 436 N.Y.S.2d 496, 500 (4th Dep't 1981).  To make out a conversion claim, Flycatcher must allege that "a demand for the return of property was made and that a refusal to comply with this demand followed." *Schloss Case* v. *Danka Bus. Sys. PLC,* No. 99 Civ. 817 (DC), 2000 WL 282791, *7 (S.D.N.Y. March 16, 2000) (citing *Tompkins* v. *Fonda Glove Lining Co.*, 188 N.Y. 261, 265 (1907)), *aff'd*, 234 F.3d 1263 (2d Cir. 2000) (summary order).  Replevin, like conversion, requires a demand for the return of the property followed by a refusal to do so.  "To state a claim for replevin, a plaintiff must demand return of the property in question, and the cause of action then accrues when the defendant refuses to return it." *Cohen* v. *Dunne*, No. 15 Civ. 3155 (DAB), 2017 WL 4516820, at *6 (S.D.N.Y. Sept. 27, 2017).  The Moving Defendants assert that the TAC pleads neither demand nor refusal.  They are mistaken.

The TAC alleges that Flycatcher sent cease-and-desist letters to each Merchant Defendant demanding that they cease selling the stolen goods and return them.  (TAC ¶¶ 52-54, 103).  This is a straightforward satisfaction of the demand requirement.  Top argues only that the demand letter was "an over-the-top-hyperaggressive-communique," which somehow makes it not a demand.  (Def. Br. 30).  Not so.

Plaintiffs' satisfaction of the refusal element is more nuanced.  The Moving Defendants reason that "[n]o allegation is made that [they] expressly refused to return [Flycatcher's] property or when such a refusal was made." (Def. Br. 31).  They thus assume that Flycatcher will argue their silence

constituted refusal and argue that "[s]ilence is not tantamount to refusal." (*Id.* (internal quotation marks omitted)). But the TAC alleges more than the Merchant Defendants' silence. It alleges that after Flycatcher advised them by cease-and-desist letters that the goods at issue were stolen and their sales were illegal, the Merchant Defendants kept selling anyway. (TAC ¶¶ 52-54 ("The Merchant Defendants refused to cease offering the stolen goods for sale, refused to return the stolen products and, upon information and belief, made sales of the stolen goods after receiving cease and desist letters.")). The factual allegation that the Merchant Defendants continued to sell after receiving the letters is sufficient to establish refusal, and the Court thus finds that Count VII and Count VIII state claims as to Top.

For its part, though, Valley Bodega argues that Count VII and Count VIII do not apply to it because the TAC alleges only that Flycatcher sent cease-and-desist letters to the Merchant Defendants. (*See* VB Reply 5). That is correct, and the Court will dismiss those claims as to Valley Bodega.

### 8.    Count IX (California Penal Code § 496(a), (c)) States a Claim as to Top But Not as to Valley Bodega

Count IX alleges that Defendants bought, received, and sold stolen goods in violation of California Penal Code § 496(a). (TAC ¶¶ 98-105).[4] To state a claim under Section 496, a claimant must plead three elements: "(i) property was stolen or obtained in a manner constituting theft; (ii) the defendant knew the property was so stolen or obtained; and (iii) the defendant received or had

---

[4]    Subsection (c) of Section 496 specifies a private right of action for "[a]ny person who has been injured by a violation of subdivision (a) or (b)." Cal. Penal Code § 496(c).

possession of the stolen property." *Motivo Engr., LLC* v. *Black Gold Farms*, No. 22 Civ. 1447 (CAS), 2023 WL 3150099, at *8 (C.D. Cal. Mar. 28, 2023) (quoting *Switzer* v. *Wood*, 247 Cal. Rptr. 3d 114, 121 (Cal. Ct. App. 2019)); *see also* Cal. Penal Code § 496(a) (requiring defendant to "know[ ] the property [is] so stolen or obtained"). The Moving Defendants argue that they did not know the property was stolen. (Def. Br. 32-33). Flycatcher focuses on the Merchant Defendants (apparently giving up on the Supplier Defendants) and argues that the cease-and-desist letters provided the Merchant Defendants (including Top) the requisite knowledge that the goods were stolen, such that the Merchant Defendants violated Section 496 by continuing to sell the goods thereafter. (Pl. Opp. 25; *see also* TAC ¶¶ 52-54, 103). The Court agrees with Flycatcher.

