**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FLYCATHER CORP. LTD. and<br>FLYCATCHER TOYS INC.,<br><br>     Plaintiffs,<br><br>     v.<br><br>AFFABLE AVENUE LLC, *et. al.*,<br><br>     Defendants. | Case No. 24-cv-9429 (KPF)<br><br>Hon. Judge Katherine Failla |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT VALLEY BODEGA WHOLESALE INC.'S MOTION TO RECONSIDER**
**THE COURT'S OPINION AND ORDER REGARDING COUNTS I-III**

Defendant Valley Bodega ("Valley Bodega"), pursuant to Fed. R. Civ. P. 59(e), requests

that this Court reconsider and alter the February 5, 2026 Opinion and Order (Dkt. No. 226) denying

the dismissal of Counts I-III against Valley Bodega.  In support thereof, Valley Bodega provides

as follows:

**I.     THE COURT SHOULD DISMISS WITH PREJUDICE COUNTS I-II AGAINST
VALLEY BODEGA BECAUSE PLAINTIFFS' WARRANTY DID NOT APPLY TO
THE ALLEGEDLY STOLEN GOODS, NO WARRANTY WAS INCLUDED ON
WALMART.COM, AND THE RETAILERS WHO PURCHASED THE GOODS
FROM VALLEY BODEGA WOULD NOT BE CONCERNED WITH OR USE THE
WARRANTY.**

In the Third Amended Complaint ("TAC"), Plaintiffs allege that the allegedly stolen goods

("the Goods") that Valley Bodega sold to other retailers were not "genuine goods" because they

were an "inferior and materially different product" based solely on the fact that the Goods lacked

a "Flycatcher warranty."  TAC, at 1.  However, Flycatcher's "warranty" by its express terms <u>does</u>

<u>not apply</u> to the Goods, which Plaintiffs sell on www.walmart.com; the listing of the Goods on

www.walmart.com did not include, reference, or provide any link to a warranty (and so consumers

who purchase the Goods on www.walmart.com have no knowledge of a warranty); Plaintiffs'

alleged warranty was altered just before Plaintiffs filed this lawsuit to include language about

"stolen goods"; and Valley Bodega sold the Goods to *retailers*—parties who are not concerned

with and do use product warranties.

**A.      Valley Bodega Sold Genuine Goods Because Plaintiffs' Alleged Warranty, By Its Own Terms, Does Not Apply To Goods Sold On Walmart.Com, The Platform On Which Plaintiffs Sell the Goods.**

The TAC clearly alleges that Plaintiffs agreed to sell the Goods on www.walmart.com, and

that Plaintiffs were attempting to transport the Goods to a Walmart Fulfillment Distribution Center

in Georgia so the Goods could be sold on www.walmart.com.  *See* TAC, at ¶¶ 48-49.

Importantly, however, the "warranty" policy cited in the TAC, by its express terms, does

not apply to products sold on www.walmart.com:

> ## Refund policy
>
> This Return and Refund Policy ("**Policy**") of Flycatcher Corp Ltd. ("**Flycatcher**", "**we**",
> "**our**" or "**us**") applies only to orders placed directly via https://store.flycatcher.toys/
> or through one of our authorized planforms and governs the refunds for canceled
> transactions and returned products.
> Flycatcher only accepts returns of products purchased via
> https://store.flycatcher.toys/ and shall not accept, nor give any refunds in connection
> with, any attempted returns of products purchased from other retailers.
> You will be required to provide an order number.  We will not honor any warranty for
> goods which are not acquired through legitimate sources, such as stolen goods.

*See* **Exhibit 1**. The "warranty" policy clearly and expressly states that it "applies only to orders

placed directly via https://store.flycatcher.toys/'" and makes it clear that "Flycatcher . . . shall not

accept, nor give any refunds in connection with, any attempted returns of products purchased from

**other retailers**") (emphasis added).  Therefore, whether the Goods went on to the Walmart

Fulfillment Center and were sold on www.walmart.com, or Valley Bodega sold the Goods, the

Goods would not have a manufacturer's warranty.  In its Sur-Reply, Plaintiffs try to gloss over the

clear and express terms of the warranty policy by stating that "a customer purchasing on that website [Walmart.com] purchases from Flycatcher, not Walmart." *See* Dkt. No. 190, at 3. However, the clear and express terms of the warrant policy "applies only to orders placed directly via https://store.flycatcher.toys/." Walmart.com is not https://store.flycatcher.toys/".

Accordingly, the Goods that Valley Bodega sold to other retailers were genuine goods, and so Counts I-II of the TAC fail as a matter of law. The Court, therefore, should dismiss with prejudice Counts I-II of the TAC.

**B.      Valley Bodega Sold Genuine Goods Because Consumers Buying the Goods On Walmart.com Have No Knowledge Of Any Warranty When They Purchase The Goods.**

Even if Plaintiffs' "warranty" policy actually applied to the Goods (it clearly does not), Plaintiffs fail to allege (let alone plausibly allege) that the product listing for the Goods on www.walmart.com includes, references, provides any link to, or otherwise provides any notice of a "warranty. Indeed, Plaintiffs only allege in the TAC that its listing on *Amazon.com* contains a link to the "warranty." *See* TAC, at ¶ 47.

Plaintiffs, consequently, cannot claim that the Goods sold by Valley Bodega were not genuine because they lacked a warranty if the consumers who purchase the Goods purchase them with no knowledge of a warranty. *See Janssen Scis. Ireland Unlimited Co. v. TLC Xpress Pharmacy Inc.*, No. 22-CV-1983 (BMC), 2025 WL 974299, at *4 (E.D.N.Y. Apr. 1, 2025) (finding the lack of "pedigree information" was not a "material difference" because the consumers "do not even receive pedigree information").

Accordingly, the Goods that Valley Bodega sold to other retailers were genuine goods, and so Counts I-II of the TAC fail as a matter of law. The Court, therefore, should dismiss with prejudice Counts I-II of the TAC.

**C.      Valley Bodega Sold Genuine Goods Because Plaintiffs' Revision Of Its Warranty Just Prior To Filing This Lawsuit Should Not Magically Change The Question Of Whether The Goods Are Genuine.**

In the Opinion and Order, the Court states that the lack of warranty for the Goods sold by the moving parties is not the product of Plaintiffs' own unilateral conduct because the goods were stolen and Plaintiffs "do[] not honor warranties of stolen goods."  However, Plaintiffs' original warranty did not contain the "will not honor warranties of stolen good" language; instead, Plaintiffs added this language right before the filing of the lawsuit (likely based on their current litigation attorney's advice) and *after* it discovered the online sales of the stolen goods:

**Plaintiffs' Website in July of 2024:**

**Refund policy**

This Return and Refund Policy ("**Policy**") of Flycatcher Corp Ltd. ("**Flycatcher**", "**we**", "**our**" or "**us**") applies only to orders placed directly via https://store.flycatcher.toys/ and governs the refunds for canceled transactions and returned products. Flycatcher only accepts returns of products purchased via https://store.flycatcher.toys/ and shall not accept, nor give any refunds in connection with, any attempted returns of products purchased from other retailers.

**Plaintiffs' Website in December of 2024:**

**Refund policy**

This Return and Refund Policy ("**Policy**") of Flycatcher Corp Ltd. ("**Flycatcher**", "**we**", "**our**" or "**us**") applies only to orders placed directly via https://store.flycatcher.toys/ or through one of our authorized planforms and governs the refunds for canceled transactions and returned products. Flycatcher only accepts returns of products purchased via https://store.flycatcher.toys/ and shall not accept, nor give any refunds in connection with, any attempted returns of products purchased from other retailers. You will be required to provide an order number.  We will not honor any warranty for goods which are not acquired through legitimate sources, such as stolen goods.

*See* **Exhibits 1-2** (captures of Plaintiffs' website from the Wayback Machine).[1]  Indeed, Plaintiff confirms this revision to the warranty policy occurred in November of 2024.  Dkt. No. 190, at 3.

The Court should not endorse what is clearly a *litigation* tactic.  Can every trademark holder who does not like a third party selling its goods (including after the first sale) manufacture a

---

[1] *See Lee v. Springer Nature Am., Inc.,* 769 F. Supp. 3d 234, 249 (S.D.N.Y. 2025) *(citing Thorne v. Square, Inc.*, 2022 WL 542383, at *1 (E.D.N.Y. Feb. 23, 2022) (collecting cases where courts take judicial notice of pages from the Wayback Machine)).

trademark infringement claim by simply creating and posting online a warranty right before filing a lawsuit, even if the trademark owner did not previously even have a warranty for its goods?  The answer must be no.

As a corollary, the Second Circuit in *Warner–Lambert Co. v. Northside Dev. Corp.* stated that for the plaintiff to establish the distribution of a product does not meet the trademark holder's quality control standards, the plaintiff must allege (among other things) that is has "established legitimate, substantial, and **nonpretextual** quality control procedures."  86 F.3d 3, 6 (2d Cir.1996) (emphasis added).  Here, therefore, the Court should not permit Plaintiffs to argue that the Goods were not genuine because they lack a warranty when that warranty is "nonpretextual." *Id.*

Accordingly, the Goods that Valley Bodega sold to other retailers were genuine goods, and so Counts I-II of the TAC fail as a matter of law. The Court, therefore, should dismiss with prejudice Counts I-II of the TAC.

> **D.** **Valley Bodega Sold Genuine Goods Because Defendant Valley Bodega Is A Wholesaler And Does Not Sell Directly To Customers That Would Use the Warranty.**

In the TAC, Plaintiffs allege that the Goods that Valley Bodega sold to other retailers were not "genuine goods" because they were an "inferior and materially different product" solely based on the fact that the Goods lacked a "Flycatcher warranty."  TAC, at 1.  However, in addition to the fact that Plaintiffs' warranty did not apply to the Goods, as well as the fact that Plaintiffs' customers who would have purchased the Goods on www.walmart.com would have had no knowledge of Plaintiffs' warranty, such a warranty is irrelevant to the third-party retailers to which Valley Bodega sold the Goods.  Retailers do not use product warranties, and the TAC does not contain any allegations that Valley Bodega's retailer customers would ever use or care about a warranty.

Accordingly, the Goods that Valley Bodega sold to other retailers were genuine goods, and so Counts I-II of the TAC fail as a matter of law. The Court, therefore, should dismiss with prejudice Counts I-II of the TAC.

## II.    PLAINTIFFS DID NOT NEED TO AUTHORIZE THE SALE OF THE GOODS FOR THE GOODS TO BE GENUINE UNDER SECOND CIRCUIT CASE LAW AS LONG AS PLAINTIFFS HAD THE ABILITY TO INSPECT AND CONTROL THE QUALITY OF THOSE GOODS.

In *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, the Second Circuit *clarified* its holding in *El Greco* as standing for the proposition that a defendant's "interference" with "the plaintiff's quality control measures" is what renders an unauthorized production not genuine, not the unauthorized production alone.  879 F.2d 1005, 1023 (2d Cir.1989) (distinguishing *El Greco* and another case and stating that the two cases do not contravene the conclusion that "the unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation"). In other words, "[t]he mere fact of unauthorized production alone is insufficient to satisfy the consumer confusion element" of a Lanham Act claim.  *TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 492 (S.D.N.Y. 2012).  Therefore, goods can be "genuine" in some circumstances even if there was no authorized "first sale" of the goods. *See Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 77 (2d Cir. 1994) (finding no trademark infringement where the defendant sold "Starter Kits" that it sourced from one of the plaintiff's distributors, a distributor who obtained the Starter Kits from the plaintiff *for free* or, in other words, with *no sale*); *see also H.L. Hayden,* 879 F.2d at 1023 (suggesting that, had the trademark holder inspected and ensured the quality of the manufactured goods in *El Greco*, there would be no trademark infringement despite the fact there was no "first sale" of the goods); *Tentandtable.com, LLC v. Aljibouri*, No. 22-CV-78-LJV, 2025 WL 959656, at *7 (dismissing the plaintiffs' trademark infringement and false designation

of origin claims based on the defendant's sale of goods stolen from the plaintiffs' warehouse even though the plaintiffs did not authorize the goods for sale).

Here, Plaintiffs had the opportunity to inspect the Goods and control the quality of those goods.  Indeed, when Plaintiffs delivered the Goods to the trucking company to be transported to the Walmart Fulfillment Center, Plaintiffs release the Goods into the stream of commerce satisfied of their quality.  Therefore, there was no need for the Plaintiffs to authorize the sale of the Goods, and the fact that Plaintiffs did not authorize the *specific* sale of each of the Goods "does not, without more, constitute a Lanham Act violation." *H.L. Hayden*, 879 F.2d at 1023; *Polymer Tech.*, 37 F.3d at 77; *TechnoMarine*, 905 F. Supp. 2d 4 at 492; *Tentandtable.com,* , No. 22-CV-78-LJV, 2025 WL 959656, at *7; *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 702 (S.D.N.Y. 2018) (dismissing federal trademark infringement counterclaim even though the counterclaim defendant sold products that the counterclaim plaintiff did not authorize and there was no prior or "first" sale of the products).

Furthermore, the facts in this case are readily distinguishable from the facts in cases like *El Greco Leather Products Co. vs. Shoe World, Inc*. 806 F.2d 392 (2d Cir. 1986) and *Ryan v. Valpone Stamp Co*.  107 F. Supp. 2d 369 (2000).

*In El Greco*, a manufacturer manufactured the contested goods without the trademark holder's authorization and then sold the goods even though the trademark owner did not authorize the goods to be sold.  806 F.2d at 394.  However, as the Second Circuit in *H.L. Hayden* later pointed out, the concern in this case was the defendant's "interference" with the trademark holder's "quality control measures." *H.L. Hayden*, 879 F.2d at 1023.  In contrast, the Goods in this case were manufactured *with Plaintiffs' authorization* and Valley Bodega did not "interfere" with

7

Plaintiffs' quality control measures, which were complete when Plaintiffs delivered the Goods to the trucking company. *See* TAC, at ¶¶ 48-49.

Likewise, in *Ryan*, after the trademark owner terminated its trademark license with the defendant, the defendant continued to manufacture the trademarked products without the trademark owner's authorization or ability to inspect or control the quality of the products. 107 F. Supp. 2d 369, 374-75 (2000).  Although the *Ryan* court did not specifically hold that the plaintiff stated a viable Lanham Act claim based on this "inspection" and "quality control" reasoning,[2] such facts nonetheless distinguish *Ryan* from this case, where  the Goods were manufactured *with Plaintiffs' authorization* and Plaintiffs were able to inspect and control the quality control of the Goods before delivering the Goods into the stream of commerce.

Accordingly, the Goods that Valley Bodega sold to other retailers were genuine goods, and so Counts I-II of the TAC fail as a matter of law. The Court, therefore, should dismiss with prejudice Counts I-II of the TAC.

**III.    EVEN IF PLAINTIFFS' AUTHORIZATION OF THE SALE OF THE GOODS WAS REQUIRED FOR THE GOODS TO BE GENUINE, PLAINTIFFS AUTHORIZED THE SALE OF THE GOODS WHEN IT DELIVERED THE GOODS TO THE TRUCKING COMPANY TO BE TRANSPORTED TO A WALMART FULLFILLMENT CENTER TO BE SOLD AND DELIVERED BY WALMART.**

Plaintiffs explicitly state in the TAC that it delivered the Goods to a trucking company, that the trucking company was supposed to transport the Goods to a Walmart Fulfillment Center, and

---

[2] *Ryan* mischaracterizes the facts in *Polymer Tech. Ryan* states that "there was no dispute that the initial sale of the goods was authorized." *Ryan*, 107 F. Supp. 2d at 383.  However, of the two contested products, the plaintiff gave away one of them for free *without any sale*. *See Polymer Tech.*, 37 F.3d at 77 ("The 'Starter Kits' contain sample-sized containers of the solutions and are given to the distributors free of charge."). Additionally, *Ryan* misleadingly limits the reasoning of the Second Circuit's opinion in *H.L. Hayden*, which explicitly clarifies that its ruling in *El Greco* was based on the fact that the trademark holder did not have the ability to inspect and ensure the quality of the products sold after the trademark holder cancelled a manufacturing order.  879 F.2d at 1023 (citing *El Greco*, 806 F.2d at 395–96).  Notably, there was no "first sale" in *El Greco*, and yet the Second Circuit in *H.L. Hayden* implies that had the trademark holder inspected and ensured the quality of the manufactured goods, there would be no trademark infringement. *Id*.

that Walmart was to then ship the Goods to consumers who purchased the Goods on www.walmart.com. *See* TAC, at ¶¶ 48-49. Therefore, by delivering the Goods to the trucking company, Plaintiffs sent the Goods into the stream of commerce, wherein consumers could purchase the Goods on www.walmart.com, and Walmart would package and ship the goods to consumers, without any further involvement from Plaintiff.

Finding The Goods sold by Valley Bodega to be genuine goods, therefore, satisfies the reasoning and policy goals articulated by the Second Circuit and the district courts in these cases: (1) Plaintiffs manufactured the Goods according to Plaintiff' specifications, (2) the Goods met Plaintiffs' quality control standards, (3) Plaintiffs had the opportunity to inspect the Goods, (4) Plaintiffs released the Goods into the stream of commerce, and (5) Plaintiffs authorized the sale of the Goods to any customer in the U.S. who purchased the Goods online.

Having established above that Valley Bodega sold genuine goods, Plaintiffs' trademark claim and analogous unfair competition claim in Counts I-II of the TAC fail as a matter of law. Therefore, the Court should dismiss with prejudice Counts I-II of the TAC.

IV.    **THE COURT SHOULD DISMISS WITH PREJUDICE COUNT III AGAINST VALLEY BODEGA BECAUSE PLAINTIFFS DO NOT ALLEGE THIS CLAIM AGAINST VALLEY BODEGA AND THE COURT'S REASONING AND CONCLUSIONS OTHERWISE SUPPORT THE DISMISSAL OF COUNT IIIFpla.**

The Court's Order and Opinion, perhaps inadvertently, does not grant Valley Bodega's motion to dismiss Count III. *See* Dkt. No. 226, at 33. However, Plaintiffs only allege Count III against the "Merchant Defendants" and not against Valley Bodega, one of the "Supplier Defendants." *See* TAC, at ¶ 75.

Further, the Court's discussion and reasoning in the Opinion and Order expressly supports the dismissal of Counts III against Valley Bodega. *See* Dkt. No. 226 ("It is worth noting, though, that this argument only applies to the Merchant Defendants, so on this theory of Count III would

9

also fail to state a claim as to the Supplier Defendants like Valley Bodega, who did not sell to consumers").

Accordingly, because the TAC does not allege a false advertising claim against Valley Bodega, and because even if it did, the claim would fail, the Court should dismiss with prejudice Count III against Valley Bodega.

## **CONCLUSION**

The Court should dismiss with prejudice Counts I-II against valley bodega because plaintiffs' warranty did not apply to the allegedly stolen goods, no warranty was included on walmart.com, and the retailers who purchased the goods from valley bodega would not be concerned with or use the warranty.  Additionally, the Court should dismiss with prejudice Count III against Valley Bodega because Plaintiffs do not allege this claim against Valley Bodega and because the Court's reasoning and conclusions otherwise support the dismissal of Count IIII.

Accordingly, the Court should reconsider and alter the February 5, 2026 Opinion and Order (Dkt. No. 226) and grant the dismissal of Counts I-III against Valley Bodega.

Dated: February 18, 2026

Sincerely,

*/s/ Eryn Y. Truong*
Eryn Y. Truong
Eryn.truong@lozaip.com
Matthew R. Lighthouse
Matt.lighthouse@lozaip.com
305 N. Second Avenue, #127
Upland, CA 91786

*Attorneys for Defendant*
*Valley Bodega Wholesale Inc.*

**CERTIFICATE OF COMPLIANCE**

This Memorandum of Law complies with the word limitations set forth in 4.C. of this Cout's Individual Rules of Practice in Civil Cases.  Excluding the parts of this Memorandum excluded by the Rule, this Memorandum contains 3,044 words.

This 18th day of February, 2026                    */s/ Eryn Y. Truong*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this day electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This 18th day of February, 2026                                      */s/ Eryn Y. Truong*