**2024 WL 5507535 (N.Y.Sup.) (Trial Order)**
Supreme Court of New York.
Bronx County

# YEMENI-AMERICAN ASSOCIATION, CORP., Plaintiff,
v.
## Ali ALSAEDE and John Doe, Defendants.

No. 809649/2023.
January 25, 2024.

**Decision & Order**

Hon. Veronica G. Hummel, A.S.C.J.

**\*1 Mot. Seq. Nos. 2 & 3**

To commence the statutory time for appeals as of right (CPLR 5513(a)), you are advised to serve a copy of this order, with notice of entry, upon all parties.

In accordance with CPLR 2219(a), the decision herein is made upon consideration of all papers filed by the parties in NYSCEF in connection with: (1) plaintiff YEMENI-AMERICAN ASSOCIATION, CORP.'s (the "YAA") motion, brought by Order to Show Cause ("OSC") (Seq. No. 2), seeking entry of a preliminary injunction enjoining defendants ALI ALSAEDE ("Alsaede") and JOHN DOE from representing themselves to be the YAA by use of the its name, service mark, or logo and from transacting any business, including, but not limited to, advertising, soliciting membership, conducting elections, or publishing election results, in the YAA's name; and (2) Alsaede's motion, brought by OSC (Seq. No. 3), seeking entry of a preliminary injunction (a) staying Fateh Saleh ("Saleh") and all "prior members of the Board of Directors" of the YAA from holding themselves out as board members of the YAA and from conducting business on behalf of the YAA; (b) staying the YAA from holding elections for the Board of Directors or President, because an election occurred and Alsaede was elected President; (c) declaring Alsaede to be President of the YAA; or, alternatively, (d) ordering new elections be held under court supervision; and (e) referring the YAA to the Attorney General's Charities Bureau to investigate the YAA's activities over the past decade.

Oral argument on the motions was held in person before the Court on December 6, 2023. For the reasons discussed below, the YAA's motion is **GRANTED,** and Alsaede's motion is **DENIED.**

### I. Procedural Background

The YAA filed its Summons and Verified Complaint in this action on June 22, 2023. (NYSCEF Doc. 1) The Verified Complaint alleges five causes of action against defendants. The first three causes of action, pursuant to New York General Business Law ("GBL") §§ 360-O, 360-L, and 349(a), respectively, sound in trademark infringement and unfair competition. The fourth cause of action is for *prima facie* tort, while the fifth is for criminal impersonation pursuant to New York Penal Law ("Penal Law") § 190.25.

On July 3, 2023, the YAA filed its first OSC (Mot. Seq. No. 1) seeking the same relief sought in its instant OSC, including a temporary restraining order ("TRO") effectively enjoining Alsaede from representing himself to be the YAA or an officer thereof and from holding elections on the YAA's behalf. (NYSCEF Doc. 11) The undersigned was unavailable when the

proposed OSC came before the court for signature, and the Honorable Kim Wilson, J.S.C., while serving in the Ex Parte and Urgent Motion Part, signed the proposed OSC granting the YAA its requested TRO. (*Id.* Doc. 17)

The undersigned subsequently held oral argument on the OSC virtually via Microsoft Teams on July 10, 2023. During the oral argument, counsel for the YAA conceded that the Summons and Verified Complaint had yet to be served on defendants. The Court determined, therefore, that it was without jurisdiction over defendants and, accordingly, issued an order vacating the TRO and denying the motion. (*Id.* Doc. 28) Because counsel for Alsaede represented on the record that he was authorized to and would accept service of the Summons and Verified Complaint, the order also deemed the Summons and Verified Complaint served on Alsaede as of July 10, 2023.[1]

**\*2** The YAA acted quickly, filing its instant OSC (Mot. Seq. No. 2) shortly after argument concluded on July 10, 2023. (NYSCEF Doc. 22) The Court immediately scheduled oral argument on the YAA's TRO request for July 14, 2023.

On July 13, 2023, Alsaede filed his own proposed OSC (Mot. Seq. No. 3). (NYSCEF Doc. 29) That proposed OSC also included a request for a TRO enjoining the YAA from holding elections and enjoining Saleh and all "prior members of the Board of Directors" of the YAA from holding themselves out as board members and from conducting any and all business on behalf of the YAA.

On July 14, 2023, the Court held oral argument on the YAA's *and* Alsaede's competing TRO requests, with counsel for all parties in attendance. At the conclusion of the argument, it was agreed that the parties would, before the Court acted, attempt to resolve the dispute between themselves. To facilitate that potential resolution, the Court continued the oral argument to July 18, 2023.

Before the next argument occurred, on July 18, 2023, Alsaede filed his Answer, Affirmative Defenses, and Counterclaim. (*Id.* Doc. 45) The Counterclaim alleges, among other things, that Saleh cannot be "President" of the YAA because he was originally elected on June 5, 2010, and the YAA's by-laws provide that a board member cannot serve more than three two-year terms (*i.e.,* six total years); that Saleh and other members of the Board of Directors are misappropriating YAA funds to make personal investments in real estate and Bitcoin and for gambling; and that Alsaede himself called an election on June 25, 2023, and was duly elected "President" of the YAA pursuant to its by-laws. The Counterclaim seeks the same relief sought now in Alsaede's instant OSC. The Court notes that Alsaede does not cite or refer to any statutory or other legal authority for any of the relief requested in the Counterclaim.

On July 18, 2023, as previously scheduled, the Court held continued oral argument on the YAA's and Alsaede's competing TRO requests. The parties reported that no resolution to the dispute had been reached in the interim. After hearing the parties' arguments on their respective positions, the Court granted the YAA's requested TRO, denied Alsaede's requested TRO, and set in-person oral argument on the competing motions for preliminary injunctions for September 20, 2023. (*Id.* Docs. 61 & 62)

On August 3, 2023, Matthew Blum, Esq., of the law firm Rosenberg & Estis, P.C., filed a consent to change attorney reflecting his substitution for Alsaede's prior attorney, Joseph Altman, Esq., of the Law Offices of Joseph A. Altman P.C. (*Id.* Doc. 65) Simultaneously therewith, Mr. Blum filed a letter indicating that he intended to file on Alsaede's behalf another proposed OSC with a TRO request again seeking to stay Saleh and Abdul Mubarez (<u>"Mubarez"</u>), whom the letter referred to as "soon-to-be Third Party Defendants," from holding a YAA board election scheduled for August 6, 2023. (*Id.* Doc. 66)

Counsel filed Alsaede's second proposed OSC with a TRO request (Mot. Seq. No. 4) later on August 3, 2023. (NYSCEF Doc. 67) The OSC sought an order establishing the governing set of by-laws applicable to the YAA, pursuant to Not-for-Profit Corporation Law ("NFPCL") § 602; compelling Saleh and Mubarez to account for any and all funds paid to the YAA within the last 24 months, pursuant to NFPCL § 720; and enjoining the YAA and Saleh and Mubarez from holding an election until the other requested relief had been satisfied. Alsaede additionally sought a TRO enjoining the holding of a board election, including the one scheduled for August 6, 2023, until a hearing on the OSC.

**\*3** At the same time, Alsaede filed a Third-Party Summons and Complaint against Saleh and Mubarez. (*Id.* Doc. 74) Alsaede purported to bring the Third-Party Complaint on behalf of the YAA, representing himself to be the current President of the YAA despite the Court's TRO -then, and now, in effect-specifically enjoining Alsaede from doing so.

In the Third-Party Complaint, Alsaede asserts five causes of action against Saleh and Mubarez and seeks injunctive relief. The first cause of action seeks to remove Saleh and Mubarez as directors of the YAA pursuant to NFPCL § 706(d). The second and third causes of action allege fraud and breach of fiduciary duty. The fourth and fifth causes of action seek an accounting of Saleh's and Mubarez's conduct as directors and to set aside and enjoin their past and future allegedly unlawful transfers of the YAA's funds, pursuant to NFPCL § 720(a)(1)-(3). To date, Alsaede has not demonstrated, by affidavit or otherwise, that the Third-Party Summons and Complaint were served.

Alsaede noticed his TRO request in his second proposed OSC to be heard on August 4, 2023. The undersigned was not available that day, and so the OSC and TRO were presented to the Honorable Ben R. Barbato, J.S.C., who was then serving in the Ex Parte and Urgent Motion Part. By email, Justice Barbato's chambers informed counsel for the parties that he would decide the application based on the parties' submissions and would not be holding oral argument. Justice Barbato ultimately declined to sign the OSC, thus rejecting the TRO request. (*Id.* Doc. 79) On August 7, 2023, the undersigned also issued a brief order declining to sign the OSC, for the reasons previously set forth on the record as to why the Court granted the YAA's TRO request and denied Alsaede's prior TRO request, as well as because the August 6, 2023 election had presumably occurred, rendering the requested relief moot, and because Alsaede had failed to demonstrate service of the Third-Party Complaint, the jurisdictional basis for the OSC, on Saleh or Mubarez. (*Id.* Doc. 78)

On September 20, 2023, as previously scheduled, the Court held oral argument on the record on the YAA's and Alsaede's competing motions (Seq. Nos. 2 & 3). Substantive argument was not heard, however, because the parties requested an adjournment to allow for additional briefing and evidentiary submissions. The Court granted the adjournment request, setting the motions down for in-person oral argument on December 6, 2023. The Court also set a briefing schedule, requiring that opposition and reply to the motions be submitted by October 20 and November 20, 2023, respectively.

The YAA submitted timely opposition to Alsaede's motion. Alsaede, however, did not submit opposition to the YAA's motion until the morning of December 6, 2023, a full month and a half after it was due and the same day as the scheduled argument. Alsaede did not submit any reply to the YAA's opposition.

At the outset of the December 6, 2023 oral argument, the Court noted, on the record, the untimely filing of Alsaede's opposition and offered the YAA's counsel opportunity to comment. Counsel objected to the untimely filing and argued that it should not be considered. Alsaede's counsel responded that he was prevented from filing his opposition earlier due to a combination of being unable to access his office, which is located near the United Nations building, because of ongoing protests over the Israel-Hamas war as well as his own COVID-19 infection and associated severe health conditions. At no time did counsel seek an extension of time to submit opposition from the Court. The Court, however, mindful of the strong policy preference for deciding cases on their merits, ultimately ruled that it would accept and consider Alsaede's opposition but offered the YAA an adjournment for time to review, consider, and reply. The YAA, through counsel, declined the adjournment offer, and the Court proceeded to hear substantive argument on the motions.

**\*4** The Court now decides the motions as follows.

## II. Factual Background

### A. The YAA

The YAA is a New York not-for-profit corporation the purpose of which is to offer certain services, including, among other things, inter-community dispute resolution, English-language lessons, immigration assistance, and cultural events and activities, to members of the Yemeni-American community in New York City. The YAA was first incorporated in the Bronx on August 4, 2000. Its office operates out of a building located at 712 Rhinelander Avenue, Bronx, New York. (*See* Affidavit of Fateh Saleh, sworn to on July 2, 2023 (NYSCEF Doc. 24) ("Saleh Aff."), ¶ 7; NYSCEF Doc. 51) That building is adorned with the following sign bearing the YAA's logo and alleged mark:

Yemeni-American Ass'n, Corp v. Alsaede, 2024 WL 5507535 (2024)

---

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

### B. The By-laws

Both parties submit versions of the YAA's operative by-laws (the "By-laws") that are identical in all respects, with the notable exception of an amendment purportedly adopted on April 26, 2012 (the "2012 Amendment"). (*Compare* NYSCEF Doc. 36, *with id.* Doc. 43) As with any not-for-profit corporation, the By-laws set the rules by which the YAA's internal affairs are governed. The present dispute implicates several By-law provisions, specifically, those concerning membership in the YAA, including dues; the YAA's Board of Directors (the "Board"), including elections, the length of members' terms in office, and the formation of committees; meetings of the YAA and of the Board, including their frequency and who may call them; and amendment of the By-laws.

The By-laws provide that "[a]pplication for voting membership shall be open to any Yemeni American or their friends that support [the YAA's] mission statement and objectives." (By-laws art. II, § 1) The Board is given the authority to both "establish and define nonvoting categories of membership" and "set dues schedules for memberships." (*Id.* § 2; *id.* art. IV, § 12) "Continuing membership" is expressly made "contingent upon being up-to-date on membership dues." (*Id.* art. II, § 1)

The By-Laws vest in the Board "responsibility for overall policy and direction of [the YAA]." The Board "shall have up to fifteen, and no fewer than nine, members," and "[u]p to seven Board members shall be elected by the voting members during a general meeting called for this reason." (*Id.* art. IV, §§ 1-2) As the Board must have at least nine members, the By-laws provide that the Board must also have nine officers: a Chair, Vice-Chair, Secretary, Treasurer, Media/Public Relations Officer, Labor Relations Coordinator, Educational Coordinator, Community Outreach Coordinator, and Cultural Coordinator. (*Id.* § 8) Under the By-laws, the Chair is assigned the duties of "conven[ing] regularly scheduled Board meetings and presid[ing] or arrang[ing] for other members of the executive committee to preside at each meeting." (*Id.* § 8.2) The officers, including the Chair, "shall be elected by the Board at the first Board Meeting." (*Id.* § 8.1)

The original, undisputed provision of the By-laws governing Board-member terms provides, in relevant part, that "no board member shall serve more than three two-year terms." (*Id.* § 4) In other words, under that provision, no Board member may serve more than six total years.

**\*5** The 2012 Amendment, however, purports to change the maximum number and length of each term that a Board member may serve. Specifically, it provides that "no board member shall serve more than four four-year terms" (NYSCEF Doc. 43 at p. 6)-or, in other words, no more than *16* total years. According to an accompanying statement of reasons, the 2012 Amendment was "necessary to have continuity and allow the efforts that have begun to grow uninterrupted and execute future plans," because "constant litigation" over the Board, as then constituted, served as "distractions and have taken time and energy away from working for the community." (*Id.* at pp. 6-7)

A two-thirds majority of the Board is required to amend the By-laws. (By-laws art. VII, § 1) The 2012 Amendment is purportedly signed in approval by eight Board members, including Saleh. (NYSCEF Doc. 43 at pp. 7-8) Nothing submitted by either party, however, indicates the overall size or composition of the Board in 2012.

According to the By-laws, "[t]here shall be three standing committees-Executive, Personnel and Finance Committees." (By-laws art. V, § 1) The Executive Committee consists of the Chair, Vice-Chair, Secretary, Treasurer, and Labor Relations Coordinator. (*Id.* § 2) The Board, however, "may create committees as needed." (*Id.* § 1) "The Board Chair appoints all committee chairs," who "must be members of the Board." (*Id.*)

Finally, the By-laws provide for general and special meetings of the YAA members and, separately, of the Board. "[O]ne regular annual general meeting" of the YAA must be held, and the Board must set the date, time, and place for it. (*Id.* art. III, § 1) Special meetings of the YAA may be called at any time, by either the Board Chair, the Board Executive Committee, a simple majority of the Board, or by petition of 10% of the voting members. (*Id.* § 2) The Board, by contrast, "shall meet at least monthly, at an agreed time and place." (*Id.* art. IV, § 5) The Board may also conduct special meetings at any time "upon

the request of the Chair or one-third of the Board." (*Id.* § 11)

### C. The Parties' Dispute

Before the recent disputed elections, an election for members of the Board was last held in 2010. (Affidavit of Ali Alsaede, sworn to on July 12, 2023 (NYSCEF Doc. 34) ("July Alsaede Aff.), ¶ 4) At that time, Saleh was elected Chair of the Board.[2] (*Id.* ¶ 7) He has continuously represented himself to be Chair ever since and until the August 6, 2023 election, when he was again elected to the Board. (*See* NYSCEF Doc. 86) Prior to Saleh being elected Chair in 2010, Mubarez was Chair. (*See* Saleh Aff. ¶ 3) Mubarez now represents himself to be merely a member of the YAA. (Affidavit of Abdulsalam Mubarez, sworn to on July 2, 2023 (NYSCEF Doc. 25) ("Mubarez Aff."), ¶ 2)

The present dispute arose in or about May 2023. According to Saleh, on May 4, 2023, Alsaede posted a video to Facebook in which he mentioned Saleh and Mubarez and demanded that the YAA hold an election. (Saleh Aff. ¶ 3) Alsaede also requested in the video that his family vote for him in the election, which request, Saleh claims, is significant because the Alsaede family is the largest Yemeni family in New York. (*Id.* ¶¶ 3-4) Saleh, having seen the video, reached out to Alsaede via mutual acquaintances to arrange a meeting between the Board and Alsaede and his supporters. (*Id.* ¶ 5)

**\*6** Mubarez tells a similar story. According to him, in early May 2023, he received a telephone call from Alsaede (whom Mubarez claims to have known for at least 13 years) in which Alsaede stated his belief that Saleh should be removed as Chair. (Mubarez Aff. ¶¶ 3-4) Alsaede invited Mubarez to a meeting of prominent Yemeni-Americans at Alsaede's property in Brooklyn. (*Id.* ¶ 5) Mubarez declined the invitation, but he informed Alsaede that he would instead facilitate and attend a meeting between Alsaede and the Board. (*Id.* ¶ 6) Approximately a week later, Mubarez encountered Alsaede and some of his associates at a wake. (*Id.* ¶ 7) There, Alsaede again informed Mubarez that the YAA must hold an election, and Mubarez agreed that an election was appropriate and reiterated his previous offer to facilitate a meeting between Alsaede and the Board. (*Id.* ¶¶ 8-9) According to Mubarez, he also informed Alsaede that the YAA is a membership organization and, accordingly, that Alsaede and his supporters had to join the YAA. (*Id.* ¶ 9) Mubarez told Alsaede to provide him with a list of possible candidates for the Board and to inform him when Alsaede wanted to meet with the Board, so that the logistics of that meeting could be arranged. (*Id.* ¶ 10)

The meeting occurred on or about May 14, 2023.[3] Alsaede, however, first denied that this meeting had even taken place. In his July 12, 2023 affidavit submitted in support of his motion (Seq. No. 3), Alsaede states that, "in May 2023, I and/or other members of the [YAA] invited the Board of Directors to attend a meeting, to discuss the fact that there had not been elections in many years, and to discuss other issues, such as how the [YAA's] money was spent." (July Alsaede Aff. ¶ 11) But Alsaede goes on to claim that "the Board of Directors refused to attend a meeting with the members in May 2023, and instead released a press release which [accused] me and the other members of the [YAA] of being a 'gang' [that] was trying to cause trouble in the [YAA]." (*Id.* ¶ 14) He also states that Saleh and Mubarez "claim to have had a meeting on May 14, 2023 [but] this meeting lacks minutes and was not an official meeting." (*Id.* ¶ 36) Despite these earlier denials, in his August 3, 2023 affidavit submitted in support of his second OSC and TRO request (which the Court denied), Alsaede concedes that the meeting indeed took place on or about May 14, 2023. (Affidavit of Ali Alsaede, sworn to on August 3, 2023 (NYSCEF Doc. 85) ("Aug. Alsaede Aff."), ¶¶ 9-10)[4]

The May 14, 2023 meeting was attended by Alsaede and certain of his supporters, Mubarez, Saleh, and other members of the Board. (Saleh Aff ¶ 6; Mubarez Aff. ¶ 11) According to both Saleh and Mubarez, all attendees at the meeting agreed that an election should be held. (Saleh Aff. ¶ 6; Mubarez Aff. ¶ 11) Saleh and Mubarez claim that Alsaede, positing that a conflict existed if the current Board was to supervise an election in which its members would be running, demanded that the election be supervised by non-Board members. (Saleh Aff. ¶ 6; Mubarez Aff. ¶ 11) Saleh and Mubarez further claim that a compromise was reached among the attendees whereby the Board would create an election committee chaired by Mubarez. (Saleh Aff. ¶ 6; Mubarez Aff. ¶ 11) Mubarez states that he "reluctantly" accepted this appointment. (Mubarez Aff. ¶ 11)

Alsaede, however, paints a starkly different picture of the meeting. Initially, he characterizes the meeting not as one to reach an agreement with the current Board on holding an election, but as one "to discuss *[Alsaede's]* intention to hold an election under the YAA by-laws." (Aug. Alsaede Aff. ¶ 10) Indeed, in his August 3, 2023 affidavit, Alsaede contends that, on May 4,

2023, he had *already* "called a vote pursuant to the YAA by-laws ..., at which time a vote was scheduled to be taken on June 25, 2023 by an independent voting company Honest Ballot LLC." (*Id.* ¶ 3; *see also id.* ¶ 9) Further, in that same affidavit, contrary to Saleh's and Mubarez's averments in their affidavits, Alsaede claims that, at the May 14, 2023 meeting, Mubarez "appointed himself the 'President of the Election Committee,'" "without notice or prompting (in clear violation of the by-laws)," and proceeded to advise the YAA membership of his appointment. (*Id.* ¶ 11)

**\*7** After the May 14, 2023 meeting, Mubarez, acting as its purported chair, created a new election committee comprising 13 unidentified people, all of whom were allegedly "professional[s] with the necessary expertise to run a fair election." (Mubarez Aff. ¶ 12) The committee created an online membership registration portal/app as well as a hard copy membership registration form, which was distributed and made available for pick up at the YAA's office. (Saleh Aff. ¶ 7; Mubarez Aff. ¶ 12; NYSCEF Doc. 54) The election was scheduled for August 6, 2023. (Mubarez Aff. ¶ 12) Yemeni-Americans who wanted to become a member of the YAA and vote in the election were required to first register and pay a $50 fee. (*See* Saleh Aff. ¶ 8; Mubarez Aff. ¶ 12; NYSCEF Doc. 54) The registration period was to last from June 6 through July 26, 2023. (Mubarez Aff. ¶ 12)

Shortly after the May 14, 2023 meeting, Saleh discovered via Alsaede's Facebook posts that Alsaede had called a meeting, purportedly of the YAA, for May 26, 2023. (Saleh Aff. ¶ 10) Alsaede admits that, on May 19, 2023, he called a "general assembly meeting" for May 26, 2023.[5] (July Alsaede Aff. ¶ 15) He further states that this meeting was held and that "the general assembly decided that new elections would take place." (*Id.* ¶ 16) That election was scheduled for June 25, 2023. (*Id.* ¶ 19)

On May 26, 2023, Alsaede posted to Facebook that he had created a new and separate election committee on behalf of the YAA and included in his posts a registration form that was, according to Saleh and Mubarez, "virtually identical" to the form that Mubarez's election committee had created, *except* that Alsaede's form represented that registration was free. (Saleh Aff. ¶ 11; Mubarez Aff. ¶ 13 NYSCEF Doc. 55) On or about the same date, Alsaede posted to Facebook that he had the consent of 10% of the YAA membership to dissolve the current Board and was doing so. (*See* Saleh Aff. ¶ 13) Alsaede also allegedly established an office approximately two blocks from the YAA's existing office using the YAA logo and soliciting member registration there using Alsaede's form. (*Id.* ¶ 15)

In his August 3, 2023 affidavit, Alsaede represents that membership dues were only ever collected by the YAA on one prior occasion in 2010 and thus a requirement to pay a registration fee of $50 to vote is improper and in violation of the By-laws. (*See* July Alsaede Aff. ¶ 31; Aug. Alsaede Aff. ¶¶ 13-15) Additionally, Alsaede accuses Saleh and the Board of engaging in a scheme to essentially rig the August 6, 2023 election by taking money out of the YAA, giving it to members, and having those members pay the money back to the YAA as membership dues to vote, all while promising resolution to any disputes involving members who vote for Saleh and/or Mubarez. (Aug. Alsaede Aff. ¶¶ 16-17)

Alsaede also accuses Saleh and other members of the Board of further financial misconduct. In his July 12, 2023 affidavit, Alsaede states that, "upon information and belief, the members of the Board were embezzling money and/or misappropriating money, including using the [YAA's] money to make personal investments in real estate deals, Bitcoin, and gambling." (July Alsaede Aff. ¶ 12) He further states that Saleh "is also [o]n the Board of the Yemeni Merchants Association, which appears to be a conflict of interest, with $250,000 transferred between and among these people/groups, without explanation." (*Id.* ¶ 26)

Mubarez spoke with Alsaede by telephone after his May 26, 2023 Facebook posts. (Mubarez Aff. ¶ 15) Alsaede allegedly told Mubarez that "he knew he should pay and he knew that the registration agreement he had created was deficient but... he needed to induce his supporters to join and that if he won, he would pay the necessary fees." (*Id.*) Mubarez responded that Alsaede was engaged in "third world behavior" and "that if he wanted to make up his own rules as he went then he was fully free to create his own organization." (*Id.*) Mubarez also told Alsaede that, until he registered and paid his dues, he was not a member of the YAA and could not vote or run for election. (*Id.*) To this, Alsaede allegedly stated that he wanted to amend the By-laws to create "the General Assembly of Yemeni Americans" and to waive any membership fees "because the organization belongs to all Yemenis." (*Id.* ¶ 16) Mubarez replied that "just being a Yemeni American does not make you a member of the YAA," reminded Alsaede that to change the By-laws one had to first be a member,[6] and urged Alsaede, once again, to "follow the rules and fully participate in the election." (*Id.* ¶ 17)

**\*8** After speaking with Alsaede, Mubarez also spoke with two of Alsaede's relatives. (*Id.* ¶ 18) In response to Mubarez asking why Alsaede was "creating chaos within the community," these individuals allegedly responded that the Alsaede family wanted Saleh removed from the YAA. (*Id.*) And in response to Mubarez asking why they did not simply register, pay dues, and vote Saleh out, they allegedly replied that "they knew [Saleh] was popular and they could not risk losing a fair election." (*Id.*)[7]

On June 8, 2023, the YAA, through counsel, sent Alsaede a letter demanding that he cease and desist use of the YAA logo and offering "fraudulent membership applications" -in other words, that he cease and desist holding himself out to be a representative of the YAA. (NYSCEF Doc. 57) Alsaede responded by Facebook post, claiming that the YAA office and logo are "the property of all the people of Yemen." (*Id.* Doc. 58) On June 15, 2023, Alsaede again posted on Facebook announcing that his own purported election committee had created a paper form for voter registration, free of charge, and warning that no potential voters in the election should fill out the YAA's electronic registration forms or provide any financial information, "as the fees were canceled at the extraordinary general assembly meeting that took place on Friday, May 26, 2023 AD." (*Id.* Doc. 59)

On June 25, 2023, Alsaede held his purported election for "President" of the YAA. (Saleh Aff. ¶ 17; Mubarez Aff. ¶ 19; Aug. Alsaede Aff. ¶ 4; *see also* July Alsaede Aff. ¶¶ 19-22) The election was supervised and certified by Honest Ballot LLC ("Honest <u>Ballot</u>"). (July Alsaede Aff. ¶ 21; Aug. Alsaede Aff. ¶ 3) Voting was conducted in Brooklyn and the Bronx, with 1,413 people casting ballots. (July Alsaede Aff. ¶ 22; NYSCEF Doc. 37) Of the 1,413 votes, Alsaede received 1,065. (Aug. Alsaede Aff. ¶ 4; NYSCEF Doc. 37) Based on these results, Alsaede now declares himself "President" of the YAA. (July Alsaede Aff. ¶ 24)

Mubarez contacted Honest Ballot after Alsaede's purported election. (Mubarez Aff. ¶ 21) According to Mubarez, Honest Ballot confirmed that they performed no due diligence or verification as to the YAA's corporate status, its current officers, the candidates for election, or the organization's membership prior to the election. (*Id.*)

After this Court refused to grant Alsaede an injunction, the YAA held its planned Board election on August 6, 2023. The election was supervised by Votegrity Inc. ("Votegrity"). (NYSCEF Doc. 86) Members of the YAA who registered and paid the $50 registration fee could vote for up to five candidates for the YAA's "Executive Board." (*Id.*) According to Votegrity's certified final report, a total of 1,602 votes were cast in the election-1,312 by paper ballot at poll sites in Brooklyn and the Bronx and 290 by online ballot. (*Id.*) Saleh received the most votes, with 1,116. (*Id.*) Four others-Nabil Aljomai, Sam Alawadi, Mukhtar Alkaifi, and Abdulsamad Elfgeeh-were also elected. (*Id.*)

### III. Discussion

"The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor." *Nobu Next Door, LLC v. Fine Arts Housing, Inc.,* 4 N.Y.3d 839, 840 (2005) (citing CPLR § 6301). The existence of triable issues of fact does not require the denial of a preliminary injunction when the movant meets its burden of establishing that the three prerequisites for injunctive relief have been met. CPLR 6312(c); *Bell & Co, P.C. v. Rosen,* 114 A.D.3d 411, 411 (1st Dep't 2014). Whether to grant or deny a preliminary injunction "is committed to the sound discretion of the motion court." *Harris v. Patients Med., P.C.,* 169 A.D.3d 433, 434 (1st Dep't 2019) (citing *Doe v. Axelrod,* 73 N.Y.2d 748 (1988)).

### A. Likelihood of Success on the Merits

**\*9** To establish a likelihood of success on the merits, the movant must make a *prima facie* showing of a reasonable probability of success. *Barbes Rest. Inc. v. ASRR Suzer 218, LLC,* 140 A.D.3d 430, 431 (1st Dep't 2016). A moving party need not demonstrate a certainty of success. *Doe v. Dinkins,* 192 A.D.2d 270, 275-76 (1st Dept 1993).

Here, the parties' submissions focus almost entirely on who was the rightful Chair when this action was initiated. Because it is a threshold matter, the Court first addresses and resolves, to the extent necessary, the issues underlying those arguments, including the legitimacy of Alsaede's June 25, 2023 election. The Court next addresses the individual claims in the YAA's pleading.

### i. *The Parties' Claims Concerning the June 25, 2023 Election and Saleh's Eligibility for Chair*

Upon review and consideration of the facts and argument presented, the By-laws, and the applicable law, the Court concludes that Alsaede's June 25, 2023 election was illegitimate and that he was not thereby elected Chair of the Board.

Initially, central to the YAA's arguments as to why the June 25, 2023 election was illegitimate is the contention that Alsaede is not a member of the YAA. The YAA asserts that Alsaede is not a member because he did not pay the $50 registration fee imposed in order to participate in the August 6, 2023 election. Alsaede admits that he never paid the fee and counters that membership dues had only been collected by the YAA once, in 2010, when the last election occurred, and that since that time membership has been advertised as free of charge.

The By-laws afford the Board broad authority over YAA membership. The Board possesses the authority to "establish and define nonvoting categories of membership." (By-laws art. II, § 2;) That the Board may create nonvoting categories of membership necessarily implies that the Board may also create *voting* categories of membership. The Board is further empowered to "set dues schedules for memberships." (*Id.* art. IV, § 12) Again, because the Board may create both voting and nonvoting categories of membership, the clear implication is that the Board may set separate dues schedules for each category.

Based on a plain reading of these By-laws provisions, the Board clearly was authorized to impose the $50 fee required for eligibility to vote in the August 6, 2023 election. By imposing such a fee, the Board was, in effect, creating a voting category of membership and imposing a dues schedule for that category. That a membership fee had last been collected by the YAA in 2010, in connection with the election held that year, is irrelevant to the Board's authority to collect a fee for eligibility to vote in 2023. Despite Alsaede's argument to the contrary, he points to no provision of the By-laws or of the NFPCL or any other applicable New York law supporting his position. Thus, because Alsaede apparently refused to pay the $50 fee, and because the By-laws expressly make "[c]ontinuing membership ... contingent upon being up-to-date on membership dues" (*id.* art. II, § 1), Alsaede was not a voting member eligible to participate in the August 6, 2023 election.

But this conclusion does not resolve whether Alsaede was a member of the YAA in May and June of 2023, when, respectively, he called for and held his own purported election. Indeed, the facts and circumstances of this case raise a number of relevant issues that are left essentially unaddressed by the parties' submissions. One such overarching and critical issue is who was a member of the YAA in the 13 years between the two dues collections. The YAA's position-that only those who paid the $50 fee are members -seems to imply one of three scenarios: that there were *no* members of the YAA prior to the August 6, 2023 election, that there were no *voting* members prior to that election, or that the only members of the YAA prior to that election were those who paid their membership dues in 2010. Surely, however, the YAA was not memberless or unable to add new members during the intervening 13 years. Common sense alone suggests that there must have been some procedure or mechanism for admitting members; otherwise, the membership of the YAA would have remained in stasis (or dwindled) for more than a decade. While that may be possible, it is unlikely. The YAA's submissions, however, fail to address how someone became a member of the YAA between 2010 and late-2023, such as through completion of a membership registration form, and no satisfactory answer to that question was forthcoming at oral argument.[8]

**\*10** At the same time, Alsaede's position-essentially, that he is a member because he says so--is without legal merit. Certainly, not every self-identified Yemeni-American is a member of the YAA, a not-for-profit corporation, merely by dint of allegedly being, in some part, of Yemeni descent. Of import, the By-laws do not provide that membership is automatically conferred to all Yemeni-Americans. In fact, the By-laws expressly provide that *"[a]pplication* for voting membership shall be open to any Yemeni[-]American or their friends that support [the YAA's] mission statement and objectives." (*Id.* art. II, § 1 (emphasis added)) Membership, in other words, is not a birthright under the By-laws but requires affirmative application. Alsaede does not provide any evidence of an affirmative application or of his membership -not even an attestation that he

paid the membership dues collected in 2010--besides his self-serving and conclusory statements in his affidavits that he is a member. These statements are legally insufficient proof.

On the record currently before the Court, the unresolved question of Alsaede's membership in the YAA does not require a hearing or preclude the granting of the YAA's request for a preliminary injunction. There are independent grounds evident in the record for granting such relief. Specifically, even assuming, *arguendo,* that Alsaede was a voting member of the YAA when he called the June 25, 2023 meeting at which his purported election occurred, he still was without authority under the By-laws or the NFPCL to call that meeting. Under the By-laws, "[u]p to seven Board members shall be elected by the voting members during a general meeting called for this reason." (*Id.* art. IV, § 2) The By-laws provide, in turn, for "one regular annual general meeting" but also provide that the date for such general meeting "shall be set by the Board of Directors who shall also set the time and place." (*Id.* art III, § 1) There simply is no provision in the By-laws permitting a member, voting or otherwise, to call a general meeting of the YAA.

Alsaede points to Article III, Section 2 of the By-laws and § 604 of the NFPCL as the source of his authority to call the June 25, 2023 meeting. (NYSCEF Doc. 30, ¶¶ 10-11) Article III, Section 2 of the By-laws provides that voting members of the YAA may call a special meeting upon a "petition signed by ten percent of the voting members." Similarly, NFPCL § 604(a) permits "members entitled to cast one hundred votes or ten per cent of the total number of votes entitled to be cast in an election of directors, whichever is lesser," to call a special meeting for the election of directors if,

> for a period of one month after the date fixed by or under the by-laws for the annual meeting of members or, if no date has been so fixed, for a period of thirteen months after the formation of the corporation or the last annual meeting, there is a failure to elect a sufficient number of directors to conduct the business of the corporation... [and a] special meeting is not called by the board within two weeks after expiration of such period of if it is so called but there this a failure to elect such directors for a period of two months after the expiration of such period ....

Here, however, Alsaede submits no competent evidence whatsoever establishing that he had the support of 10% of the voting members of the YAA in calling the June 25, 2023 meeting. He submits no signed petition, as expressly required by Article III, Section 2 of the By-laws, or any other writing reflecting the assent of any other voting member. Nor does he even so much as allege in his affidavits that he had the backing of 10% of the voting members. Accordingly, even assuming that Alsaede was a voting member, he has failed to submit any evidence demonstrating that he satisfied a condition precedent to his ability to call a special meeting of the YAA for the election of Board members.

There are yet other infirmities in the June 25, 2023 election that independently render it illegitimate. As Alsaede's submissions make clear, the June 25, 2023 election was held specifically for the selection of the "President" of the YAA. (*See* NYSCEF Doc. 37) *First,* as already mentioned (*see supra* Note 2), there is no "President" position under the By-laws. The By-laws, instead, create a Chair of the Board position. *Second,* under the By-laws, the Chair is not elected by direct vote of the members. Instead, the voting members elect members *to the Board,* and then the Board members themselves elect the officers, including the Chair, at the first Board meeting. (*See* By-laws art. IV, §§ 2, 8) Alsaede's June 25, 2023 meeting to directly elect a "President" of the YAA was, therefore, contrary to the plain terms of the By-laws. And, contrary to Alsaede's contentions, Honest Ballot's certification of the election results is entirely without value in light of these aforementioned deficiencies.

**\*11** Turning now to Alsaede's contentions concerning Saleh and the pre-August 6, 2023 Board, the Court finds that, based on the current record, those contentions are without merit. Alsaede principally contends that Saleh could not be Chair or run for re-election to the Board in the August 6, 2023 election because he had first been elected to the Board 13 years earlier in 2010. In support of that argument, Alsaede relies on Article IV, Section 4 of the By-laws providing that all Board members are limited to six total years of service. This argument entirely ignores, however, the 2012 Amendment extending Board members' maximum possible number of years in office to 16 total years. Under the 2012 Amendment, Saleh would still have several years in which he could serve as Chair. The 2012 Amendment appears facially valid, and Alsaede has not come forward with *any* evidence to the contrary. Alsaede's contention that Saleh is term-limited is, therefore, rejected.[9]

Alsaede also accuses Saleh and the Board of financial impropriety including embezzlement.[10] But once again Alsaede fails to provide any real evidence of misconduct; his statements in his affidavit are merely generalized allegations, not competent proof. Additionally, Alsaede fails to provide the Court with a legal foundation warranting the requested relief based on the

alleged impropriety and the alleged illegitimacy of Saleh's continued tenure as Chair. Even if Saleh and the Board are indeed embezzling YAA funds, Alsaede fails in his submissions in this civil proceeding to identify any legal grounds upon which the Court may, in this action as pled, declare Saleh not to be Chair or bar him from seeking re-election to Chair. Such a legal basis may exist, but Alsaede has not done the work necessary to bring it to the Court's attention. For the same reasons, the Court also rejects, at this time, Alsaede's request to refer the YAA to the Attorney General's Charities Bureau for investigation. Of course, as a private citizen, Alsaede may seek to file his own complaint with any appropriate New York State agency.

In conclusion, based on the record, the YAA demonstrates a likelihood of success on the merits of its claim that Alsaede is not Chair of the Board by virtue of the purported June 25, 2023 election. By contrast, Alsaede fails to demonstrate a likelihood of success on the merits of his claims that he was elected Chair and that Saleh is time-barred from acting as or seeking re-election to the Board.

Further, because Alsaede's Counterclaim is virtually identical to his July 12, 2023 affidavit-indeed, one appears to be a copy-and-paste of the other-Alsaede also fails to demonstrate a likelihood of success on the merits of his Counterclaim for the same reasons discussed above. Alsaede's motion for a preliminary injunction (Seq. No. 3) is, therefore, DENIED on that basis alone, without need for further analysis of irreparable harm or balancing of the equities.

The Court now turns to whether the YAA demonstrates a likelihood of success on the merits of its causes of action in the Verified Complaint.

### ii. *The YAA's Causes of Action in the Verified Complaint*

### 1. GBL §§ 360-L & -O

**\*12** Article 24 of the GBL is New York's trademark and unfair competition statute. The YAA appears to assert two causes of action under Article 24: (1) a claim, pursuant to GBL § 360-L, for dilution of the "Yemeni-American Association" service mark; and (2) a claim, pursuant to GBL § 360-O, for misappropriation of the YAA's alleged common-law rights in the goodwill deriving from the same mark.

GBL § 360-L provides that
> [l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

A successful claim under GBL § 360-L requires that the plaintiff show both that it possesses a strong mark and that the defendant's actions are likely to dilute the mark by either blurring or tarnishment. *New World Solutions, Inc. v. NameMedia, Inc.,* 150 F. Supp. 3d 287, 328 (S.D.N.Y. 2015) (citation omitted). The mark "need not be... famous or celebrated, but it must be an *extremely strong mark* either because of its inherently distinctive qualities or the fact that it has acquired secondary meaning." *Id.* (emphasis added) (internal quotation marks and citation omitted); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 973 F.2d 1033, 1049 (2d Cir. 1992) ("In interpreting [GBL § 360-L], we have held that it protects only extremely strong marks." (internal quotation marks and citation omitted)).

GBL § 360-O provides that "[n]othing herein shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law." Pursuant to GBL § 360-O, New York recognizes "that when a business, through renown in New York, possesses goodwill constituting property or a commercial advantage in this state, that goodwill is protected from misappropriation under New York unfair competition law." *ITC Ltd. v. Punchgini, Inc.,* 9 N.Y.3d 467, 479 (2007).

Both causes of action have very specific, highly technical requirements. The YAA entirely fails to address those

requirements. The YAA's submissions do not establish, or even attempt to establish, either that its alleged mark is "extremely strong" or that it has goodwill of a kind protected from misappropriation. Therefore, based on the current record, the YAA fails to demonstrate likelihood of success on the merits of its causes of action pursuant to GBL §§ 360-L and -O.

### 2. GBL § 349

GBL § 349(a) declares unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. "[A]ny person who has been injured by reason of any violation of [GBL § 349] may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." GBL § 349(h).

To succeed on a claim under GBL § 349, a plaintiff must prove that: (1) the defendant has engaged in "consumer-oriented" conduct; (2) the conduct was materially misleading; and (3) the plaintiff suffered an injury as a result. *Plavin v. Grp. Health Inc.,* 35 N.Y.3d 1, 10 (2020). Corporate competitors have standing to bring a claim under GBL § 349 if "the gravamen of the complaint [is] consumer injury or harm to the public interest." *Merck Eprova AG v. Brookstone Pharm., LLC,* 920 F. Supp. 2d 404, 425-26 (S.D.N.Y. 2013); *see also Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir. 1995); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25 (1995). "Private contract disputes, unique to the parties, ... would not fall within the ambit of the statute." *Oswego,* 85 N.Y.2d at 25.

**\*13** There can be little doubt both that the YAA has standing to bring its claim under GBL § 349 and that the elements of that claim have been adequately demonstrated by the YAA's submissions. The gravamen of the YAA's complaint is that Alsaede misappropriated the YAA's identity and used it to mislead the Yemeni-American community in New York City into believing that Alsaede represents and, in fact, leads the YAA. Based on his misrepresentations, Alsaede convinced more than 1,400 Yemeni-Americans to vote in an unauthorized election. The basic nature of the misconduct is undisputed-Alsaede merely argues that it complied with the By-laws and the NFPCL. But the Court has rejected that argument. Alsaede's unauthorized conduct in misappropriating the YAA's identity is clearly consumer-oriented, misleading, and injurious not only to the YAA but also to the Yemeni-American community at large. Therefore, based on the current record, the YAA demonstrates likelihood of success on the merits of its cause of action pursuant to GBL § 349.

### 3. *Prima Facie Tort*

"The requisite elements for a cause of action sounding in *prima facie* tort are (1) the intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series of acts which are otherwise legal." *AREP Fifty-Seventh, LLC v. PMGP Assocs., L.P.,* 115 A.D.3d 402, 403 (1st Dep't 2014). "[T]here is no recovery in *prima facie* tort unless malevolence is the sole motive for defendant's otherwise lawful act or ... unless defendant acts from 'disinterested malevolence.'" *Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 333 (1983) (quoting *Am. Bank & Trust Co. v. Fed. Bank,* 256 U.S. 350, 358 (1921)); *AREP Fifty-Seventh,* 115 A.D.3d at 403.

In its Verified Complaint, the YAA alleges only that it has incurred costs in defending against Alsaede. Such an allegation does not satisfy the special damages requirement. *See Del Vecchio v. Nelson,* 300 A.D.2d 277, 278 (2d Dep't 2002) ("The defendant failed to allege special damages beyond the physical, psychological, or financial demands of defending a lawsuit." (citation omitted)) Even if that allegation were enough, however, the YAA still has not adequately established that Alsaede's conduct was solely motivated by disinterested malevolence. *AREP Fifty-Seventh,* 115 A.D.3d at 403; *Brook v. Peconic Bay Med. Ctr.,* 152 A.D.3d 436, 439 (1st Dep't 2017). Indeed, the submissions suggest an alternative motive: that Alsaede sought to commandeer leadership of the YAA to wrest control from the Board, change its membership policies, and/or uncover financial misconduct. Therefore, based on the current record, the YAA fails to demonstrate likelihood of success on the merits of its causes of action sounding in *prima facie* tort.

#### 4. Penal Law § 190.25

New York Penal Law is a criminal statute. Under Penal Law § 190.25(2), a "person is guilty of criminal impersonation in the second degree when he ... [p]retends to be a representative of some person or organization and does an act in such pretended capacity with intent to obtain a benefit or to injure or defraud another."

"Where a penal statute does not expressly confer a private right of action on individuals pursuing civil relief, recovery under such a statute may be had only if a private right of action may fairly be implied." *Hammer v. Am. Kennel Club,* 1 N.Y.3d 294, 299 (2003) (internal quotation marks and citation omitted). Courts must consider three factors in making this determination: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* (internal quotation marks and citation omitted)

Penal Law § 190.25 does not expressly confer a private right of action on an individual. And at least one court has already declined to find that § 190.25 implies a private right of action. *See Christian v. Town of Riga,* 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009) (dismissing cause of action pursuant to Penal Law § 190.25 because it "do[es] not create a private right of action for any of the varied forms of relief plaintiff seeks"). None of the parties have briefed this issue. Therefore, based on the current record, the YAA fails to demonstrate likelihood of success on the merits of its causes of action under Penal Law § 190.25.

\*\*\*\*\*\*\*\*

**\*14** In summary, for the reasons discussed above, based on the record currently before the Court, the YAA demonstrates a likelihood of success on the merits of at least one of the causes of action alleged in the Verified Complaint, namely, its cause of action pursuant to GBL § 349. The YAA fails to make the necessary showing, however, on each of the remaining four causes of action.

### B. Irreparable Injury

That the YAA would suffer irreparable injury if Alsaede is permitted to continue misrepresenting himself as "President" of the YAA and holding elections or other meetings as if he led the organization is manifest and undisputed. Were such actions allowed to continue, there would effectively be two YAAs, each competing for membership amongst the same limited population of Yemeni-Americans in New York City. Such a state of affairs would undoubtedly create confusion and division among the Yemeni-American community, with the resulting diminishment of the YAA's standing. Indeed, Alsaede himself argued that allowing Saleh to wrongly remain as "President" of the YAA would cause him to suffer irreparable harm, so he cannot now plausibly argue that the YAA would not suffer irreparable harm if Alsaede were permitted to wrongly claim that he is the "President."

### C. Balance of the Equities

The "balancing of the equities" prong of the preliminary-injunction analysis "requires the court to look to the relative prejudice to each party accruing from a grant or denial of the requested relief." *Suttongate Holdings Ltd. v. Laconm Mgmt. N.V.,* 159 A.D.3d 514, 515 (1st Dep't 2018).

The balance of the equities favors the YAA. Here, Alsaede sought essentially to usurp the Board through improper means, and whether there were justifications for Alsaede's actions is beyond the scope of the motion. The YAA seeks to maintain the status quo, prevent Alsaede from falsely representing himself to be the YAA, and would be irreparably harmed otherwise,

while Alsaede would not be personally harmed if the status quo were maintained and he was forced to remain merely, at most, a member.

### D. Undertaking

CPLR 6312(b) provides that "prior to the granting of a preliminary injunction, the plaintiff shall give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that he or she was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of the injunction." The amount must be "rationally related to defendants' potential damages if the preliminary injunction later proves to have been unwarranted." *Madison/Fifth Assocs. LLC v. 1841-1843 Ocean Parkway, LLC,* 50 A.D.3d 533, 534 (1st Dep't 2008). Speculative damages are not considered. *Visual Equities Inc. v. Sotheby's, Inc.,* 199 A.D.2d 59, 59 (1st Dep't 1993).

If Alsaede has been wrongly enjoined from representing himself to be the "President' of the YAA, it is difficult to imagine that he will have sustained any, let alone significant monetary damages because, under the By-laws, Board members "receive[] no compensation other than reasonable expenses." (By-laws art. IV, § 1) In view of the de minimis nature of Alsaede's potential damages, the YAA recommended an undertaking of only $5,000 at oral argument, and the Court accepts that recommendation.

The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent that any relief requested by the parties was not addressed by the Court, it is hereby denied.

**\*15** Accordingly, it is hereby:

**ORDERED** that plaintiff YEMENI-AMERICAN ASSOCIATION, CORP.'s (the "YAA") motion, brought by Order to Show Cause (Seq. No. 2), seeking entry of a preliminary injunction is GRANTED; and it is further

**ORDERED** that defendants ALI ALSAEDE ("Alsaede") and JOHN DOE are preliminarily enjoined from representing themselves to be the YAA by use of its name, service mark, or logo and from transacting any business, including, but not limited to, advertising, soliciting membership, conducting elections, or publishing election results, in the YAA's name until the final determination of this action; and it is further

**ORDERED** that the undertaking is fixed in the sum of **$5,000,** and the YAA shall post the undertaking **on or before February 15, 2024;** and it is further

**ORDERED** that Alsaede's motion, brought by Order to Show Cause (Seq. No. 3), seeking entry of a preliminary injunction is **DENIED;** and it is further

**ORDERED** that the Clerk shall mark the motions (Seq. Nos. 2 &3) decided in all court records.

This constitutes the decision and order of the Court.

**Dated: January 24, 2024**

**Hon.**<<signature>>

**HON. VERONICA G. HUMMEL, A.S.C.J.**

Footnotes

[1]    Counsel for the YAA and for Alsaede also filed a stipulation agreeing that counsel had accepted service of the Summons and

Verified Complaint on Alsaede's behalf on July 10, 2023. (NYSCEF Doc. 27)

In their papers, both Saleh and Alsaede repeatedly refer to themselves as the "President" of the YAA. But the By-laws do not establish a "President" position, either generally within the YAA or specifically within the Board. (*See generally* By-laws) Accordingly, the Court understands the reference to "President" to be a reference to the Chair of the Board position established under the By-laws, and thus the Court will use the term "Chair" in place of "President" throughout this Decision and Order.

In his affidavit, Mubarez states that the meeting occurred on May 17, 2023. (Mubarez Aff. ¶ 11) But Saleh and Alsaede appear to agree that it occurred on or about May 14, 2023. (Alsaede Aff. ¶ 6; Affidavit of Ali Alsaede, sworn to on August 3, 2023 (NYSCEF Doc. 85), ¶ 9) The exact date of the meeting, however, is immaterial to the resolution of the motions.

This August 3, 2023 affidavit was submitted by the YAA in opposition to Alsaede's pending motion for a preliminary injunction (Seq. No. 3), and, as such, it is not considered in deciding Alsaede's pending motion as part of his *prima facie* showing.

Of course, this conflicts with Alsaede's claim, in his August 3, 2023 affidavit, that he had called a meeting earlier on May 4, 2023. (See Aug. Alsaede Aff. ¶ 3)

In fact, under the By-laws, one had to be more than a member to amend the By-laws; one had to be a member of the Board and garner the support of the majority of the other Board members. (See By-laws art. VII, § 1)

Although Alsaede avers generally that Saleh and Mubarez have included "many falsehoods" in their respective affidavits (July Alsaede Aff. ¶ 42), Alsaede does not specifically dispute any of the statements or actions attributed to him or his relatives by Saleh and Mubarez. (*See generally* July Alsaede Aff.; Aug. Alsaede Aff.)

While the YAA has not submitted any such evidence, ironically Alsaede has--just not in connection with these motions now under consideration. As an exhibit to his second OSC and TRO request (which, again, the Court denied), Alsaede submitted a screen capture of a Facebook post, purportedly by the YAA, from April 30, 2014. (NYSCEF Doc. 71) According to that post, beginning on May 7, 2014, those who wanted a YAA membership card were to visit the YAA's headquarters, fill out a form, and provide a recent photograph along with proof of American identification. Those who did so would "receive [their] membership card immediately, without any fees. It's free of charge." Thus, Alsaede himself demonstrates that the YAA established a procedure for obtaining membership; yet, as discuss *infra,* Alsaede fails to provide evidence that he followed that procedure. Nevertheless, because this document was not submitted in connection with any of the pending motions, the Court does not consider it in rendering its decision herein.

This conclusion should not be read as an endorsement of the manner in which Saleh has apparently run the Board and the YAA. At this point, there does not appear to be any genuine dispute as to the facts demonstrating that meetings and elections were not held, let alone held with the frequency required by the By-laws. The Court, however, addresses only Alsaede's argument-that Saleh could only have been Chair for six total years and had exceeded that maximum term. Questions surrounding Saleh's and the Board's holding of meetings and elections in compliance with the By-laws as well as their alleged financial misconduct will need to be fleshed out during discovery and, if appropriate, addressed in later stages of the litigation.

Alsaede further contends that Saleh has a conflict of interest because he also serves on the board of the Yemeni Merchants

**Yemeni-American Ass'n, Corp v. Alsaede, 2024 WL 5507535 (2024)**

Association. It is unclear, however, based on the record currently before the Court, what the conflict is or may be.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.