**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FLYCATCHER CORP. LTD. and FLYCATCHER TOYS INC.,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>AFFABLE AVENUE LLC, et. al.,<br><br>*Defendants*. | Civil Action No.<br>24-cv-9429 (KPF) |

# DEFENDANT TOP EXPERIENCE COMPANY LLC'S MEMORANDUM OF LAW IN SUPPORT OF ATTORNEYS' FEES AND COSTS

Joel G. MacMull, Esq.
Brian M. Block, Esq.
**MANDELBAUM BARRETT PC**
570 Lexington Avenue, 21st Floor
New York, New York 10022
T: (212) 776-1834
Email: jmacmull@mblawfirm.com
bblock@mblawfirm.com

*Attorneys for Top Experience Company LLC d/b/a We Pay Cost LLC*

Dated: March 7, 2026

## TABLE OF CONTENTS


RELEVANT FACTUAL BACKGROUND ....................................................................... 1

A. The Predicate for Top's Entitlement to Attorneys' Fees and Costs. .................................. 1

B. Top's Efforts to Avoid Motion Practice. ................................................................ 1

LEGAL ARGUMENT ........................................................................................ 4

I. TOP IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS INCURRED IN BRINGING MR. FELDMAN'S CONDUCT TO THE COURT'S ATTENTION......... 4

A. The Applicable Legal Standard Governing an Award of Fees.................................... 5

II. THE HOURLY RATES FOR TOP'S COUNSEL ARE REASONABLE.......................... 7

A. Lead Counsel's Rate of $575 Per Hour is Reasonable. ............................................... 8

B. A Partner's Rate of $575 Per Hour is Reasonable..................................................... 10

III. THE NUMBER OF HOURS EXPENDED IN CONNECTION WITH THE MOTION ARE REASONABLE. .......................................................................................... 10

A. The Time Billed for Bringing Mr. Feldman's Conduct to the Attention of the Court is Reasonable ............................................................................................ 10

B. The Time Billed for the Evidentiary Hearing and Related Tasks is Reasonable. ....... 11

C. In Evaluating a Few Award, the Relevant Inquiry is the Attorneys' Fees Reasonably Incurred, Not the Fees Billed to a Client........................................................ 12

D. Blocked Billed Entries, to the Extend they Even Exist, are Permissible..................... 14

E. The Time Billed for the Present Fee Application is Appropriate and Reasonable. .... 15

IV. THE COSTS TOP HAS INCURRED ARE REASONABLE AND RECOVERABLE. ... 17

CONCLUSION ............................................................................................... 17




4912-5006-4533, v. 3

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barbour v. City of White Plains*,
788 F. Supp. 2d 216 (S.D.N.Y. 2011), *aff'd*, 700 F.3d 631 (2d Cir. 2012) ..............................16

*Bridges v. Eastman Kodak Co.*,
1996 WL 47304 (S.D.N.Y. Feb. 6, 1996), *aff'd*, 102 F.3d 56 (2d Cir. 1996) ..............................16

*Carrington v. Graden*,
No. 18-cv-4609, 2020 WL 5758916 (S.D.N.Y. Sept. 28, 2020) (Failla, J.) ..............................18

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
342 F.R.D. 84 (S.D.N.Y. 2022) ..............................15

*Ceglia v. Zuckerberg*,
No. 10-cv-00569A F, 2013 WL 2535849, at *5 (W.D.N.Y. June 10, 2013) ..............................17

*Chambless v. Masters*,
885 F.2d 1053 (2d Cir. 1989) ..............................17

*Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*,
No. 18-cv-4437, 2021 WL 1549916 (S.D.N.Y. Apr. 20, 2021) ..............................17

*Commissions Import Export S.A. v. Republic of the Congo*,
No. 19-misc-195, 2021 WL 4991716 (S.D.N.Y. Oct. 27, 2021) ..............................18

*Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*,
291 F. Supp. 3d 554 (S.D.N.Y. 2018) ..............................9

*Huzhou Chuangtai Rongyuan Inv. Mgt. Partn. v. Qin*,
No. 21-cv-9221, 2024 WL 965558 (S.D.N.Y. Mar. 5, 2024) (Failla, J.) ..............................17

*Knox v. John Varvatos Enters. Inc.*,
No. 17-cv-772, 2021 WL 608345 (S.D.N.Y. Feb. 17, 2021) ..............................7

*L.J. v. New York City Dep't of Educ.*,
No. 23-cv-07267, 2024 WL 3842083 (S.D.N.Y. Aug. 16, 2024) ..............................18

*LCS Grp. LLC v. Shire LLC*,
383 F. Supp. 3d 274 (S.D.N.Y. 2019) ..............................9, 10

*Liebowitz v. Bandshell Artist Management*,
6 F.4th 267 (2021) ..............................14

*Matal v. Tam*,
582 U.S. 218 (2017)....................10

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
No. 22-cv-1138, 2023 WL 4422495 (S.D.N.Y. July 10, 2023)....................10, 11

*Medina v. Buther*,
No. 15-cv-1955, 2019 WL 4370239 (S.D.N.Y. Sept. 12, 2019)....................7, 9

*Murray v. UBS Securities, LLC*,
No. 14-cv-927, 2020 WL 7384722 (S.D.N.Y. Dec. 16, 2020) (Failla, J.)....................17

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983)....................7

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
No. 99-cv-10175, 2022 WL 1026577 (S.D.N.Y. Apr. 6, 2022)....................*passim*

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
No. 99-cv-10175, 2025 WL 3012879 (S.D.N.Y. Oct. 28, 2025)....................9, 11

*Ransmeier v. Mariani*,
718 F.3d 64 (2d Cir. 2013)....................5

*River Light V, L.P. v. Lin & J Int'l, Inc.*,
2015 WL 3916271 (S.D.N.Y. June 25, 2015)....................16

*Sid Bernstein Presents, LLC v. Apple Corps Ltd.*,
No. 16-cv-7084, 2018 WL 3300688 (S.D.N.Y. Jan. 25, 2018)....................10

*Vista Outdoor Inc. v. Reeves Fam. Tr.*,
No. 16-cv-5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018)....................16

**Statutes**

28 U.S.C. § 1927....................*passim*

**Court Rules**

Fed. R. Civ. P. 11(b)....................5

Fed. R. Civ. P. 11(c)....................5

Fed. R. Civ. P. 11(c)(2)....................6

Fed. R. Civ. P. 11(c)(4)....................6

Fed. R. Civ. P. 67 ....................................................................................................................3

Local Civil Rule 67.1 ...............................................................................................................3

Pursuant to the Court's Opinion and Order dated February 5, 2026, ("Order"), Top Experience Company LLC d/b/a We Pay Cost LLC, ("Top") submits this memorandum of law in support of recovering its reasonable attorneys' fees and costs pursuant to Fed. R. Civ. P. 11(b), 28 U.S.C. § 1927 and/or the Court's inherent authority, arising from the sanctions awarded by this Court in connection with the conduct of attorney Steven A. Feldman, Esq. ("Mr. Feldman") as further set forth within the Order. (*See generally,* ECF 227).

As further explained below, it is well-settled that Top is entitled to its reasonable attorneys' fees and costs in addition to the fees and costs incurred in preparing this fee application, commonly referred to as "fees on fees." Accordingly, Top seeks an award of **$35,822.50** in attorneys' fees and **$996.59** in costs, for a total award of **$36,819.09**.[1]

## RELEVANT FACTUAL BACKGROUND

### A. The Predicate for Top's Entitlement to Attorneys' Fees and Costs.

Top respectfully refers the Court to its Order (ECF 227) as well as Top's prior submission and the documents referred to therein (ECF 158, 158-1) for a complete discussion of the relevant procedural history and salient facts in support of the present motion.

### B. Top's Efforts to Avoid Motion Practice.

Following receipt of the Order, Top contacted Mr. Feldman on Friday, February 13th, 2026, to seek agreement as to the amount of fees due in a good faith effort to avoid the need to proceed with the present fee motion. Top's exploratory email advised Mr. Feldman that the fees totaled $15,553.75 as set forth in the invoices attached to that email, but that Top was prepared to

[1] Insofar as the Court permits Mr. Feldman to respond to Top's fee application which, at present, has not been authorized, (ECF 227 at 33), the requested fees and costs associated with reviewing any opposition and preparing a reply memorandum will be added to the aforementioned amount at the time Top files its reply memorandum.

accept $13,998.37 — a 10% discount — payable within thirty days to avoid the present fee motion. (Declaration of Joel G. MacMull dated March 7, 2026 ("MacMull Decl."), Ex. C at 11-12). Top also advised Mr. Feldman that if it was forced into motion practice, it would seek an award of fees incurred to prepare its fee application. (*Id.*). Top gave Mr. Feldman until February 17th to accept its offer. (*Id.*).

Top would, in short order, regret contacting Mr. Feldman. In the ensuing days, Mr. Feldman's emails grew ever more confusing and, ultimately, unintelligible. This began on the morning of February 17th, when Mr. Feldman responded and asked Top to send him "a detailed invoice to review," even though Top's initial email already contained Top's invoices. (*Id.* at 11). This was reminiscent of Mr. Feldman's initial response to Top's original email to him in June 2025 identifying his fake AI-hallucinated citations, wherein he asked Top "to 'share the list of results you compiled'" which the Court found to be "a perplexing request, given that [Top's] initial email had listed each erroneous citation." (ECF 227 at 5). Here too, Top pointed out that incongruity and asked Mr. Feldman to respond by the deadline provided. (*Id.* at 10).

In Mr. Feldman's subsequent email responses, he not only continued to insist on an "a single, proper invoice in standard form" and a "consolidated, itemized fee statement" from Top before he would pay Top, (*id.* at 7, 9), but sought to impose a series of conditions on Top's offer to which Top would not agree. Most notably, these conditions included Mr. Feldman's insistence that he pay Top the amount of fees it was demanding in $1,500 monthly installments over ten-plus months. (*Id.* at 1, 8-9[2]). He insisted that he was "not in a position to pay a single lump sum" and thus he "will not agree to what I cannot do." (*Id.* at 3).

---

[2] Mr. Feldman refused Top's offer of a discount on the amount of fees and costs it was demanding. (*Id.* at 1, 9).

Yet, in a dizzying contradiction, he also informed Top that if it did not agree to his conditions, he would "deposit the full $15,553.75 with the Honorable Judge Failla, as applicable, under FRCP 67 and Local Civil Rule 67.1, or otherwise post a bond." (*Id.* at 6). Mr. Feldman twice again wrote that he would deposit the full amount sought by Top with the Court on February 18th. (*Id.* at 1, 3). In this regard, he responded incomprehensibly as follows:

> If you require security, I remain willing to post a bond or deposit the funds with the Court under FRCP 67, which would fully secure your fees without the need for a public directive should you persist with such vexatious conduct same will be presented pursuant to rule 11. I remind you that the inherent powers of the court are in equity not in law, as such you vitiate your claims for equitable relief, by "moving" the court and at the same time acting capriciously. I am giving you a full and fair safe harbor, well in advance of the so ordered deadline.

(*Id.* at 3). Given the above inexplicable inconsistencies, his awkward or outright misuse of the word "prolixity" in his emails, and his grand rhetorical flourishes like the foregoing passage, the undersigned cannot help but conclude that Mr. Feldman relies on artificial intelligence ("AI") software to draft or revise his email correspondence.[3]

Also perplexing was Mr. Feldman's refusal of Top's requirement that the parties memorialize his agreement to pay the full sum of fees in a consent order resolving the Court's fee motion directive. (*Id.* at 3). Even though he agreed to pay, albeit on his own timeframe, he was adamant that he "will not enter into a public order or a settlement agreement involving a release of any claims." (*Id.*). Of course, this too was bizarre because Top had never suggested anything

---

[3] Other examples supporting this conclusion are the following incomprehensible statements by Mr. Feldman. On February 17, 2026, he wrote: "My offer to pay in full remains. Please advise on your firms' time constraints so I can accommodate any response on a timeline that works for your firm." (*Id.* at 5). And, the next day, he wrote: "My deadline to respond to your contemplated application is 14 days before your own filing deadline of March 7, 2026, as set forth in the Court's February 5, 2026, Opinion and Order." (*Id.* at 1). Needless to say, Top to this day has no idea what Mr. Feldman was referring to in either of these two statements. And their oddity bares all the hallmarks of AI assistance.

about a "settlement involving a release of claims," as Top pointed out in its response. (*Id.* at 2). Mr. Feldman also demanded that he be provided a W-9 before he made payment — another condition with no connection to resolving the attorneys' fees payment order. (*Id.* at 1, 3).

When Top suggested Mr. Feldman and counsel for Top have a telephone call to try to understand Mr. Feldman's proposal and reach resolution, Mr. Feldman refused, stating: "Given that you have previously shared our correspondence with the Court, I prefer to keep all further communications in writing to ensure an accurate record." (*Id.* at 4-5). Mr. Feldman's refusal to speak to Top's counsel was nothing short of galling, considering his prior admonishment of Top's counsel for failing to observe "the New York Rules of Professional Conduct, 'particularly those addressing respect and courtesy among counsel.'" (ECF 227 at 7).

After several rounds of nonsensical emails, Top grew tired of unproductive attempts to resolve the issue of its attorneys' fees and costs without judicial intervention. (*See generally*, MacMull Decl., Ex. C). This motion follows.

## LEGAL ARGUMENT

### I. TOP IS ENTITLED TO ITS ATTORNEYS' FEES AND COSTS INCURRED IN BRINGING MR. FELDMAN'S CONDUCT TO THE COURT'S ATTENTION.

In connection with the raft of fictious cases cited in Mr. Feldman's pre-answer motion to dismiss (ECF 156), as well as his failure to self-report to the Court in a timely manner the errors associated with his briefing, Top sought permission to make a fee application pursuant to either a violation of Fed. R. Civ. P. 11(b) and/or 28 U.S.C. § 1927. (See August 22, 2025, Hearing Tr. ("Tr.") at 95:3-9.) The Court granted Top permission to do so arising from Mr. Feldman's "bad faith" and because he "has multiplied the proceedings in this case unreasonably and vexatiously." (ECF 227 at 33 (citation modified)).



4912-5006-4533, v. 3

Fed. R. Civ. P. 11(b) provides that by presenting a pleading, written motion, or other paper to the Court, an attorney certifies that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose, such as to harass or needlessly increase the cost of litigation; that the claims and other legal contentions are warranted by existing law; and that the factual contentions have evidentiary support. Fed. R. Civ. P. 11(c) provides that the Court may impose sanctions for violations of Rule 11(b). Such sanctions include, but are not limited to, nonmonetary directives; an order to pay a penalty into court; or an order directing payment to the movant of part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation.

Likewise, pursuant to 28 U.S.C. § 1927, federal courts may exercise their inherent authority to sanction an attorney or party that has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). The misconduct of Mr. Feldman in this case more than justifies the reasonable attorneys' fees and costs award sought herein, as the Court already found.

**A. The Applicable Legal Standard Governing an Award of Fees.**

Pursuant to Fed. R. Civ. P. 11(c)(2), when imposing sanctions of reasonable attorneys' fees and related expenses, courts may impose "some or all of the reasonable attorneys' fees and costs." *Kirschner v. Zoning Bd. of Appeals of Incorporated Village of Valley Stream*, 159 F.R.D. 391, 395 (E.D.N.Y. 1995) The primary principle governing Rule 11 sanctions is that they "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir. 1987) ("The case law under Rule 11 also reflects the exercise of discretion to award

only that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule.").

Federal courts in New York consistently apply the lodestar method to calculate the baseline amount for fee awards. *Kirschner*, 159 F.R.D. at 395 ("The amount of such fees and associated disbursements is calculated under the 'lodestar' method"). "A court must begin by calculating the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case, which constitutes a presumptively reasonable fee." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-cv-10175, 2022 WL 1026577, at *1 (S.D.N.Y. Apr. 6, 2022); *see also Perdue v. Kenny A.*, 559 U.S. 542, 551-53 (2010) (discussing lodestar methodology). The same methodology is employed for calculating Section 1927 fee awards. *See, e.g., Vishipco Line v. Charles Schwab & Co.*, No. 02-cv-7823, 2003 WL 1936142, at *1-2 (S.D.N.Y. Apr. 23, 2003).

The relevant inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). "In making these calculations, 'trial courts need not, and indeed should not, become green-eyeshade accountants' and should seek 'to do rough justice, not to achieve auditing perfection.'" *Patsy's Brand, Inc.*, 2022 WL 1026577, at *1 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983); *see also Medina v. Buther*, No. 15-cv-1955, 2019 WL 4370239, at *5-8 (S.D.N.Y. Sept. 12, 2019) (discussing methodology of assessment). However, and although done so here, attorney records "need not specify 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments

of each attorney.'" *Medina*, 2019 WL 4370239, at *7 (quoting *U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 477 (S.D.N.Y. 1989), *aff'd*, 887 F.2d 408 (2d Cir. 1989)). The Court that presided over the proceeding is afforded latitude in its assessment, considering "its familiarity with the proceedings." *Id.*; *see also Knox v. John Varvatos Enters. Inc.*, No. 17-cv-772, 2021 WL 608345, at *6 (S.D.N.Y. Feb. 17, 2021) (explaining in assessing reasonableness of fees the court "should look to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties").

Pursuant to the lodestar methodology, Top seeks a total of $35,822.50 in reasonable attorneys' fees incurred in connection with Mr. Feldman's conduct. (MacMull Decl., ¶¶ 2, 11, 14, Ex. A and Ex. B). The services rendered in this matter by Top's counsel is already familiar to the Court, and are substantially documented in the Court's recent decision regarding Mr. Feldman. Counsel's legal services are identified in counsel's contemporaneous time entries in its client invoices annexed as Exhibit A and Exhibit B to the MacMull Decl. and are also categorized in the MacMull Decl. All of the hours spent and fees incurred were necessitated by Mr. Feldman's conduct and the resulting Court proceedings.

## II. THE HOURLY RATES FOR TOP'S COUNSEL ARE REASONABLE.

The hourly rates sought by Top are reasonable. A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). Reasonable hourly rates should be based on the "rate prevailing in the relevant community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Patsy's Brand, Inc.*, 2022 WL 1026577, at *2. Determination of the prevailing market rates may be based on evidence presented or a judge's own

knowledge of hourly rates charged in the community. *Id.* The "community" is generally considered the district where the district court sits. *Arbor Hill*, 522 F.3d at 190. Moreover, "the actual rate an attorney charges paying clients is persuasive evidence of reasonableness," and is "a significant factor," though the rate must still conform to the market. *Medina*, 2019 WL 4370239, at *10; *Patsy's Brand, Inc.*, 2022 WL 1026577, at *2.

Here, Top seeks reasonable hourly rates for each of the two experienced attorneys who performed work in connection with bringing Mr. Feldman's conduct to the Court's attention as set forth in the MacMull Decl., including Top's review of Mr. Feldman's motion to dismiss and subsequent communications with him (ECF 156, 158-1), Top's June 26, 2025, letter to the Court reporting Mr. Feldman's conduct (ECF 158), reviewing the Court's resulting Order to Show Cause and Mr. Feldman's response thereto (ECF 159, 164), Top's resulting letter to the Court identifying yet additional fake case citations in Mr. Feldman's filings (ECF 182), the evidentiary hearing held on August 22, 2025, and the resulting review of the Order (ECF 227). (*See generally*, MacMull Decl. and Ex. A and Ex. B). Top seeks the full value of rates based on case law from this district identifying reasonable hourly rates in this district, as well as the Court's own familiarity with reasonable rates. *LCS Grp. LLC v. Shire LLC*, 383 F. Supp. 3d 274, 278-79 & n.6 (S.D.N.Y. 2019); *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 561 (S.D.N.Y. 2018).

**A. Lead Counsel's Rate of $575 Per Hour is Reasonable.**

As this Court has previously noted, acceptable hourly rates for attorneys practicing in the area of intellectual property in this district are tied to their experience. *See,* e.g., *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-cv-10175, 2025 WL 3012879, at *2-3 (S.D.N.Y. Oct. 28, 2025) (finding 2025 rates for the undersigned counsel, Joel G. MacMull, in the amount of $675 per hour "well

within the range of prevailing market rates for intellectual property litigation in the Southern District of New York"); *Sid Bernstein Presents, LLC v. Apple Corps Ltd.*, No. 16-cv-7084, 2018 WL 3300688, at *8 (S.D.N.Y. Jan. 25, 2018) (finding experienced partner's $630 hourly rate charged in this intellectual property action was reasonable); *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22-cv-1138, 2023 WL 4422495, at *3 (S.D.N.Y. July 10, 2023) (finding partners' hourly rate of $650 to be reasonable because it is within the range of hourly rates approved in this district for partners at New York City law firms involved in intellectual property cases, citing *Latin Am. Music Co., Inc. v. Spanish Broadcasting System, Inc.*, No. 13-cv-1526, 2020 WL 2848232, at *6 (S.D.N.Y. June 1, 2020) ("[C]ourts in this district have generally found hourly rates of $400 to roughly $750 to be appropriate for partners in copyright and intellectual property cases . . . .") (collecting cases)); *LCS Grp. LLC*, 383 F. Supp. 3d 274, 279-80 & n.6 (finding lead partner's discounted rate of $868 per hour to be reasonable in this district in 2019).

Top's lead counsel, Joel MacMull, is a Partner with the law firm of Mandelbaum Barrett PC. (MacMull Decl., ¶¶ 1, 4). Mr. MacMull has been practicing law since 2005 and has tried to verdict and judgment numerous trademark cases across the country, and was a member of the three-attorney team who prevailed before the U.S. Supreme Court in *Matal v. Tam*, 582 U.S. 218 (2017), a landmark case concerning the intersection of the Lanham Act and Free Speech Clause of the First Amendment. (*Id.* at ¶¶ 4-5.) Given Mr. MacMull's breadth and years of experience, his rate of $575 per hour in this case, which represents a significantly discounted rate that was provided to Top, is more than reasonable within the Southern District of New York as demonstrated by the foregoing authorities. *See, e.g.*, *Patsy's Brand, Inc.*, 2025 WL 3012879, at *2-3 (approving Mr. MacMull's 2025 full hourly rate of $675 to be reasonable).

### B. A Partner's Rate of $575 Per Hour is Reasonable.

Attorney Brian Block is a Partner whose hourly rate on this matter is $575 per hour. (MacMull Decl., ¶¶ 8-10). He has been practicing law since 2014 and has been a Partner with the firm since 2022. (*Id.*). Mr. Block is accomplished in his own right, having served for a year as a Law Clerk to Justice Anne M. Patterson of the Supreme Court of New Jersey, the State of New Jersey's highest court, from 2014-2015. (*Id.*, ¶ 8). Mr. Block has been in private practice with Mandelbaum Barret PC for more than ten years, wherein he has devoted his time almost exclusively to complex commercial matters in state and federal trial and appellate courts. (*Id.*) Moreover, Mr. Block was admitted to this Court in January 2025. (*Id.*).

Accordingly, Mr. Block's hourly rates are reasonable in this judicial district, (*id.* ¶ 9), as demonstrated by the case law from within this district set forth above. *See, e.g.*, *Patsy's Brand, Inc.*, 2025 WL 3012879, at *2-3 (likewise finding Mr. Block's 2025 hourly rate of $625 to be "well within the range of prevailing market rates for intellectual property litigation in the Southern District of New York"); *McKenzie-Morris,* 2023 WL 4422495, at *3 (similar).

## III. THE NUMBER OF HOURS EXPENDED IN CONNECTION WITH THE MOTION ARE REASONABLE.

### A. The Time Billed for Bringing Mr. Feldman's Conduct to the Attention of the Court is Reasonable.

Top's counsel billed approximately 25 hours to investigate Mr. Feldman's briefs, research, and prepare its correspondence with the Court and with Mr. Feldman, and to attend the resulting evidentiary hearing in August 2025. (MacMull Decl., Ex. A). This is in addition to Top's counsel's review of the Court's Order and its award of attorneys' fees, Top's correspondence with Mr. Feldman following issuance of the Order, and the fees incurred in preparing the present motion, which amounts to 34.6 hours and $19,895 in fees. (MacMull Decl., Ex. B).

Given the work involved, the relatively minimal amount of time expended is reasonable. Top's correspondence with the Court and with Mr. Feldman throughout has all been thoroughly researched, relying on actual authorities. (ECF 158, 158-1; MacMull Decl., Ex. A and Ex. B).

Of course, Top's correspondence with Mr. Feldman and the Court only became necessary because Mr. Feldman engaged in the wrongful conduct discussed at length in the Order. (*See generally,* ECF 227). These undertakings could have been avoided altogether had Mr. Feldman simply conducted himself in accordance with his responsibilities pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and New York's Rules of Professional Conduct. (ECF 158, 158-1, ECF 227 at 33; Tr. at 95:3-9).

Mr. Feldman should not now be heard to complain about the legal work that his own wayward conduct necessitated. Thus, the amount of time expended to address the factual absurdities and legal issues associated with Mr. Feldman's conduct is reasonable.

**B. The Time Billed for the Evidentiary Hearing and Related Tasks is Reasonable.**

Arising from Mr. Feldman's overwrought prose in responding to the Court's Order to Show Cause, an evidentiary hearing became necessary to elicit the obvious: that Mr. Feldman had repeatedly and improperly relied on artificial intelligence tools and did not read the cases he cited in preparing various submissions filed with the Court. (*See generally*, ECF 164, 169, 185, 227). The Court, in turn, ordered Top to appear at the evidentiary hearing. (ECF 169).

Top's counsel billed a total of approximately 15 hours in preparing for and appearing at the evidentiary hearing in this matter on August 22, 2025. (MacMull Decl., Ex. A). The hours expended in connection with these tasks are reasonable.

In preparing for the hearing date, Top's counsel was required to review: (i) the submissions made by it and Mr. Feldman; and (ii) the Court's Order to Show Cause and resulting orders concerning the issue of Mr. Feldman's candor. (ECF 158, 158-1, 159, 164, 185).

Of course, following the hearing too, additional attorneys' fees have been incurred. Top reviewed the Order awarding attorneys' fees and, thereafter, engaged in what Mr. Feldman caused to become a protracted effort to dispose of the need to file the present motion. (ECF 227; MacMull Decl., Ex. C and the Relevant Fact Section, *supra*.).

Again, the foregoing work was only made necessary by Mr. Feldman's failure to do what he was obligated to do under the Rules, which was then made worse by his failure to take ownership of his improper conduct, rather than, as was the case, his perpetuation of a false narrative that was so clearly at odds with the record evidence. Accordingly, the amount of time billed for the evidentiary hearing and the resulting tasks is eminently reasonable.

### C. In Evaluating a Few Award, the Relevant Inquiry is the Attorneys' Fees Reasonably Incurred, Not the Fees Billed to a Client.

If permitted to oppose this motion, it is anticipated that Mr. Feldman will argue that because counsel for Top "no charged" its client for most of the time entries related to his misconduct, Top is not entitled to recover the full value of its attorneys' fees. (MacMull Decl., Ex. C at 3). Not so.

Courts in New York consistently award attorneys' fees under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 even where the client was not charged for legal services. The Second Circuit definitively established in *Liebowitz v. Bandshell Artist Management*, 6 F.4th 267 (2021), that under 28 U.S.C. § 1927 and the court's inherent powers, "attorney's fees reasonably incurred" refers to

the reasonable value of the work performed by counsel because of the sanctioned conduct, rather than the fees billed to the client. *Liebowitz*, 6 F.4th at 286-87. The Second Circuit in *Liebowitz* wrote:

> [W]e hold that neither the *pro bono* nature of Bandshell's representation nor Bandshell's agreement, as part of the stipulated settlement, not to accept any fees is a barrier to a sanction of attorney's fees pursuant to a district court's inherent powers. Such sanctions still serve to "vindicat[e] judicial authority" even when the fees are not reflected on a client's bill. *See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021) (noting that monetary sanctions pursuant to inherent power serve not only to compensate wronged parties but also to vindicate the court's authority). Even where the opposing party, as here, has secured *pro bono* representation, sanctions of attorney's fees still hold counsel liable for unnecessarily consuming judicial and attorney resources. And while precedent dictates that a district court awarding attorney's fees must ensure the fee is reasonable, this does not yoke the district court's ability to protect the integrity of its proceedings to the details of the billing arrangement between the opposing party and its lawyers. We therefore hold that attorney's fees calculated based on the work performed by Bandshell's lawyers constituted an appropriate measure of sanction under the district court's inherent powers.
>
> For similar reasons, we conclude that Bandshell's *pro bono* representation was no barrier to sanctions under 28 U.S.C. § 1927. The subject of § 1927's prohibition is attorneys who engage in misconduct, and its scope is not limited by the manner in which opposing counsel represents clients. *See Oliveri*, 803 F.2d at 1273 ("[A]wards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both."). To condition liability under this Section based on the *pro bono* or compensated nature of the representation of the opposing party would strip the Section of its deterrent power in an important class of cases.
>
> Section 1927's reference to attorney's fees that are "reasonably incurred" imposes no barrier to our interpretation. We find persuasive the Tenth Circuit's conclusion that the use of such a phrase does not restrict fees to those actually charged to the client. *See Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 681–82 (10th Cir. 2012) (discussing attorney-fee sanctions pursuant to Rule 37). Accordingly, we hold that, as used in § 1927, "attorney's fees reasonably incurred" refers to the reasonable value of the work reasonably performed by opposing counsel because of the sanctioned conduct, rather than the fee billed to the client. *See id.* at 679 ("[A]n 'attorney fee' arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services."). Thus, a § 1927 award of attorney's fees remains appropriate even when a party is being represented by counsel *pro bono*.

*Id.*; *see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.,* 342 F.R.D. 84, 90 (S.D.N.Y. 2022) (finding unavailing defendants' argument that the recovery of attorney's fees be limited to fees actually paid) (quoting *Usherson v. Bandshell Artist Mgmt.*, No. 19-cv-6368, 2020 WL 3483661, at *20 (S.D.N.Y. June 26, 2020) (stating "courts have pegged sanctions to attorney's fees and costs even where the opposing counsel did not actually receive fees.")).

Accordingly, although counsel for Top did not charge its client for the balance of the work it performed in raising Mr. Feldman's misconduct with the Court, or the resulting tasks that grew from that effort, counsel's election not to bill Top for the work it incurred is not, as a matter of law, a bar to Top's recovery of reasonable attorneys' fees and costs in connection with this motion.

**D. Blocked Billed Entries, to the Extend they Even Exist, are Permissible.**

It is also anticipated that Mr. Feldman will argue that because Top's billing entries are comprised of impermissible "block billing," Top is not entitled to recover the full value of the attorneys' fees it seeks. (MacMull Decl., Ex. A and Ex. B). Here too, such an argument, should Mr. Feldman seek to advance it, is also meritless for at least a few reasons.

First, as an initial matter, "there is no *per se* rule against block billing." *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16-cv-5766, 2018 WL 3104631, at *8 (S.D.N.Y. May 24, 2018) (citing *Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999)). Rather, block billing is acceptable where "the entries are not so vague as to frustrate review." *River Light V, L.P. v. Lin & J Int'l, Inc.*, 2015 WL 3916271, at *13 (S.D.N.Y. June 25, 2015) (citation omitted). "Plaintiffs need not describe in meticulous detail the particularities of every task." *Bridges v. Eastman Kodak Co.*, 1996 WL 47304, at *5 (S.D.N.Y. Feb. 6, 1996), *aff'd*, 102 F.3d 56 (2d Cir. 1996). The detail Mr. Feldman presumably

demands would require redactions for privilege and work product. (MacMull Decl., Ex. A and Ex. B).

Second, there is nothing vague about Top's counsel's billing entries. Billing narratives that concern "[m]eeting and attention to letter to the Court re: Feldman's failure to withdraw his brief," "[r]ead and assessed Judge Failla order re: Feldman AI issue; [c]all with JMacMull," or "review of record in connection with the Court's Order to Show Cause re: Feldman's fictitious citations, etc." adequately maintain privilege while allowing the Court to evaluate "the reasonableness of the work performed." *River Light*, 2015 WL 3916271, at *13; *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 224 (S.D.N.Y. 2011) (finding "no reason to believe that any [trial preparation tasks] were unnecessary" where tasks were "necessary to trial preparation"), *aff'd*, 700 F.3d 631 (2d Cir. 2012). And it is the Court having "tried" the issue of Mr. Feldman's conduct, not Mr. Feldman, that "has the best vantage point from which to assess the skill of the attorneys and the amount of time reasonably needed to litigate [an issue]." *Chambless v. Masters*, 885 F.2d 1053, 1057-58 (2d Cir. 1989).

Accordingly, any "block-billing" by Top's counsel, to the extent that it can even credibly be said to exist here, is not a bar to any portion of Top's recovery of attorneys' fees.

**E. The Time Billed for the Present Fee Application is Appropriate and Reasonable.**

Courts in the Second Circuit routinely award fees incurred in connection with fee applications. *See, e.g.*, *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, No. 18-cv-4437, 2021 WL 1549916, at *8 (S.D.N.Y. Apr. 20, 2021) ("Since [the plaintiff] was directed to submit a fee application in order to document those expenses, it would defeat the purpose of the award to require it to do so at its own expense."); *Ceglia v. Zuckerberg*, No. 10-cv-00569, 2013 WL 2535849,

at *5 (W.D.N.Y. June 10, 2013) ("A party awarded attorney's fees is also entitled to compensation 'for time reasonably spent in preparing and defending' the fee application." (quoting *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999)); *see also Huzhou Chuangtai Rongyuan Inv. Mgt. Partn. v. Qin,* No. 21-cv-9221, 2024 WL 965558, at *10 (S.D.N.Y. Mar. 5, 2024) (Failla, J.) (this Court acknowledging petitioner's entitlement to "fees on fees," even though reimbursement associated with preparing a fee application was not part of the relief sought); *Murray v. UBS Securities, LLC*, No. 14-cv-927, 2020 WL 7384722, at *28 (S.D.N.Y. Dec. 16, 2020) (Failla, J.) (citing *Weyant*, 198 F.3d at 316) (this Court permitting the recovery of fees associated with preparing a fee application, to the extent it was reasonable); *Carrington v. Graden*, No. 18-cv-4609, 2020 WL 5758916, at *11 (S.D.N.Y. Sept. 28, 2020) (Failla, J.) (same).[4]

Courts in this district have held that up to forty hours can be reasonably be spent on litigating a fee application. *L.J. v. New York City Dep't of Educ.*, No. 23-cv-07267, 2024 WL 3842083, at *8 (S.D.N.Y. Aug. 16, 2024) (collecting cases which generally hold that around forty hours is reasonable to litigate a fee petition).

Top has thus far billed approximately 34.6 hours on the present fee application and incurred approximately $19,895 in attorneys' fees. (MacMull Decl., Ex. B). This amount is reasonable.

If Mr. Feldman is entitled to contest Top's fee application, Top will supplement its fee application to reflect the total attorneys' fees sought in connection with this fee application to

[4] In *Commissions Import Export S.A. v. Republic of the Congo,* No. 19-misc-195, 2021 WL 4991716 (S.D.N.Y. Oct. 27, 2021), this Court denied petitioner's fees associated with preparing its fee application. *Id.* at *7. It did so, however, because petitioner failed to contact respondents before filing its fee application, which was contrary to the Court's instruction. *Id.* Here, in addition to no similar instruction being issued by this Court, Top nevertheless took steps to resolve the issue of its fees and costs without judicial intervention as detailed above. *See* the Relevant Fact Section, *supra*. Accordingly, an award to Top of its "fees on fees" is substantially justified here.

include those fees incurred in connection with reviewing Mr. Feldman's opposition and preparing Top's forthcoming reply submission.

Based on the foregoing, as well as that set forth in the MacMull Decl. and the exhibits annexed thereto, Top is entitled to its reasonable attorneys' fees of $19,895 incurred to date in connection with the present motion.

## IV. THE COSTS TOP HAS INCURRED ARE REASONABLE AND RECOVERABLE.

Top has incurred reasonable costs as a direct result of preparing the instant motion. Top seeks $996.59 in costs. (MacMull Decl., ¶ 13, Ex. B). The costs Top incurred in connection with this motion are $996.59 in Westlaw legal research fees. The foregoing costs are recoverable. *Patsy's Brand, Inc.*, 2022 WL 1026577, at *5 (citing *Inter-Am. Dev. Bank v. Venti S.A.*, No. 15-cv-4063, 2016 WL 642381, at *8 (S.D.N.Y. Feb. 17, 2016) (legal research costs compensable if charged to the requesting party)). The amounts sought for these recoverable costs were necessarily incurred and are reasonable.

## CONCLUSION

The Order set forth in detail that Mr. Feldman's repeated blind reliance on artificial intelligence tools fell well short of the duties imposed upon him as counsel appearing before this Court. (*See generally*, ECF 227). Accordingly, Mr. Feldman should be held to reimburse Top's reasonable attorneys' fees and costs incurred in policing his bad faith conduct. (*Id.* at 30). Anything less than full reimbursement would be an injustice and would reward Mr. Feldman for his intransigence, including that which undergirds his communications with Top's counsel from February 13 through 18, 2026. (MacMull Decl., Ex. C.)

For the foregoing reasons, Top respectfully requests that the Court enter an award of **$35,822.50** in attorneys' fees and **$996.59** in costs, for a total award of **$36,819.09** to be paid to

Top within 30 days of the Court's order (to be later supplemented by additional fees and costs incurred after this submission, should the Court permit Mr. Feldman to oppose or otherwise file a response to this memorandum).

Respectfully submitted,

Joel G. MacMull
Brian M. Block
**MANDELBAUM BARRETT PC**
570 Lexington Avenue, 21st Floor
New York, New York 10022
T: (212) 776-1834
jmacmull@mblawfirm.com
bblock@mblawfirm.com

*Attorneys for Top Experience Company LLC d/b/a We Pay Cost LLC*

Dated: March 7, 2026

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limitation set forth in § 4.B. of Your Honor's Individual Rules of Practice in Civil Cases, because excluding the parts of the document exempted by this Rule, this document contains 5862 words. In determining the number of words, I have relied on the "word count" feature of Microsoft Office Word 2021, which was used to prepare this document.

This document complies with the typeface and type style requirements of the foregoing Rule, because this document has been prepared in proportionally spaced typeface using Microsoft Office Word 2021 in Equity A 12.