S UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLYCATCHER CORP. LTD and FLYCATCHER TOYS, INC.,

Plaintiffs,

-v.-

AFFABLE AVENUE LLC, *doing business as* CJ DIST; OZMOS COMPANY LLC; EYTAN GROSSMAN, *doing business as* EYG DEALS; CREATIVE REWARDS INC.; JOSHUA CHAVEZ, *doing business as* ONESTOPFASTSHOP; TOP EXPERIENCE COMPANY LLC, *doing business as* WE PAY COST LLC; PRETTY PRINCESS LLC, *doing business as* NORVI; AYANEE LLC; FORTUNA KG LLC, *doing business as* FORTUNAKG; JAXSON MANAGEMENT LLC; JOAN ALEXANDER SORIANO, *doing business as* PRIMECHOICEMART; A WAHABI CORPORATION, *doing business as* MCPROFITS; MODA ORIGINAL LLC; VALLEY BODEGA WHOLESALE INC.; EYAD WAHBY; SAM SHAMLOO; S&N GLOBAL SUPPLY INC.; VALUE VALLEY WHOLESALE LLC; ADAM HAMIDA; and JOHN DOES 1 to 25,

Defendants.

24 Civ. 9429 (KPF)

# MEMORANDUM OF LAW
## IN OPPOSITION TO ATTORNEYS' FEES APPLICATION

**LAW OFFICES OF ELLIOT J. BLUMENTHAL, PLLC**

**483 Chestnut Street**
**Cedarhurst, New York 11516**
***Attorney for Steven A. Feldman, Esq.***
**Telephone (516) 295-0903**
**E-mail:** ***Elliot@eblumenthallaw.com***

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………...1

ARGUMENT……………………………………………………………………………….2

POINT I:

THE STANDARD FOR THE AWARD OF ATTORNEY'S FEES AS A SANCTION..……………………………………………………………………………..2

POINT II:

MANDELBAUM BARRETT'S BILLING ENTRIES SHOW UNNECESSARY, REDUNDANT, AND EXCESSIVE FEES………………………………………………4

A. Mandelbaum Barrett is seeking excessive fees.……………………………………..4

B. Mandelbaum Barrett is seeking excessive costs……………………………………..8

POINT III:

OTHER FACTORS THE COURT SHOULD CONSIDER …………………………………8

CONCLUSION………………………………………………………………………………10

## TABLE OF AUTHORITIES

**Cases**:

*Kirschner v. Zoning Bd. of Appeals of Incorporated Village of Valley Stream*, 159 F.R.D. 391, 395 (E.D.N.Y. 1995)……………………………………………………………………………3,4
*Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 123 (2nd Cir. 1987)…………………..3
*Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2nd Cir. 1999)………………………………...3,4
*Hensley v. Eckerhart,* 461 U.S. 424, 435–36, 103 S.Ct. 1933, 1940–41, 76 L.Ed.2d 40 (1983)…4
*Dimopoulou v. First Unum Life Insurance Company*, 2021 WL 406741, * 4 (S.D.N.Y. 2021)….6
*Rosso v Pi Mgt. Assoc., L.L.C.*, 2006 WL 1227671, *2 (S.D.N.Y. 2006)………………………...6
*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2025 WL 3012879 (S.D.N.Y. 2025)…………………..7
*L.J. v. New York City Department of Education*, 2024 WL 3842083, *8 (S.D.N.Y. 2024)………7
*B.B. v. N.Y.C. Dep't of Educ.*, 2018 WL 1229732, at *3 (S.D.N.Y. 2018)……………………….7
*M.M. v. New York City Department of Education*, 2022 WL 3043218, *10 (S.D.N.Y. 2022)…...7
*Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2nd Cir. 1986)……………………………………….8
*On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed. App. 448, 452 (2nd Cir. 2009)…...9
*Caisse Nationale de Credit Agricole–CNCA, N.Y. Branch v. Valcorp, Inc.,* 28 F.3d 259, 266 (2d Cir.1994)…………………………………………………………………………………9
*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 369 F.3d 91, 98 (2d Cir.2004)…………………………………………………………………………………9
*Bonded Life Fund, LLC v. AXA Equit. Life Ins. Co.*, 2014 WL 1329234, *3 (S.D.N.Y. 2014)…10

**Regulations**

ABA Formal Ethics Opinion 93-379…...........................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLYCATCHER CORP. LTD and FLYCATCHER TOYS, INC.,

Plaintiffs,

-v.-

AFFABLE AVENUE LLC, *doing business as* CJ DIST; OZMOS COMPANY LLC; EYTAN GROSSMAN, *doing business as* EYG DEALS; CREATIVE REWARDS INC.; JOSHUA CHAVEZ, *doing business as* ONESTOPFASTSHOP; TOP EXPERIENCE COMPANY LLC, *doing business as* WE PAY COST LLC; PRETTY PRINCESS LLC, *doing business as* NORVI; AYANEE LLC; FORTUNA KG LLC, *doing business as* FORTUNAKG; JAXSON MANAGEMENT LLC; JOAN ALEXANDER SORIANO, *doing business as* PRIMECHOICEMART; A WAHABI CORPORATION, *doing business as* MCPROFITS; MODA ORIGINAL LLC; VALLEY BODEGA WHOLESALE INC.; EYAD WAHBY; SAM SHAMLOO; S&N GLOBAL SUPPLY INC.; VALUE VALLEY WHOLESALE LLC; ADAM HAMIDA; and JOHN DOES 1 to 25,

Defendants.

24 Civ. 9429 (KPF)

**MEMORANDUM OF LAW**
**<u>IN OPPOSITION TO ATTORNEYS' FEES APPLICATION</u>**

## **<u>PRELIMINARY STATEMENT</u>**

Steven A. Feldman, Esq. by and through his undersigned counsel hereby submits this Memorandum of Law in partial Opposition to the Fee Application submitted by Joel G. MacMull, Esq. of Mandelbaum Barrett PC counsel for Top Experience Company LLC d/b/a We Pay Cost LLC ("Top Experience"). The fee application was authorized by the Court in its February 5, 2026 Opinion and Order.

The Court is intimately familiar with the background and facts that have led up to this fee application. The purpose of this Memorandum of Law is not to minimize or excuse Mr. Feldman's conduct in any way. Mr. Feldman's accepts responsibility for his mistakes. However, the grant of attorneys' fees is not unlimited. It is black letter law that attorneys' fees must be reasonable. Mandelbaum Barrett seeks attorneys' fees in the amount of $35,822.50 plus costs in the amount of $996.59. Joel G. MacMull, Esq., the primary attorney handling this case for the law firm, states that $19,895 of that amount constitute "fees on fees", *i.e.*, the time to draft and file the instant application. It is our contention herein that Mr. MacMull's application goes beyond the reasonable standard and is overreaching in several ways. First, the underlying issue (Mr. Feldman's citations in his motion to dismiss the Plaintiff's Complaint) did not effect Top Experience and thus, much of what Mandelbaum Barrett billed for was not necessary. Second, the billing appears to include excessive time spent by senior attorneys on administrative and basic tasks that could, and should, have been handled by less expensive employees in a large law firm. And third, the Court should consider the purpose of the sanction and the ability of Mr. Feldman to pay what is requested.

## ARGUMENT

## POINT I

### THE STANDARD FOR THE AWARD OF ATTORNEY'S FEES AS A SANCTION

Although counsel accurately states the basic standard under the applicable law for the granting of attorneys' fees (*see* pgs. 5-6 of Mandelbaum Barret's Memorandum of Law, ECF Doc. No. 245) the application of that standard to the facts in this case should result in a vastly different outcome than the one sought by Mandelbaum Barrett. "[T]he primary principle in

imposing sanctions is that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *Kirschner v. Zoning Bd. of Appeals of Incorporated Village of Valley Stream*, 159 F.R.D. 391, 395 (E.D.N.Y. 1995). Mr. Feldman has been publicly embarrassed, criticized, and sanctioned by the Court. His client has suffered a default judgment. I humbly represent that Mr. Feldman has learned his lesson and will not make the same mistake again. This issue has been reported in the legal press and attorneys are certainly well-aware of the consequences of using AI for legal research and the need to check and confirm the accuracy of citations. The exact amount of the fees awarded as a sanction is arguably secondary in terms of a deterrent effect. It is mainly the overall consequences including the actual sanction itself that serves to deter.

Mandelbaum Barret's application is based upon the lodestar method of calculating fees. Courts have broad discretion in analyzing the billing to determine whether the fees requested are reasonable and are not more severe than necessary. In *Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 123 (2nd Cir. 1987) the court agreed with the District Court's "general conclusion that a fee substantially less than the lodestar amount is permissible." It is our contention here that a fee substantially less than what Mandelbaum Barrett submitted is permissible and appropriate.

The Second Circuit has held that "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2nd Cir. 1999). As will be explained below, this fee application includes excessive, redundant and otherwise unnecessary hours.

The context of the fee award is also important. As the court noted in *Kirschner, supra* at 397, "In calculating an award of attorneys' fees in a civil case, the District Court should focus 'on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.... The most critical factor is the degree of success obtained.'" *Hensley v. Eckerhart,* 461 U.S. 424, 435–36, 103 S.Ct. 1933, 1940–41, 76 L.Ed.2d 40 (1983). The sanctionable conduct that Mandelbaum Barrett reported had no effect on their client and the relief granted by the Court, a default judgment against Mr. Feldman's client, had no significance to Top Experience. Mr. MacMull claims that he had an ethical obligation to report Mr. Feldman's conduct to the Court. Accepting that as true, there was little more he needed to since it would have no effect on his client.

## POINT II

### MANDELBAUM BARRETT'S BILLING ENTRIES SHOW UNNECESSARY, REDUNDANT, AND EXCESSIVE FEES

A. Mandelbaum Barrett is seeking excessive fees.

As explained above, the Court's function is not to merely rubber-stamp the fees requested. A close analysis of the billing submitted by Mandelbaum Barrett raises many questions about the propriety of the fee application. On June 26, 2025 both Mr. MacMull and Mr. Block billed significant time, totaling 5.1 hours. The time appears to have been spent on conferring with each other and drafting and filing what was a three-page letter to the Court (ECF Doc. No. 158) notifying the Court of the citation issues discovered in Mr. Feldman's motion to dismiss a week earlier and describing the communications with Mr. Feldman since that time.

There is no case law cited in the letter and it merely requests that the Court determine what the appropriate remedy should be. The time billed for that appears to be excessive.

On July 21, 2025 Mr. Block billed 0.5 hours to read and assess the Court's order that Mr. Feldman and the parties appear on August 14, 2025. The next day Mr. MacMull billed 0.3 hours to review a Law360 article about Mr. Feldman "and email correspondence with team internally." Neither of these entries appear appropriate for a fee application.

On August 13, 2025, Mr. MacMull billed two entries (for 0.3 hours and 0.2 hours) for, *inter alia*, "Attention to courtesy copies of Top Experience's briefing." First, there was no briefing from the Mandelbaum Barrett firm regarding Mr. Feldman at that point. And second, if courtesy copies were being given "attention" that attention did not have to be given by Mr. MacMull, a Partner who is "Chair of the Firm's Intellectual Property & Brand Management and Commercial and Corporate Litigation Practice Groups."[1] A legal assistant or paralegal could have tended to the courtesy copies.

Before the hearing that was subsequently scheduled for August 22, 2025, on August 19 and 21, 2025, Mr. MacMull billed a total of 1.4 hours reviewing correspondence and the record in preparation for the hearing. Mr. MacMull had absolutely no role in the hearing as its purpose was for Mr. Feldman to explain what he had done. That amount of preparation was unnecessary. On the date of the hearing, August 22, 2025, both Mr. MacMull and Mr. Block appeared in court and they billed a combined 12.5 hours. Mr. Block said nothing of substance on the record and Mr. MacMull's only involvement of note was to address the Court's question regarding a common interest privilege and request the instant fee application.[2] Notably, counsel for other

---

[1] *See* https://mblawfirm.com/professionals/joel-g-macmull/.

[2] *See* ECF Doc. No. 223.

defendants appeared virtually by Microsoft Teams. Clearly, it was unnecessary for two partners from Mandelbaum Barrett to appear, whether in person or virtually. Moreover, Mr. MacMull could have appeared via Teams and been able to answer the Court's question and request a fee application in a much more efficient and less expensive way.

After the Court's February 5, 2026 decision, Mr. Block billed 0.8 hours to read and assess the decision and "calendared fee application due date", an apparent administrative act that a partner in the law firm should not be billing for. Mr. MacMull billed 2.3 hours which included 0.9 hours for "Review of Opinions on Motion to Dismiss" and 0.4 hours for "email and IC with B. Block". This fee application should not include any time for reviewing opinions on a motion to dismiss as that is not the subject of the sanction and the fee application.

Mandelbaum Barrett's billing after that consists of considerable time researching and drafting the fee application. All of the research appears to have been done by Mr. MacMull with Mr. Block providing some editing. According to its website, Mandelbaum Barrett has over 150 professionals in seven offices. Mr. MacMull, a Partner who chairs more than one Practice Group within the firm, should not be billing basic legal research for a straightforward fee application. Such billing practices were criticized in *Dimopoulou v. First Unum Life Insurance Company*, 2021 WL 406741, * 4 (S.D.N.Y. 2021) where the court observed that "The detailed time entries submitted by Plaintiff also show that certain tasks, such as research, reviewing cites, and certain drafting tasks were performed by…the most senior attorneys…These could have been delegated to junior attorneys." *See also Rosso v Pi Mgt. Assoc., L.L.C.*, 2006 WL 1227671, *2 (S.D.N.Y. 2006) (quoting *Quaratino supra*, and holding that "a failure to delegate work to junior, less expensive attorneys may be grounds for reducing an award of attorney's fees"). Mandelbaum Barrett's website lists dozens of Associates. Surely, the legal research, to the extent such was

needed for this application, could have been done by a more junior attorney that the Chair of the Commercial and Corporate Litigation Practice Group. Moreover, as is cited in Mandelbaum Barrett's Memorandum of Law, Mr. MacMull and Mr. Block have been involved in fee applications in this District as recently as last year. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2025 WL 3012879 (S.D.N.Y. 2025). Surely legal research was done in that case and there was no need to reinvent the wheel in this case.

The argument on page 16 of the Memorandum of Law that 34.6 hours for this fee application is reasonable based upon a case cited which Mr. MacMull claims cites other cases standing for the proposition that "up to forty hours can be reasonably spent on litigating a fee application" is a very broad and somewhat misleading argument. In *L.J. v. New York City Department of Education*, 2024 WL 3842083, *8 (S.D.N.Y. 2024) the court there cited another case *B.B. v. N.Y.C. Dep't of Educ.*, 2018 WL 1229732, at *3 (S.D.N.Y. 2018) which held that "counsel should not have needed more than 40 hours to litigate fee petition" and then cited to *M.M. v. New York City Department of Education*, 2022 WL 3043218, *10 (S.D.N.Y. 2022) which found that 59.9 hours billed was excessive. There cannot be a bright line rule as to the number of hours that are reasonable. The fee applications in the cases cited by Mr. MacMull were not for sanctions. They were fees that a party was entitled to following the completion of an entire case. In *L.J.*, the attorney fees awarded in the underlying case were for over 200 hours of attorney time. Obviously a fee application in a case like that is going to require more time than for this case where all Mr. MacMull did was identify the false citations and report Mr. Feldman to the Court. It is not a valid comparison and each case needs to be analyzed on its own unique facts and circumstances. Here, the work upon which the fees are being sought was much less extensive than the work involved in litigating an entire case such as in *L.J.* and *B.B.*, *supra*.

B. Mandelbaum Barrett is seeking excessive costs.

Included in the application is $996.59 in Westlaw legal research fees. It is known anecdotally in the legal community that a majority of Westlaw's law firm customers are billed on flat fee subscription packages. When I started my career in 1992, Westlaw and Lexis were billed by the minute or by the search and attorneys had to be quick and efficient in our work. For the past many years, flat fee subscriptions predominate. In billing legal research costs to clients, attorneys must be aware of ABA Formal Ethics Opinion 93-379 which states that an attorney may bill a client for computer research "so long as charges reasonably reflect the lawyer's actual cost." No evidence of that actual cost has been submitted in support of this application.

## POINT III

### OTHER FACTORS THE COURT SHOULD CONSIDER

In *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2nd Cir. 1986) the Second Circuit held that "it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay." In the August 22, 2025 hearing, Mr. Feldman's explanation of how the improper citations came to be used stems from his use of an "affordable" legal research tool and his need for access to free public Lexis or Westlaw at the library. Mr. Feldman is a solo practitioner. The amount of fees sought in this application is beyond his ability to pay. As can be seen from the emails attached as an Exhibit by Mr. MacMull, Mr. Feldman was trying to work out a payment plan with Mr. MacMull for $15,553.75. He cannot be expected to be able to pay more than twice that amount that is being sought herein. If the Court requires additional financial information from Mr. Feldman, such

information can be submitted confidentially to the Court. We respectfully request that the Court take into account Mr. Feldman's ability to pay in determining the appropriate sanction amount.

Mr. Feldman offered to pay the fees originally requested by Mr. MacMull in installments of $1,500 per month with no questions asked. That offer was rejected and somehow the fees have more than doubled since then. It would be a perversion of justice to allow Mandelbaum Barrett to collect more than double what they claim to have incurred when they could have accepted the offer and been paid over time.[3]

In *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed. App. 448, 452 (2nd Cir. 2009) the Second Circuit held:

> The purpose of a Rule 11 award "is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses." *Caisse Nationale de Credit Agricole–CNCA, N.Y. Branch v. Valcorp, Inc.,* 28 F.3d 259, 266 (2d Cir.1994); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 369 F.3d 91, 98 (2d Cir.2004) (observing that Rule 11 "is not a fee-shifting mechanism").

Considering all of the factors involved in this matter, the purpose of the sanctions imposed can be accomplished with a fee award significantly lower than what Mandelbaum Barrett has sought. In fact, a grant of the full amount requested would incentivize parties to run up outrageous bills when fee applications are made.

[3] This is not to concede that $15,553.75 is an appropriate amount. Mr. Feldman was trying to settle the issue and avoid this motion. As explained above, we take exception to the billing that generated the $15,553.75 amount.

## CONCLUSION

The mistakes made by Mr. Feldman have had a tremendous impact on his life, both professional and personal. We understand the need for the sanctions imposed and the propriety of the award of attorneys' fees. However, we respectfully contend that the amount sought by Mandelbaum Barrett is inflated. The billing is exaggerated, excessive, duplicative, and unnecessary. As was found in *Bonded Life Fund, LLC v. AXA Equit. Life Ins. Co.*, 2014 WL 1329234, *3 (S.D.N.Y. 2014) awarding the full amount of fees sought would be more than is necessary to sufficiently deter the offending conduct in the future.

For the reasons stated herein, we respectfully request that the Court award substantially less than what is sought by Mandelbaum Barrett.

Dated: Cedarhurst, New York
April 20, 2026

LAW OFFICES OF ELLIOT J. BLUMENTHAL, PLLC

BY: ______________________________

ELLIOT J. BLUMENTHAL
483 Chestnut Street
Cedarhurst, New York 11516
*Attorney for Steven A. Feldman, Esq.*
Telephone (516) 295-0903
E-mail: Elliot@eblumenthallaw.com