**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FLYCATCHER CORP. LTD. and FLYCATCHER TOYS INC., *Plaintiffs*, *v.* AFFABLE AVENUE LLC, et. al., *Defendants*. | Civil Action No. 24-cv-9429 (KPF) |

**DEFENDANT TOP EXPERIENCE COMPANY LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ATTORNEYS' FEES AND COSTS**

Joel G. MacMull, Esq.
Brian M. Block, Esq.
**MANDELBAUM BARRETT PC**
570 Lexington Avenue, 21st Floor
New York, New York 10022
T: (212) 776-1834
Email: jmacmull@mblawfirm.com
bblock@mblawfirm.com

*Attorneys for Top Experience Company LLC d/b/a We Pay Cost LLC*

Dated: April 27, 2026

## TABLE OF CONTENTS


LEGAL ARGUMENT ....................................................................................................1

I. Mr. Feldman's continued misconduct is solely responsible for the additional fees that Mandelbaum incurred to make this application for attorneys' fees and costs. ......................1

II. Mandelbaum correctly brought Mr. Feldman's misconduct to the Court's attention and necessarily incurred subsequent fees related to his misconduct. ..........................................3

III. The time entries and costs that Mr. Feldman challenges are all reasonable and necessary, save for two minor entries......................................................................................5

IV. The Court should award Top the fees incurred to draft this reply memorandum............... 9

CONCLUSION .........................................................................................................10


## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Billups v. Louisville Mun. Sch. Dist.*,
No. 24-cv-74, 2025 WL 3691871 (N.D. Miss. Dec. 19, 2025) .................................................4

*Brandon v. Kinter*,
No. 13-cv-00939, 2024 WL 4135715 (N.D.N.Y. Sept. 10, 2024).............................................7

*China AI Capital Ltd. v. DLA Piper LLP (US)*,
No. 21-cv-10911, 2025 WL 2466633 (S.D.N.Y. May 22, 2025), 2025 WL 3204368 (S.D.N.Y. Nov. 17, 2025) ...................................................................2, 3, 8

*Dec v. Mullin*,
__F.4th__, 2026 WL 861530 (7th Cir. Mar. 30, 2026) ........................................................4

*Dimopoulou v. First Unum Life Ins. Co.*,
No. 13-cv-07159, 2021 WL 406741 (S.D.N.Y. Feb. 5, 2021) ..................................................7

*Elizondo v. City of Laredo*,
No. 25-cv-50, 2025 WL 2071072 (S.D. Tex. July 23, 2025) ....................................................4

*Flatiron Acquisition Vehicle, LLC v. CSE Mortgage LLC*,
No. 17-cv-8987, 2022 WL 413229 (S.D.N.Y. Feb. 9, 2022).....................................................8

*LA Int'l Corp. v. Prestige Brands Holdings, Inc.*,
168 F.4th 608 (9th Cir. 2026) ....................8

*Li v. Ichiro Sushi, Inc.*,
No. 14-cv-10242, 2022 WL 1137094 (S.D.N.Y. Apr. 16, 2022) ....................9

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983) ....................7

*Ng v. King Henry Realty, Inc.*,
No. 16-cv-0013, 2016 WL 6084074 (S.D.N.Y. Oct. 7, 2016) ....................7

*Noland v. Land of the Free, L.P.*,
336 Cal. Rptr. 3d 897 (Ct. App. 2025) ....................4

*Nuvola LLC v. Wright*,
No. 27-cv-hc-15-3802, 2025 Minn. Dist. LEXIS 5940 (Minn. Dist. Ct. Nov. 21, 2025) ....................4

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
No. 99-cv-10175, 2022 WL 1026577 (S.D.N.Y. Apr. 6, 2022) ....................9

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
No. 99-cv-10175, 2025 WL 3012879 (S.D.N.Y. Oct. 28, 2025) ....................9

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*,
450 F.3d 91 (2d Cir. 2006) ....................8

*Thomas v. City of New York*,
No. 14-cv-7513, 2017 WL 6033532 (E.D.N.Y. Dec. 1, 2017) ....................9

*Wachovia Mortgage, FSB v. Toczek*,
841 F. App'x 267 (2d Cir. 2021) ....................9

**Rules of Professional Conduct**

NY RPC 3.3, 8.3, and 8.4 ....................4

Top submits this reply memorandum of law in further support of its application for attorneys' fees and costs in connection with the Court's Order. (ECF 227).[1] For the reasons set forth below and in Top's opening memorandum, Top is entitled to an award of $42,090 in attorneys' fees and $996.59 in costs, for a total award of **$43,086.59**, which includes the additional attorney time that Top reasonably spent on this reply brief.

As explained below, Mr. Feldman's challenges are meritless and cannot save him from paying Top the substantial fee award that he alone is responsible for.

## LEGAL ARGUMENT

### I. Mr. Feldman's continued misconduct is solely responsible for the additional fees that Mandelbaum incurred to make this application for attorneys' fees and costs.

Mr. Feldman argues that the amount of attorneys' fees that Mandelbaum Barrett PC ("Mandelbaum") incurred to prepare and move for attorneys' fees is excessive and beyond his ability to pay. (Opp. at 10-12). The Court should reject that argument. Mr. Feldman has exactly one person to blame for the additional fees that Mandelbaum incurred: himself. When Mandelbaum reached out to him asking him to agree to pay the discounted figure of $13,998.37 incurred then-to date to avoid fee motion practice, Mr. Feldman declined. (ECF 245 at 6-7). His elliptical and confounding email responses are detailed in Top's opening memorandum and attachments. (ECF 245 at 6-9; ECF 244-3). Instead of simply agreeing to pay the amount and a consent order embodying the resolution, Mr. Feldman said he would only agree either to pay the non-discounted amount of $15,553.77 in ten monthly installments and refused to memorialize the agreement in a consent order, or, in an irreconcilable contradiction, said he would move to deposit the entire non-

[1] All capitalized terms have the same meaning as in Top's opening memorandum. "Opp. at __" refers to Mr. Feldman's Opposition Memorandum (ECF 285) and cites to the ECF header page numbers.

discounted amount of $15,553.75 with the Court. (ECF 245 at 7-8). The Court should reject the notion that it would be a "perversion of justice" to award Mandelbaum the additional fees that Mr. Feldman's own continued inexplicable conduct forced it to incur. (Opp. at 12).

Conspicuously absent from Mr. Feldman's opposition is any denial of Top's charge that his contradictory and confusing email exchanges with Top's counsel were the product of artificial intelligence (AI) integrated into his email. (*Compare* ECF 245 at 8 & n.3, *with* Opp. at 1-13). His silence thus concedes that his emails were AI augmented. Considering that this fee application is the byproduct of Mr. Feldman's misuse of AI, that continued misuse is shocking. But more than that, it underscores how hollow Mr. Feldman's protest is that Mandelbaum seeks additional fees — fees that his email AI use forced it to incur. So, when Mr. Feldman's counsel "humbly represent[s]" that Mr. Feldman learned his lesson from this Court's prior decision and "will not make the same mistake again," (Opp. at 6), it seems he already did, contrary to this representation.

As for the argument that the amount of fees sought is beyond Mr. Feldman's ability to pay, that is incongruous with his statements in his emails to Top's counsel that he would seek to deposit the full $15,553.75 with the Court if Top did not agree to his terms. (ECF 245 at 7-8; 244-3 at 1, 6). Mr. Feldman also presumably hired counsel in exchange for a fee to represent him on this motion, which of course comes as a cost to him. Moreover, his opposition does not provide information to the Court about an inability to pay but rather offers to provide information in the future. (Opp. at 11-12). He was required to provide his proofs with his opposition like any other motion practice. *See China AI Capital Ltd. v. DLA Piper LLP (US)*, No. 21-cv-10911, 2025 WL 2466633, at *12 n.9 (S.D.N.Y. May 22, 2025) (explaining courts will not "reduce a sanction award based on an inability to pay where the entity has not provided adequate documentation to support the claimed financial

duress”), *report and recommendation adopted*, 2025 WL 3204368 (S.D.N.Y. Nov. 17, 2025). Accordingly, the Court should not credit this as a basis to reduce the fee award.

Finally, the converse of Mr. Feldman’s argument about incentives is true. He contends that the purpose of sanctions can be accomplished with a lower award and that a full award would incentivize parties to run up attorney’s fees. (Opp. at 12). That notion is divorced from what occurred here. Mandelbaum had no obligation to reach out to Mr. Feldman to try to resolve this matter consensually. But it did so in good faith. It was only after Mr. Feldman’s irrational terms and refusals, unintelligible responses, and refusal to speak by phone that Mandelbaum was forced to incur more fees to make this application. (*See* ECF 245 at 7-9). Awarding Mandelbaum its full fees will have the salutary effect of incentivizing sanctioned attorneys and parties staring down a fee awards to agree to resolve them consensually on standard terms instead of obfuscating and acting irrationally, like Mr. Feldman did.

## II. Mandelbaum correctly brought Mr. Feldman’s misconduct to the Court’s attention and necessarily incurred subsequent fees related to his misconduct.

The Court should reject Mr. Feldman’s argument that the fee award should be reduced because “the sanctionable conduct that Mandelbaum Barrett reported has no effect on their client and the relief granted by the Court . . . had no significance to Top.” (Opp. at 4). This argument is belied by both the Rules of Professional Conduct and a series of court decisions holding that counsel are duty-bound to bring AI misuse to the court’s attention. Indeed, Mr. Feldman’s flippant attitude toward Mandelbaum’s ethical duties and need to comply with subsequent Court directives related to Mr. Feldman’s misconduct is both troubling and evinces a lack of familiarity with the record. (*See* Opp. at 7 (“Mr. MacMull **claims** he had an ethical duty to report Mr. Feldman’s conduct to the Court. Accepting that as true . . . .” (emphasis added))).

Mr. MacMull explained in both his initial email to Mr. Feldman and then in his letter to the Court that he had an ethical duty under NY RPCs 3.3, 8.3, and 8.4 to bring the fake citations and quotations to the Court's attention. (ECF 158 at 1; ECF 158-1 at 9). Many courts have articulated that they expect that counsel will bring to the court's attention another attorney's citation of fake cases or quotes. *See, e.g.*, *Dec v. Mullin*, __F.4th__, 2026 WL 861530, at *5 (7th Cir. Mar. 30, 2026) (finding it problematic that opposing counsel failed to catch the fake cases and bring them to the court's attention); *Billups v. Louisville Mun. Sch. Dist.*, No. 24-cv-74, 2025 WL 3691871, at *8 (N.D. Miss. Dec. 19, 2025) (same and directing all counsel to do so moving forward); *Elizondo v. City of Laredo*, No. 25-cv-50, 2025 WL 2071072, at *3 (S.D. Tex. July 23, 2025) (similar); *Nuvola LLC v. Wright*, No. 27-cv-hc-15-3802, 2025 Minn. Dist. LEXIS 5940, at *14-15 (Minn. Dist. Ct. Nov. 21, 2025) (similar); *cf. Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 915 (Ct. App. 2025) (declining to award fees to opposing counsel because counsel failed to bring hallucinated cases to the court's attention). Given this expectation, if not an outright ethical duty under the RPCs, the Court should give no weight to Mr. Feldman's argument that Mandelbaum's fee award should be reduced because reporting his misconduct did not benefit Mandelbaum's client and the sanction the Court imposed on him was not significant to Top. (Opp. at 7).

And Mr. Feldman's charge that "there was little more [Mr. MacMull] needed to [do]" after reporting Mr. Feldman to the Court disregards the time Top's counsel spent on the subsequent related events in the case (*e.g.*, reviewing the Court's correspondence, Mr. Feldman's responses, and alerting the Court to his subsequent AI misuse) and the Court's directive for Top's counsel to attend the in-person hearing. (ECF 159, 164, 169, 182, 183, 185). Thus, Mr. Feldman's attempt to flip on its head the attorney's fees metric related to the degree of success obtained is unavailing.

**III. The time entries and costs that Mr. Feldman challenges are all reasonable and necessary, save for two minor entries.**

Mr. Feldman does not challenge either Mr. MacMull's or Mr. Block's hourly rates. He challenges only certain time entries and costs, claiming they are unnecessary and excessive. They are not. Therefore, the Court should reject Mr. Feldman's challenge, except for two minor entries totaling 1.1 hours that reduce the fees sought by $632.50.

First, Mr. Feldman challenges Mr. MacMull's and Mr. Block's June 26, 2025 time entries totaling 5.1 hours for drafting and revising the initial letter to the Court about his hallucinated cases and quotes and meeting about the same. (Opp. at 4). But this time was reasonable and necessary. The letter needed to be carefully crafted given its subject matter and required revision and input from the firm's general counsel with whom Mr. MacMull and Mr. Block met that day. (*See* ECF 244-1 at 2).[2] The time also accounts for reviewing the Court's Order to Show Cause issued the same day. (*Id.*). So the 5.1 hours between two attorneys was reasonable and necessary.

Second, the 0.5 and 0.3 entries on July 21 and 22, 2025 entries to review the Court's order regarding Mr. Feldman's continued AI misuse, to review media coverage on the matter, and to correspond internally about the case development and hearing is reasonable. (ECF 244-1 at 6).

Third, Mr. Feldman's challenge to time entries for preparing for and attending this in-person hearing on August 22, 2025, are without merit. His primary contention is that Mr. MacMull's 1.4 hours of preparation and his and Mr. Block's attendance at the hearing was excessive merely because they did not have substantial roles at the hearing. (Opp. at 8). The Court should reject this argument. The Court ordered Top's counsel to attend the hearing. (ECF 169 at 6). Naturally, Mr. MacMull had to prepare for it by reviewing the entire record leading up to it to

[2] The initials "ADG" in the entry refer to Arthur D. Grossman, the firm's General Counsel.

be ready to participate and be responsive to whatever the Court required of him. The fact that the Court did not ultimately engage Mr. MacMull (or Mr. Block) in lengthy participation does not retroactively transform his preparation into something unreasonable. Top trusts that the Court appreciates when counsel are familiar with the record and issues when they appear before it.

Mr. Feldman's complaint that Mr. MacMull and Mr. Block should have attended remotely via Microsoft Teams to incur fewer hours is contrary to the record. As noted, the Court ordered counsel to appear in-person for the hearing. (ECF 169 at 6). The Court gave permission only to other parties' counsel who had no connection to Mr. Feldman's misconduct to appear remotely when that counsel specifically requested it because their circumstances did not permit in-person attendance. (ECF 206). The Court's Law Clerk specifically wrote to all counsel three days prior to the hearing:

> The Court has now received inquiries from counsel for two defendants in this action about appearing remotely at the conference this Friday. **It is the Court's preference that all parties who have appeared in this action attend the conference in person**. But if circumstances prevent parties from appearing in person, the Court will allow them to attend the conference via Teams. Please reach out to Chambers, and we will provide you with a Teams link. **The Court, however, expects Mr. Feldman, and all parties who have taken a position on Mr. Feldman's briefing and response to the Order to Show Cause, to appear in person.**

(Reply Declaration of Joel G. MacMull, Exhibit 1 at 2). In fact, the next day, the Court (through its Law Clerk) denied a request by plaintiff's other counsel to appear remotely and reiterated its expectation that all counsel appear in-person. (*Id.*, Exhibit 1 at 1). Mr. Feldman was a party to these emails. (*See id.*). Therefore, his argument in the face of these emails is bewildering.

And as to Mr. Block's attendance as second counsel, that is not problematic. "Parties are not barred as a matter of law from receiving fees for sending . . . an extra lawyer into court to observe

and assist." *Brandon v. Kinter*, No. 13-cv-00939, 2024 WL 4135715, at *4 (N.D.N.Y. Sept. 10, 2024) (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). Courts generally disfavor "awarding fees to **more than two** attorneys for court appearances unless the case is uniquely complex." *Ng v. King Henry Realty, Inc.*, No. 16-cv-0013, 2016 WL 6084074, at *6 (S.D.N.Y. Oct. 7, 2016) (emphasis added). Here, Top's two attorneys responsible for the case attended and both their fees are thus compensable. Indeed, Mr. Block was the attorney who first identified the fake citations and quotations in Mr. Feldman's brief. (*See* ECF 244 ¶ 8).

Fourth, Mr. Feldman's challenge to Mr. Block's entry for 0.8 hours to read and assess the Court's sanctions decision and calendaring the fee application due date is also meritless. Calendaring the due date took all of one minute and was thus a *de minimis* part of that entry. Almost all of the time was spent on the Court's 33-page decision, which is reasonable.

Fifth, Mr. Feldman is wrong that Mandelbaum's fees incurred to prepare the fee application are excessive. Mr. MacMull's title as a practice group co-chair at the firm does not preclude him from doing compensable legal research and drafting. While Top acknowledges that some cases like those that Mr. Feldman cites take the position that legal research should be done by more junior attorneys, they provide no rationale for that conclusion. (Opp. at 9 (citing, *e.g.*, *Dimopoulou v. First Unum Life Ins. Co.*, No. 13-cv-07159, 2021 WL 406741, at *4 (S.D.N.Y. Feb. 5, 2021)). Quality legal research and drafting is no less important than arguing the motion and is thus no less worthy of being performed by an experienced attorney.

But this conceptual argument is also besides the point. Despite Mr. MacMull being the "senior" attorney in this matter, his hourly rate is $575. That rate is comparable to if not lower than the rates associates charge at many firms in this district which have been found reasonable in

intellectual property and complex cases. *See, e.g.*, *China AI Capital Ltd.*, 2025 WL 2466633, at *6-7 (approving higher-end rates of $550, $700, $875 for mid-level and senior-level associates in Rule 11 sanctions case); *Flatiron Acquisition Vehicle, LLC v. CSE Mortgage LLC*, No. 17-cv-8987, 2022 WL 413229, at *14 (S.D.N.Y. Feb. 9, 2022) (approving rates of between $405 and $660 for associates in commercial case). Is $575 per hour for legal research reasonable when an attorney with the title "associate" charges that amount but not when an attorney with the title "partner," like Mr. MacMull, charges $575 per hour for it? The answer has to be no. Nor would it be proper to justify a distinction in rates based merely on the size of the firm with whom an attorney is associated. *LA Int'l Corp. v. Prestige Brands Holdings, Inc.*, 168 F.4th 608, 625-26 (9th Cir. 2026); *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006).

And it is also worth noting that, contrary to Mr. Feldman's assertion, Mr. MacMull does not have any associates in his group.[3] Nor, importantly, are any associates staffed on this case yet — just two partners, Mr. MacMull and Mr. Block.

Fifth, Mr. Feldman's only valid challenges to Top's counsel's fee time entries are to Mr. MacMull's entry on August 13, 2026, for 0.2 hours concerning courtesy copies for a motion and to his entry on February 5, 2026, for 0.9 hours for reviewing the motion to dismiss opinion. (Opp. at 8-9). Thus, the Court is warranted in subtracting 1.1 hours at $575 per hour totaling $632.50.

[3] *See* Mandelbaum Barrett PC, Intellectual Property and Brand Management, "Our Team," https://mblawfirm.com/practice-areas/intellectual-property-brand-management-and-internet-law/ (last accessed Apr. 22, 2026). Also incorrect is Mr. Feldman's contention that Mandelbaum's "website lists dozens of Associates." The firm currently employs 27 associates which is hardly "dozens." *See* https://mblawfirm.com/our-team/?professional-position=1655 (last accessed Apr. 22, 2026).

Finally, the Court should reject Mr. Feldman's attack on the Westlaw legal research cost that Mandelbaum seeks to recover. His argument against it is that there is "[n]o evidence of that actual cost has been submitted in support of this application." (Opp. at 11). But that is not true. The cost is identified under "Disbursements" in Mandelbaum's March 5, 2026 invoice to Top and contains the Invoice date and number (2/13/26 Invoice No. 853331540-1) for that cost that the firm incurred for legal research in connection with this application. (ECF 244-2 at 3). This is sufficient. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-cv-10175, 2025 WL 3012879, at *5 (S.D.N.Y. Oct. 28, 2025) ("Plaintiff has substantiated each charge with a line item on a contemporaneous invoice from Mandelbaum" and thus awarding all costs sought, including for Westlaw research); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99-cv-10175, 2022 WL 1026577, at *5 (S.D.N.Y. Apr. 6, 2022) (same).

In sum, the Court should reject all of Mr. Feldman's challenges to the fees and costs Top seeks (not including the fees incurred to draft this reply), except for a total of 1.1 hours at $575 per hour totaling $632.50.

**IV. The Court should award Top the fees incurred to draft this reply memorandum.**

Mandelbaum is also entitled to the reasonable attorneys' fees incurred to draft this reply memorandum as part of its "fees on fees." *See Wachovia Mortgage, FSB v. Toczek*, 841 F. App'x 267, 270 (2d Cir. 2021) (affirming district court's award of attorneys' fees "for the attorneys' work in preparing their reply brief to [defendant]'s opposition to the [fee] Application" as part of "fees on fees"); *Li v. Ichiro Sushi, Inc.*, No. 14-cv-10242, 2022 WL 1137094, at *3 (S.D.N.Y. Apr. 16, 2022) (awarding "8.80 hours spent on preparing their reply brief seeking these fees"); *Thomas v. City of New York*, No. 14-cv-7513, 2017 WL 6033532, at *9 (E.D.N.Y. Dec. 1, 2017) (awarding 6.5 hours spent on drafting and editing a reply brief supporting fee motion). Here, Top incurred $6,900 to

draft this reply memorandum and the accompanying reply declaration to submit the supplemental evidence of the time spent and fees incurred to do so. (MacMull Reply Decl. ¶¶ 3-5). These fees are reasonable.

## CONCLUSION

For these reasons and those in Top's moving brief, the Court should award Top its total reasonable attorneys' fees of $42,090 [$35,822.50 - $632.50 + $6,900] and costs of $996.59, totaling **$43,086.59**. (MacMull Reply. Decl. ¶ 7).

Respectfully submitted,

Joel G. MacMull
Brian M. Block
**MANDELBAUM BARRETT PC**
570 Lexington Avenue, 21st Floor
New York, New York 10022
T: (212) 776-1834
jmacmull@mblawfirm.com
bblock@mblawfirm.com

*Attorneys for Top Experience Company LLC d/b/a We Pay Cost LLC*

Dated: April 27, 2026

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limitation set forth in § 4.B. of Your Honor's Individual Rules of Practice in Civil Cases, because excluding the parts of the document exempted by this Rule, this document contains 3,135 words. In determining the number of words, I have relied on the "word count" feature of Microsoft Office Word 2021, which was used to prepare this document.

This document complies with the typeface and type style requirements of the foregoing Rule, because this document has been prepared in proportionally spaced typeface using Microsoft Office Word 2021 in Equity A 12.

Joel G. MacMull

Dated: April 27, 2026