In response to Flycatcher's argument, Top argues that knowledge is "measured at the time defendant receives or obtains the property." (Def. Br. 33). But Top strains to find support for its position. Top quotes one California state court's description of a jury's special verdict form as finding that "[defendants] knew the property was obtained by theft *at the time* they received, withheld, concealed, or aided in concealing or withholding the property from [plaintiff]." *Switzer*, 247 Cal. Rptr. 3d at 122 (emphasis added). Top also quotes another California court's description of a complaint as alleging that "[defendant] had actual knowledge that the pallets were stolen or obtained by theft *at the time* [defendant] obtained them." *CHEP USA* v. *Paco*, No. 23 Civ. 4535 (AMO) (TSH), 2024 WL 2875101, at *7 (N.D. Cal. May 3, 2024) (emphasis added), *report and recommendation adopted as modified*, No. 23 Civ.

31

4535 (AMO), 2024 WL 3091394 (N.D. Cal. June 17, 2024).  However, neither court suggested that knowledge at the time of acquisition (as distinguished from the time of sale) was necessary.

To the contrary, other California cases make clear that knowledge can arise after the receipt of stolen property.  For example, in *LA Tech & Consulting, LLC* v. *Am. Express Co.,* No. 22-56221, 2023 WL 8166780 (9th Cir. Nov. 24, 2023) (memorandum opinion), the Ninth Circuit held that a complaint alleging that a defendant had withheld funds *after* being told they were stolen plausibly pleaded a knowing violation of Section 496.  *Id.* at *2.  More to the present point, in *Williams* v. *Superior Court*, 146 Cal. Rptr. 311 (Cal. Ct. App. 1978), the court explained that "[o]ne reason for including both receiving and concealing stolen property within the proscription of Penal Code section 496 is that it enables prosecution of one who innocently acquires property, but *later* learns that it was stolen and thereafter conceals it." *Id.* at 319 (emphasis added) (citing *People* v. *Johnson*, 35 Cal. Rptr. 883 (Cal. Ct. App. 1963)).  And in *Naftzger* v. *Am. Numismatic Soc'y*, 49 Cal. Rptr. 2d 784 (Cal. Ct. App. 1996), a man purchased coins stolen from a museum without knowing they were stolen. *Id.* at 426-28.  The museum later sent the man a letter advising him of its claim to the stolen coins and demanding their return.  *Id.* at 426.  The court held that the museum's claim against the man under Section 496 "did not accrue until it discovered he was the one who had purchased the stolen coins." *Id.* at 432.  Significant here, it reasoned that "an innocent purchaser cannot

withhold or sell the stolen property *after* learning of the theft without risk of violating Penal Code section 496." *Id.* at 432-33 (emphasis added).

Accordingly, the Court finds that the requisite knowledge for purposes of Section 496 can arise after the receipt of stolen property, and that Count IX therefore states a claim as to Top. Count IX does not, however, state a claim as to Valley Bodega because it does not allege that the Supplier Defendants received cease-and-desist letters or otherwise had knowledge.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Moving Defendants' motions to dismiss. The Court dismisses with prejudice: Count IV (as to both Top and Valley Bodega), Count V (as to both Top and Valley Bodega), Count VI (only as to Valley Bodega), Count VII (only as to Valley Bodega), Count VIII (only as to Valley Bodega), and Count IX (only as to Valley Bodega). The following counts state claims for relief: Count I, Count II, Count III, Count VI (as to Top alone), Count VII (as to Top alone), Count VIII (as to Top alone), and Count IX (as to Top alone).

The Clerk of Court is directed to terminate the pending motion at docket entry 150. The parties are ORDERED to submit a proposed Case Management Plan for the Court's consideration within 30 days of the issuance of this Order.

SO ORDERED.

Dated:     February 5, 2026
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge